IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-543-SLR-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HTC CORPORATION, and HTC | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**HTC'S ANSWERING BRIEF IN OPPOSITION TO EVOLVED WIRELESS, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R.
CIV. P. 12(c) AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**

OF COUNSEL:

Stephen S. Korniczky
Martin R. Bader
Ericka Schulz
Nam H. Kim
Kayla E. Page
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
12275 El Camino Real
Suite 200
San Diego, CA 92130
(858) 720-8900

Dated:  April 4, 2016
1220471

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendants and Counterclaimants
HTC Corporation and HTC America, Inc.*

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

II.     SUMMARY OF ARGUMENT ................................................................................ 1

III.    COUNTERSTATEMENT OF FACTS .................................................................... 3

A.  Evolved's Contractual Obligation to Offer a License to the Patents-in-Suit on FRAND
    Terms…………... ............................................................................................................. 3

B.  Evolved Failed to Offer HTC a License to the Patents-in-Suit on FRAND Terms, and
    Instead Sued HTC and Five Other Top Cell Phone Manufacturers................................ 5

IV.     ARGUMENT........................................................................................................... 5

A.  HTC's Counterclaim for Breach of Contract is Properly Pleaded.................................. 5

    1.  HTC's Factual Allegations Are Sufficient to State a Claim for Breach of Contract
        Based on Evolved Breach of its FRAND Obligations.............................................. 6

B.  Evolved Motion to Strike is Untimely – Without Excuse. ............................................. 9

C.  HTC Properly Pleaded its Affirmative Defenses Based, at Least in Part, on Evolved's
    Breach of its FRAND Obligations……………………………………………………10

    1.  HTC's Fourth Affirmative Defense Arising from Evolved's Breach of its FRAND
        Obligations is Well-Pleaded. .................................................................................. 11

    2.  HTC's Fifth Affirmative Defense of Waiver is Well-Pleaded. ............................... 16

    3.  HTC's Sixth Affirmative Defense of Unenforceability is Well-Pleaded. ............... 17

    4.  HTC's Seventh Affirmative Defense of License is Well-Pleaded.......................... 18

    5.  Evolved's Motion to Strike Should be Denied Because Evolved Has Not Shown
        that it Will be Prejudiced if HTC's Affirmative Defenses Remain in the Case. ..... 19

V.      CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*
 486 U.S. 492 (1988)..............................................................................................11

*Am. Soc'y of Mech. Eng'Rs, Inc. v. Hydrolevel Corp.*
 456 U.S. 556 (1982)..............................................................................................12

*Apple Inc. v. Samsung Elecs. Co.*
 Case No. 11-cv-1846-LHK, 2012 U.S. Dist. LEXIS 67102 (N.D. Cal. May
 14, 2012) ...................................................................................................7, 8, 9

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009)................................................................................... *passim*

*Barnes & Noble, Inc. v. LSI Corp.*
 849 F. Supp. 2d 925 (N.D. Cal. 2012) ..........................................................17, 19

*Belden Techs. Inc. v. Superior Essex Communs. LP*
 733 F. Supp. 2d 517 (D. Del. 2009)....................................................................13

*Bell Atl. Corp. v. Twombly*
 500 U.S. 544 (2007)...........................................................................1, 6, 9, 10

*Boykin v. KeyCorp*
 521 F.3d 202 (2d Cir. 2008).................................................................................6

*Broadcom Corp. v. Qualcomm, Inc.*
 501 F.3d 297 (3rd Cir. 2007) ..............................................................................12

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*
 72 F.3d 872 (Fed. Cir. 1995)..........................................................................13, 14

*De Forest Radio Tel. Co. v. United States*
 273 U.S. 236 (1927)........................................................................13, 14, 18

*De-Raef Corp. v. Horner Sales Corp.*
 10 F.R.D. 28 (W.D. Pa. 1950) .............................................................................10

*Erickson v. Pardus*
 551 U.S. 89 (2007).............................................................................................6, 8

*First Nat. City Bank v. Burton M. Saks Const. Corp.*
 70 F.R.D. 417 (D.C.V.I. 1976) ............................................................................10

*Gordon v. New York Stock Exch.*
   422 U.S. 659 (1975)..........................................................................................12

*Hynix Semiconductor Inc. v. Rambus Inc.*
   645 F.3d 1336 (Fed. Cir. 2011).....................................................................16, 17

*In re Certain Wireless Communication Devices, Portable Music & Data*
   *Processing Devices, Computers & Components Thereof*
   Inv. No. 337–TA–745, 2012 WL 4840603....................................................12, 14

*In re Innovatio IP Ventures, LLC*
   2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sept. 27, 2013) ...................................8

*In re Innovatio IP Ventures LLC Patent Litig.*
   956 F. Supp. 2d 925 (N.D. Ill. 2013) ................................................................13

*In re Loestrin 24 Fe Antitrust Litig.*
   No. 14-2071, 2016 WL 698077 (1st Cir. Feb. 22, 2016)......................................9

*In re Park West Galleries, Inc., Mktg. & Sales Practices Litig.*
   No. 09-2076RSL, 2010 WL 2640254 (W.D. Wa. Jun. 25, 2010) .........................9

*Internet Media Corp. v. Hearst Newspapers, LLC*
   No. 10-690-SLR, 2012 U.S. Dist. LEXIS 126788 (D. Del. Sept. 6, 2012) ........10

*Masimo Corp. v. Philips Elec. N. Am. Corp.*
   C.A. No. 09-80-LPS, 2015 U.S. Dist. LEXIS 64462 (D. Del. May 18, 2015)....15

*McCoy v. Mitsuboshi Cutlery, Inc.*
   67 F.3d 917 (Fed. Cir. 1995)......................................................................13, 14

*Microsoft Corp. v. Motorola, Inc.*
   696 F.3d 872 (9th Cir. 2012) ........................................................11, 12, 15, 17

*Microsoft Corp. v. Motorola, Inc.*
   795 F.3d 1024 (9th Cir. 2015) ............................................................... *passim*

*Microsoft Corp. v. Motorola, Inc.*
   No. C10-1823 JLR, 2011 WL 11480223 (W.D. Wash. June 1, 2011) ..............7, 9

*Microsoft Corp. v. Motorola, Inc.*
   No. C10-1823JLR, 2013 U.S. Dist. LEXIS 60233 (W.D. Wash. Apr. 25,
   2013) ...............................................................................................................8

*Motivation Innovations, LLC v. Express, Inc.,*
No. 11-615, 2012 WL 1415412, at *2 (D. Del. Apr. 24, 2012) ...............................20

*MultimediaPatent Trust v. Apple Inc.*
  No. 10-CV-2618-H (KSC), 2012 U.S. Dist. LEXIS 167479................................15

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*
  No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647 (D. Del. Sept. 2, 2015) ..........................5

*Princo Corp. v. ITC*
  616 F.3d 1318 (Fed. Cir. 2010)...................................................12

*Qualcomm Inc. v. Broadcom Corp.*
  548 F.3d 1004 (Fed. Cir. 2008)...................................................16

*Realtek Semiconductor Corp. v. LSI Corp.*
  946 F. Supp. 2d 998, 1008-1010 (N.D. Cal. 2013)............................17

*Research in Motion Ltd. v. Motorola, Inc.*
  644 F. Supp. 2d 788 (N.D. Tex. 2008) ...........................................7, 9

*Revell v. Port Auth.*
  598 F.3d 128 (3d Cir. 2010)........................................................6

*Schmid v. Roehm GmbH*
  544 F. Supp. 272 (D. Kan. 1982) ...............................................10

*Sun Microsys., Inc. v. Versata Enters., Inc.*
  630 F. Supp. 2d 395 (D. Del. July 1, 2009) ................................10

*Symbol Techs., Inc. v. Aruba Networks, Inc.*
  609 F. Supp. 2d 353 (D. Del. 2009).........................................16, 19

*United States v. 0.28 Acre of Land*
  No. 09-cv-0583, 2009 WL 4408194 (W.D. Pa. Nov. 25, 2009)...........................9

*UTStarcom, Inc. v. Starent Networks, Corp.*
  No. 07 CV 2582, 2008 U.S. Dist. LEXIS 98498 (N.D. Ill. Dec. 5, 2008)..........................15

*Vurimindi v. Fuqua Sch. of Bus.*
  No. 10-234, 2011 U.S. Dist. LEXIS 96496 (E.D. Pa. Aug. 25, 2011) ................................20

*Wang Labs. Inc. v. Mitsubishi Elecs. Am., Inc.*
  103 F.3d 1571 (Fed. Cir. 1997)....................................................18

*Wi-Lan, Inc. v. HTC Corp.*
  No. 2:11-cv-00068-JRG, 2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17,
  2013) ...................................................................12, 14

<u>Statutes</u>

28 U.S.C. Section 1295(a) ...................................................14

Rules

Federal Rule of Civil Procedure 8 .................................................................................2

Federal Rule of Civil Procedure 8(a) ...........................................................................6

Federal Rule of Civil Procedure 12 ..............................................................................2

Federal Rule of Civil Procedure 12(b)(6) .....................................................................5

Federal Rule of Civil Procedure 12(c) .......................................................................1, 5

Federal Rule of Civil Procedure 12(f) .....................................................................1, 2, 9

HTC Corporation and HTC America, Inc. ("HTC") respectfully submit this answering brief in opposition to Evolved Wireless, LLC's ("Evolved") Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) (the "Motion").

## I.      NATURE AND STAGE OF PROCEEDINGS

On June 25, 2015, Evolved filed its Complaint against HTC, asserting patent infringement of five patents (the "Patents-in-Suit) allegedly declared essential to the LTE standard.  D.I. 1.  HTC answered the Complaint on September 21, 2015, denying infringement and asserting numerous affirmative defenses and counterclaims.  D.I. 10.  Evolved answered the counterclaims on October 13, 2015.  D.I. 15.  On November 11, 2015, the parties exchanged initial disclosures, and on November 13, 2015, Evolved served its Disclosure of Asserted Patents, Accused Products, and Initial Damages Model.  On December 14, 2015, Evolved served its Disclosure of the Asserted Patent Claims and Accused Products.  On January 14, 2016, HTC produced core technical documents, and on February 12, 2016, Evolved served its initial infringement contentions.   HTC served its initial invalidity contentions on March 14, 2016.  The parties have each exchanged discovery requests.

## II.      SUMMARY OF ARGUMENT

Evolved's Motion for Judgment on the Pleadings under Rule 12(c) and Motion to Strike under 12(f) should be denied because HTC's breach of contract counterclaim and affirmative defenses are sufficiently pleaded, and Evolved's motion to strike is untimely.

First, HTC's counterclaim is based on Evolved's breach of its obligation to offer a license to the Patents-in-Suit on fair, reasonable, and non-discriminatory ("FRAND") terms. HTC's counterclaim surpasses the pleading standards of *Iqbal* and *Twombly*, and was sufficient

to put Evolved on notice to provide an Answer.  As required by the Supreme court, the counterclaim "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Evolved's motion boils down to the argument that HTC's counterclaim failed to allege precisely what a FRAND royalty rate would be—an issue that will be the subject of extensive fact and expert discovery.  Neither Rule 8 nor any decision interpreting it requires HTC to provide precise figures and calculations at the pleading stage.  Indeed, Evolved's claim for damages in its complaint consists of nothing more than: "Evolved Wireless has suffered damages and is entitled to monetary relief to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by HTC, together with interest and costs as fixed by the Court"—not stating what "reasonable" would be.  D.I. 1 at ¶¶ 82, 93, 104, 115 and 126.  In any event, Evolved's answer alleges that it did offer FRAND terms, without stating what FRAND terms are, fully joining the factual dispute of what terms are FRAND.

Thus, because the pleading is sufficient, Evolved effectively (and baselessly) seeks premature summary judgment on the merits of HTC's counterclaim under the guise of a Rule 12 motion.  As set out further below, HTC's counterclaim is firmly founded in established law that recognizes the enforceability of the FRAND commitment, and invokes contract and antitrust principles to constrain abusive enforcement of standard-essential patents.

Second, Evolved's motion to strike should be summarily denied as it was filed far *outside* of the requisite "21 days after being served with the pleading." Fed. R. Civ. P. 12(f).  Notwithstanding Rule 12(f), HTC's fourth through seventh affirmative defenses, similarly arise, at least in part, out of Evolved's breach of its FRAND obligation, among other standard-setting misconduct.  Evolved moves to strike these defenses because they sound in contract,

rather than substantive patent law.  Yet, defenses sounding in contract—*e.g.*, the existence of an express or implied license—are obviously appropriate defenses to claims of patent infringement and the damages analysis.   Moreover, HTC's defenses are further supported by the principles of antitrust law that permit and cabin standard-setting activity.  It is also well-recognized that antitrust violations provide affirmative defenses to claims of patent infringement.  Nonetheless, each of HTC's FRAND-based affirmative defenses have been held to be properly asserted against claims of patent infringement.

For example, courts have held that (1) an accused infringer may raise patentee's breach of a FRAND obligation as an affirmative defense (HTC's fourth defense); (2) patent misuse, unclean hands, and estoppel apply to the kinds of standard setting misconduct asserted by HTC (HTC's fourth defense); (3) a member of a standard-setting organization may forfeit its right to assert infringement claims against standards-compliant products through its conduct, including by failing to make timely disclosures of essential patents during the development of a standard (HTC's fifth (waiver) and sixth (unenforceability) defenses); (4) license and implied license are applicable defenses to patent infringement (HTC's seventh defense).

Finally, Evolved's motion must be denied because Evolved did not and cannot show that it would be prejudiced by the presence of HTC's FRAND-based defenses in the litigation. The challenged defenses arises from the same set of facts (Evolved's FRAND obligation) that relate to both HTC's counterclaim and damages, which are a necessary to this case.

III.    **COUNTERSTATEMENT OF FACTS**

   A.    **Evolved's Contractual Obligation to Offer a License to the Patents-in-Suit on FRAND Terms.**

The 3rd Generation Partnership Project ("3GPP") is an association of standards-development organizations ("SDOs") for commercial cellular systems, with members from

around the world. D.I. 10, at 2, ¶ 8. Individual members—including companies such as HTC—participate in the 3GPP standardization process through their membership in an Organization Partner, such as the European Telecommunications Standards Institute ("ETSI"). *Id.* 3GPP participates in the development of the long term evolution ("LTE") specification. *Id.* at 2, ¶¶ 10-11. The LTE standard was first specified in 3GPP Release 8. *Id.* at 2, ¶ 11.

Participants in the 3GPP standardization process are required to follow the Intellectual Property Rights ("IPR") Policy of the Organizational Partner to which they belong. *Id.* at 3, ¶ 13. If participants claim to own IPR essential to the standard, these IPR Policies require participants to commit to license those IPR on FRAND terms to any implementer of the standard. *Id.* at 3 and 17, ¶¶ 13-14, 130-131; 28, 29, ¶¶54-55.

As a member of ETSI, LG Electronics ("LGE") was and is required to comply with ETSI's IPR Policy. *Id.* at 16-17, ¶¶ 130-134; 21-22, ¶ 7. Clause 4 of ETSI's IPR Policy requires, among other things, that members timely disclose to ETSI any IPR they own that may be essential to standards that have been developed or are being developed. *Id.* at 18, ¶ 133. Under ETSI's IPR Policy, IPR includes both patent applications and issued patents. *Id.*

Furthermore, ETSI's IPR Policy requires participants claiming to own essential IPR commit to license, on FRAND terms, declared-essential IPR to any party supporting the standard. *Id.* at 17, ¶ 130; 21-22, ¶ 7. In accordance with ETSI's IPR Policy, LGE submitted declarations to ETSI declaring the Patents-in-Suit as essential to the LTE standard, and committed to irrevocably license those patents on FRAND terms. *Id.* at 16-17, ¶ 130. Those commitments imposed ongoing contractual obligations on the Patents-in-Suit, which traveled with the patents when they were transferred. *Id.* As LGE's purported successor-in-interest, Evolved admits it is required to comply with ETSI's IPR policy. D.I. 15 ¶ 7.

**B.      Evolved Failed to Offer HTC a License to the Patents-in-Suit on FRAND Terms, And Instead Sued HTC and Five Other Top Cell Phone Manufacturers.**

On November 4, 2014, Evolved sent an e-mail to Jerry Gnuschke, in-house counsel for HTC at the time, attaching a letter concerning a portfolio of patents purportedly owned by Evolved.  *Id*. at 11, ¶ 66.  On November 10, 2014 Mr. Gnuschke responded and identified Miranda Hsiao as the person to whom correspondence regarding patent licensing should be addressed.  *Id.*  On November 12, 2014, Ms. Hsiao identified James Ng as the point of contact for negotiating a non-disclosure agreement with HTC.  *Id.* ¶ 67.  From December 2014 until March 2015, the parties exchanged emails regarding a proposed nondisclosure agreement, which was never executed.  *Id.* ¶ 68.  On May 5, 2015, Evolved sent James Ng another letter concerning Evolved's patent portfolio.  *Id.* ¶ 68.

Evolved offered to license Defendants the Patents-in-Suit on terms that were manifestly unreasonable, including a proposed royalty rate of $0.25 per device that was wholly disproportionate to the royalty rate that its patents should command under any reasonable calculus.  *Id.* ¶ 131.  Instead, Evolved brought suit against five other cell phone manufactures alleging patent infringement of the same asserted patents in this case.  *See Evolved Wireless, LLC v. Apple Inc.,* C.A. No. 15-cv-542-SLR-SRF (D.I. 1); *Lenovo Group LTD., et al.,* C.A. No. 15-cv-544-SLR-SRF (D.I. 1); *Samsung Electronics Co., LTD. et al.,* C.A. No. 15-cv-545-SLR-SRF (D.I. 1); *ZTE Corporation, et al.,* C.A. No. 15-cv-545-SLR-SRF (D.I. 1).

## IV.      ARGUMENT

### A.      HTC's Counterclaim for Breach of Contract is Properly Pleaded.

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standards that apply to a motion pursuant to Rule 12(b)(6).  *See Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647, *4 (D. Del. Sept. 2,

2015) (citing *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).)  Thus, the Court must accept as true all factual allegations in the counterclaim and draw all reasonable inferences in the light most favorable to HTC.  *Iqbal*, 556 U.S. at 679 (2009) ("When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").  Further, the Court must "draw on its judicial experience and common sense" to make the determination.  *Id.*

To survive a motion to dismiss, the factual allegations in the counterclaim need only be sufficient "to raise a right to relief above the speculative level . . . on the assumption that all of the allegations are true."  *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555 (2007).  "Specific facts are not necessary"; rather, the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 500 U.S. at 555); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) ("[B]oth *Twombly* and *Erickson* explicitly disavowal that Rule 8(a) requires any plaintiff . . . to plead 'specific facts'").  In other words, the counterclaim need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted) (emphasis added).

### 1.   HTC's Factual Allegations Are Sufficient to State a Claim for Breach of Contract Based on Evolved Breach of its FRAND Obligations.

HTC has pleaded facts that far exceed what is required to state a plausible claim for breach of contract based on Evolved's violation of its FRAND obligations.  In particular, HTC has pleaded that:  (1) LGE (the original assignee of the Patents-in-Suit) made a contractual commitment to ETSI by declaring the Patents-in-Suit standard-essential patents to the LTE standard, (2) the contract required a commitment to license the certain patents on FRAND terms to third parties implementing the LTE Standard; (3) Evolved owns, through assignments

originating with LGE, the LTE standard-essential patents and is thus subject to the same

contract provisions; (4) Evolved refused to agree to grant HTC a FRAND rate, "under

reasonable rates, with reasonable terms, an on a non-discriminatory basis"; (5) Evolved's $0.25

per device royalty rate was manifestly unreasonable (as corroborated by the five other related

law suits) and (5) HTC has been injured and is threatened by imminent loss of profits,

customers, and goodwill.   D.I. 10 at 21-22; 28-29, ¶¶ 7-7-8, 54-59.   If all these facts are

assumed true, HTC can plausibly show that the contract between LGE and ETSI/3GPP was

binding on Evolved, that Evolved breached the contract, and that Evolved damaged HTC.

     Other courts have recognized similar pleadings as sufficient for similar FRAND-based

breach of contract claims and refused to dismiss claims similar to HTC's counterclaim.  *See*

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823 JLR, 2011 WL 11480223, at *2-4 (W.D.

Wash. June 1, 2011) (allegations of failure to offer [F]RAND terms sufficient to state a claim

for breach of the RAND contract);  *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d

788, 797 (N.D. Tex. 2008) ("RIM's complaint alleges that Motorola 'has refused to extend

FRAND . . . licensing terms to RIM for any of  Motorola's purportedly essential patents . . .

and has instead demanded of RIM terms that are unfair, unreasonable, and, on information and

belief, discriminatory.'"); *see also Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-1846-

LHK, 2012 U.S. Dist. LEXIS 67102, at *40-43 (N.D. Cal. May 14, 2012) (denying motion to

dismiss Apple's breach of contract counterclaim where Apple alleged that Samsung offered

terms that were "not fair, reasonable, and non-discriminatory").

     Moreover, Evolved admits that HTC properly pleaded that LGE entered into a binding

contract with ETSI to license its declared standard-essential patents, including the Patents-in-

Suit, on FRAND terms.  *See* D.I. 15 ¶7; D.I. 32 at 3, 5-6.  Nor does Evolved dispute that HTC

has properly pleaded that, as the successor-in-interest to the Patents-in-Suit, Evolved is bound

by that commitment.  *Id.*  In fact, Evolved has expressly admitted that "LGE made

commitments to ETSI to offer licenses to the Patent-in-Suit on FRAND terms and that these

commitments are binding on Evolved."  *See* D.I. 15 at 2, ¶ 7.  Likewise, there is no doubt that

HTC's counterclaim gave Evolved "fair notice of what the . . . claim is and the grounds upon

which it rests," *Erickson*, 551 U.S. at 93—Evolved answered the counterclaim with the

counterfactual allegation that it had, contrary to HTC's contention, offered FRAND terms.

D.I. 15 at ¶ 56 (Evolved "specifically denies that Evolved Wireless has refused to offer HTC a

FRAND rate.").

Having already conceded HTC's counterclaim was adequate by answering it, Evolved

now contends that HTC's counterclaim fails to satisfy the pleading standard of *Iqbal* merely

because "HTC fails to allege what a reasonable rate would be."[1]  D.I. 32 at 5.  Evolved is

wrong.  HTC alleges that a reasonable rate is well below $0.25 per device.  There is nothing in

*Iqbal* that requires HTC to plead an actual amount that would constitute a FRAND royalty rate,

a determination that will be the subject of extensive fact and expert discovery.[2]  Significantly,

Evolved does not cite a single case—nor is HTC aware of any such case—that stands for the

proposition that HTC is required at the pleading stage to identify precisely what it contends

---

[1] Evolved's failure to license to component manufacturers and instead to seek excessive royalties from the manufacturers of end-user devices (like HTC and other defendants in parallel cases), and the fact that the top five end-user cell phone manufacturers ended up in court fighting the license offer, is a judicially noticeable fact that independently corroborates HTC's assertion that the rate Evolved offered was in fact not reasonable.
[2] Determination of the precise contours of what a FRAND demand would be clearly requires expert analysis and need not be specially or specifically pleaded.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 U.S. Dist. LEXIS 60233, *42-53 (W.D. Wash. Apr. 25, 2013) (relying on expert analysis to determine a FRAND royalty rate); *In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sept. 27, 2013) (same).

would be a FRAND royalty rate.  *See id.* at 5-6.

Contrary to Evolved's unsupported position, the few courts to address dismissal of FRAND-based breach of contract claims have found that far less is required to state a claim for breach of a patent holder's obligation to license standard-essential patents on FRAND terms. *See, e.g.*, *Microsoft*, 2011 WL 11480223, at *3 (denying motion to dismiss [F]RAND breach claim where terms offered were alleged to be "unreasonable and discriminatory"); *Research in Motion*, 644 F. Supp. 2d at 797 (holding that it was sufficient under *Twombly* to allege only that the defendant had demanded "terms that are unfair, unreasonable, and, on information and belief, discriminatory"); *Apple*, 2012 U.S. Dist. LEXIS 67102, at *40-43.  Similarly, courts applying the *Twombly* and *Iqbal* standards to damages in other contexts have specifically found that a plaintiff is *not* required to "provide precise figures and calculations at the pleading stage," especially where such calculations would require significant expert analysis.  *In re Loestrin 24 Fe Antitrust Litig.*, No. 14-2071, 2016 WL 698077, at *11 (1st Cir. Feb. 22, 2016) (noting that Twombly "declined to require heightened fact pleading of specifics"); *see also In re Park West Galleries, Inc., Mktg. & Sales Practices Litig.,* No. 09-2076RSL, 2010 WL 2640254, at *3 (W.D. Wa. Jun. 25, 2010) ("Plaintiff does not, however, have to plead detailed factual allegations regarding the investigation he performed, nor is he required at the pleading stage to produce an expert in support of his damage allegations.")  As these decisions demonstrate, HTC has pleaded facts that are more than sufficient under the pleading standards of *Twombly* and *Iqbal*.

**B.    Evolved Motion to Strike is Untimely—Without Excuse.**

The Court should deny Evolved's motion because it is untimely under Rule 12(f)(2).  Without even considering the merits of the motion, a court may deny a motion to strike when the motion comes after a responsive pleading or more than 21 days after the pleading was

served.  Fed. R. Civ. P. 12(f)(2); *e.g., United States v. 0.28 Acre of Land*, No. 09-cv-0583,

2009 WL 4408194, *2 (W.D. Pa. Nov. 25, 2009) (denying untimely motion to strike when

plaintiff provided no explanation as to delay); *Schmid v. Roehm GmbH*, 544 F. Supp. 272, 273

(D. Kan. 1982); *First Nat. City Bank v. Burton M. Saks Const. Corp.*, 70 F.R.D. 417, 419

(D.C.V.I. 1976); *De-Raef Corp. v. Horner Sales Corp.*, 10 F.R.D. 28, 29 (W.D. Pa. 1950).

 In this case, Evolved's untimeliness is egregious.  It filed this motion more than five

months after HTC first raised its FRAND-related defenses and Evolved answered the

counterclaims.  Indeed, Evolved does not even acknowledge the untimeliness of its motion and

provides no justification for the long delay.  Given its excessive untimeliness, Evolved's

motion to strike should be denied for this reason alone.

  **C.** **HTC Properly Pleaded its Affirmative Defenses Based, at Least in Part, on Evolved's Breach of its FRAND Obligations.**

 "Motions to strike are generally disfavored and ordinarily are denied unless the

allegations have no possible relation to the controversy and may cause prejudice to one of the

parties." *Sun Microsys., Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 401 (D. Del. July 1,

2009) (internal citations omitted).  When ruling on such a motion, "the [c]ourt must construe

all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under

the law." *Id.* Further, as Evolved plainly acknowledges, the pleading standards of *Twombly*

and *Iqbal* do not apply to affirmative defenses, which "need not be plausible to survive."

*Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10-690-SLR, 2012 U.S. Dist. LEXIS

126788, at *7 (D. Del. Sept. 6, 2012); D.I. 32 at 7.  Thus, affirmative defenses "must merely

provide fair notice of the issue involved." *Id.*

1.      **HTC's Fourth Affirmative Defense Arising from Evolved's Breach
of its FRAND Obligations is Well-Pleaded.**

a)      **Breach of a FRAND obligation is a valid affirmative defense
to patent infringement.**

Evolved contends that HTC's affirmative defenses relating to Evolved's breach of its

FRAND obligations are not "a defense to a patent infringement claim" because each of the

FRAND-based defenses arises out of contract, rather than patent law, and "contract law and

patent law do not merge."  (D.I. 32 at 7-8.)  Evolved is mistaken on multiple grounds.

First, Evolved's focus on contract law ignores the antitrust basis for enforcement of the

FRAND commitment.  Because standardization is carried out through agreements among

competitors and others to fix the technology available to consumers, "private standard-setting

associations have traditionally been objects of antitrust scrutiny." *Allied Tube & Conduit

Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 (1988).  Standardization vests enormous market

power in firms holding patents on any part of the standardized technology.  Owners of declared

standard-essential patents (even the owner of a single patent among the thousands declared

essential to a standard) could "hold-up" implementers of the standard. *Microsoft Corp. v.

Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012).  Which would allow such patent owners to

extort those who implement the standard, by extracting  bloated royalties that reflect the value

of entire standardization, and not just the value of patents owned. *See id*.

Antitrust regulators have recognized that the potential value of standardization to

consumers (resulting from accelerated technology interoperability) may outweigh the potential

harm from permitting agreements among competitors.  But *meaningful safeguards* are required

for the antitrust exemptions under which standard-setting processes operate. *See Allied Tube*,

486 U.S. at 500-01 (standard-setting organizations must operate "through procedures that

prevent the standard-setting process from being biased by members with economic interests in

11

stifling product competition"); *Am. Soc'y of Mech. Eng'Rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571-72 (1982) (standard-setting organizations "can be rife with opportunities for anticompetitive activity," especially if operated "without any meaningful safeguards"); *Gordon v. New York Stock Exch.*, 422 U.S. 659, 692 (1975) (immunity from the antitrust laws "should properly be implied only when some equivalent mechanism is functioning to protect that public interest."); *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 309-10, 313-14 (3rd Cir. 2007) (private standard-setting requires "meaningful safeguards" to prevent anticompetitive abuse). To minimize this abuse, and to forestall antitrust scrutiny, standard-setting organizations generally require participants in the standard-setting process, like Evolved's predecessor LGE, to make FRAND commitments. *See Microsoft*, 696 F.3d at 876.

Accordingly, Evolved's FRAND obligations extend beyond mere contract law. The above principles of antitrust law demand that Evolved's FRAND obligation constitute a "meaningful safeguard" against abusive conduct. Evolved's discriminatory and unreasonable behavior exposes Evolved to antitrust liability. Antitrust violations are well-established affirmative defenses to patent infringement. *See e.g.*, *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010).

Second, even leaving antitrust aside, defenses premised on a party's contractual rights or obligations are effective affirmative defenses against a claim of patent infringement. Courts have specifically held that an accused infringer may raise patentee's breach of a FRAND obligation as an affirmative defense. *See, e.g.*, *Wi-Lan, Inc. v. HTC Corp.*, No. 2:11-cv-00068-JRG, at *8, 2013 U.S. Dist. LEXIS 99635 (E.D. Tex. July 17, 2013) (finding that "the issue of FRAND is an affirmative defense" to patent infringement, not simply a response to damages calculations); *In re Certain Wireless Communication Devices, Portable Music & Data*

*Processing Devices, Computers & Components Thereof*, Inv. No. 337–TA–745, 2012 WL
4840603 (holding that the existence of a "RAND commitment" is an affirmative defense to
patent infringement, not an "obligation preclud[ing] issuance of an exclusion order"); *In re
Innovatio IP Ventures LLC Patent Litig.*, 956 F. Supp. 2d 925, 936 (N.D. Ill. 2013) (noting that
"[t]he existence of a RAND obligation is comparable to the existence of a license, which is
also a contractual commitment limiting the liability of a patent infringer," and finding that
defendants "bear the burden of demonstrating the existence of a RAND obligation that limits
their damages if they are found to infringe").  Evolved does not cite a single decision in which
a court has held otherwise.

Moreover, the Supreme Court and Federal Circuit have made clear that contract-based
defenses, such as the existence of an express or implied license agreement, are "valid"
affirmative defenses to patent infringement.  *See, e.g.*, *De Forest Radio Tel. Co. v. United
States,* 273 U.S. 236, 241, (1927) (holding that an implied license is a defense to an action in
tort for patent infringement); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72
F.3d 872, 878 (Fed. Cir. 1995) ("an implied license, like an express license, is a defense to
patent infringement."); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995)
("In most instances under contract law, a patent or trademark owner intentionally creates an
express license. A licensee, of course, has an affirmative defense to a claim of patent
infringement.")*; see also Belden Techs. Inc. v. Superior Essex Communs. LP*, 733 F. Supp. 2d
517, 540 (D. Del. 2009) ("A patent license, express or implied, is a defense to patent
infringement.")

Unable to cite to any decisions on point, Evolved relies on *Microsoft v. Motorola*,
which was not a patent infringement case and unsurprisingly does not address what defenses

an accused infringer may raise to patent infringement claims.  *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1034-35 (9th Cir. 2015).  The portion of *Microsoft v. Motorola* on which Evolved relies involves only the purely procedural question of the scope of the Federal Circuit's exclusive jurisdiction under 28 U.S.C. § 1295(a).  *Id.  Microsoft v. Motorola* did not involve any questions of patent infringement or patent validity. [3]  *Id.*  Instead, it was "a straight breach of contract action," which did not arise under the patent laws, based on Microsoft's claim that Motorola "had breached its RAND commitments to the IEEE and ITU,"[4] Appellate jurisdiction, therefore, was lodged in the Ninth Circuit.  *Id.* at 1032, 1037.

But simply because a FRAND-related breach of contract claim does not by itself confer jurisdiction on the Federal Circuit, it does not mean that an accused infringer is precluded from raising breach-of-contract-based affirmative defenses.  To the contrary, all courts of which HTC is aware that have considered the issue have held the opposite.  *See Wi-Lan, Inc.*, No. 2:11-cv-00068-JRG, at *8; *In re Certain Wireless Communication Devices, Portable Music & Data Processing Devices, Computers & Components Thereof*, Inv. No. 337–TA–745, 2012 WL 4840603; *see also De Forest Radio Tel. Co.*, 273 U.S. at 241; *Carborundum Co.*, 72 F.3d at 878; *McCoy*, 67 F.3d at 920.  Further, *Microsoft v. Motorola* itself confirms the propriety of the use of FRAND claims to constrain abusive enforcement of standard-essential patents—the district court granted a preliminary injunction barring the patent holder from enforcing

---

[3] Motorola had filed a patent infringement action in the same district following Microsoft's breach of contract action.  Although the two matters were consolidated for coordination purposes, both the Federal Circuit and the Ninth Circuit concluded that the two suits had not been merged into a single action.  *Microsoft Corp.*, 795 F.3d at 1035.

[4] Evolved asserts incorrectly that the case concerned "Microsoft's breach of FRAND counterclaim."  D.I. 32 at 8.  The breach of contract/FRAND claim was an affirmative claim in Microsoft's complaint, not a counterclaim.  *Microsoft Corp.*, 795 F.3d at 1031-32.

injunctive relief for alleged infringement of standard-essential patents against an implementer, while that implementer's claims of breach of FRAND were being adjudicated by that court. *See Microsoft Corp. v. Motorola, Inc.,* 795 F.3d 1024, 1030 (9th Cir. 2015); *see also Microsoft v. Motorola*, 696 F.3d 872.

> **b)    HTC has properly pleaded its facts supporting patent misuse, unclean hands, and estoppel.**

As part of its fourth affirmative defense based on Evolved's failure to comply with its FRAND obligations, HTC also asserts that Evolved's actions constitute patent misuse and unclean hands.  D.I. 10 at 17, ¶ 132.  Evolved seeks to strike these assertions on the grounds that they "are not based in law or fact."  D.I. 32 at 9.  Evolved contends, for instance, that patent misuse does not apply here because it is limited to "licensing activities [that] extend the scope of term of the Patents-in-Suit."[5]  Pl. Br., D.I. 32 at 9.  To the contrary, both patent misuse and unclean hands apply in cases of standard-setting misconduct, precisely as HTC alleges here.  *See, e.g.*, *UTStarcom, Inc. v. Starent Networks, Corp.*, No. 07 CV 2582, 2008 U.S. Dist. LEXIS 98498, at *5-6 (N.D. Ill. Dec. 5, 2008) (denying motion to strike defendant's counterclaim for patent misuse based on the plaintiff's failure to properly disclose these patents to the relevant standards bodies and/or failing to offer a license to these patents on [FRAND] terms before filing [the lawsuit.]"); *MultimediaPatent Trust v. Apple Inc.*, 2012 U.S. Dist.

---

[5] Evolved relies on *Masimo Corp. v. Philips Elec. N. Am. Corp.,* C.A. No. 09-80-LPS, 2015 U.S. Dist. LEXIS 64462 (D. Del. May 18, 2015)—a decision in which the court denied a motion to strike a patent misuse affirmative defense—because the patent misuse allegations in that case involve a "stereotypical 'tying' arrangement."  D.I. 32 at 8-10.  Although Evolved is correct that *Masimo* involves allegations of a tying arrangement—*i.e.*, where the patentee allegedly improperly attempts to expand the scope of its patent grant by conditioning the license of any rights in the patent-in-suit on the acquisition of a license to rights in another patent or product—nothing in that decision precludes the defense of patent misuse on the facts HTC alleges in its Answer.  *See, e.g.*, *MultimediaPatent Trust v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 U.S. Dist. LEXIS 167479, at *79 (noting that "several courts have held that a patentee's violation of its RAND obligations may in certain circumstances constitute patent misuse.")

LEXIS 167479, 78-81 (S.D. Cal. Nov. 9, 2012) (denying motion for summary judgment on affirmative defenses of patent misuse, unclean hands, and standard-setting organization estoppel based on the plaintiff's violations of its FRAND obligations).  As such, patent misuse and unclean hands are valid defenses to patent infringement implicated by the facts alleged in HTC's fourth affirmative defense pertaining to Evolved's failure to comply with its FRAND obligations.  Evolved has not presented any authority to the contrary.

Additionally, with respect to estoppel, Evolved argues that "HTC provides no support for its allegation that an alleged contract violation results in estoppel." D.I. 32 at 8.  Again, Evolved is wrong.  HTC clearly alleges that Evolved's predecessor-in-interest, LGE, misled ETSI and its members by failing to timely disclose the applications corresponding to the Patents-in-Suit during the standards setting process.  D.I. 10 at 18.  These allegations are more than sufficient to provide Evolved with fair notice of the issues involved and therefore withstand a motion to strike.  *See Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 357 (D. Del. 2009) (denying motion to strike equitable estoppel defense, despite a sparse factual record, because the insufficiency of the defense was not "clearly apparent").

## 2.    HTC's Fifth Affirmative Defense of Waiver is Well-Pleaded.

Evolved contends—without citation or support—that HTC's defense of waiver based on LGE's untimely disclosure of the Patents-in-Suit to ETSI should be stricken because it "is not a valid defense to patent infringement."  D.I. 32 at 10-11.  To the extent that this argument is based on the same misguided interpretation of the Ninth Circuit's opinion *Microsoft v. Motorola* as is discussed above, it is incorrect as a matter of law.  *See supra*, pp. 10-12. Further, Evolved's argument is contradicted by clear Federal Circuit precedent, which holds that "[a] member of an open standard setting organization may be equitably estopped or may have impliedly waived its right to assert infringement claims against standard-compliant

products." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336 (Fed. Cir. 2011); *see also*

*Qualcomm Inc. v. Broadcom Corp.,* 548 F.3d 1004, 1021 (Fed. Cir. 2008) (affirming a finding

that Qualcomm waived its right to assert the Patents-in-Suit against standards-compliant

products because it failed to make a timely disclosure to a standard-setting organization in

which it had participated).

In support of its waiver defense, HTC alleges that Evolved's predecessor-in-interest

LGE had a duty to disclose essential patents during the development of the LTE standards, and

that "LGE violated ETSI's disclosure requirement . . . by failing timely to disclose the

existence of its [intellectual property rights] during the development of the LTE standard."

D.I. 10 at 18. These allegations plainly support the requirements of the defense, and are more

than sufficient to provide Evolved with fair notice of the issues involved. *Barnes & Noble, Inc.*

*v. LSI Corp.*, 849 F. Supp. 2d 925, 942 (N.D. Cal. 2012) (citing *Hynix*, 645 F.3d at 1348). The

affirmative defense therefore should withstand a motion to strike. *See id.* at 942 (denying

motion to strike implied waiver defense).

### 3. HTC's Sixth Affirmative Defense of Unenforceability is Well-Pleaded.

As with HTC's other FRAND-based affirmative defenses, Evolved contends that

HTC's defense of unenforceability is "not properly pled as an affirmative defense" because it

"is based in contract law." D.I. 32 at 11. As discussed above, this argument requires that the

court accept an unreasonably narrow definition of "affirmative defense" that is based on

misreading of the Ninth Circuit's opinion in *Microsoft v. Motorola*. *See supra*, pp. 10-12.

Further, Evolved ignores that courts have found a breach of FRAND sufficient basis to enjoin

enforcement of standard-essential patents (in the form of injunctive relief) against

implementers. *See Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1008-1010

(N.D. Cal. 2013). *See also Microsoft Corp. v. Motorola Inc.*, 696 F.3d 872; *Microsoft Corp. v. Motorola Inc.,* 795 F.3d 1024.

Finally, it is disingenuous for Evolved to assert that HTC's sixth affirmative defense does not include sufficient allegations to provide it with fair notice of the issue involved.  As HTC clearly states in its Answer, the defense is based on Evolved's and LGE's standard-setting misconduct—*i.e.*, the same FRAND-based misconduct discussed above with respect to HTC's other defenses.  D.I. 10 at 18-19.

### 4.     HTC's Seventh Affirmative Defense of License is Well-Pleaded.

Evolved contends—again, without citation or support—that HTC's defense of license fails as an affirmative defense to patent infringement merely because it sounds in contract.  D.I. 32 at 12.  This argument fails as a matter of law because it is well-established that the existence of an express or implied license is a defense to patent infringement, even though the rights conferred by a license are contractual in nature.  *See Wang Labs. Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (noting that a license "signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention").  In the words of the Supreme Court:  "No formal granting of a license is necessary in order to give it effect.  Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer the owner consents to his use of the patent . . . *constitutes a license and a defense to an action in tort*."  *De Forest Radio Tel. Co.*, 273 U.S. at 241 (1927) (emphasis added).

Contrary to Evolved's unsupported assertions, a license defense is not only a valid defense to patent infringement, but one that is particularly important in the context of standard essential patents.  *See Wang Labs.*, 103 F.3d at 1582.  For example, the Court may find an implied license exists as a consequence of a patentee's misconduct before a standard-setting

organization, such as advocating for the adoption of the patented technology into a standard without timely disclosing its pending patent applications. *Id.* at 1575-76 (finding an implied license based on patentee's course of conduct). Similarly, the Court may also find the existence of an implied license solely because the patentee has declared them essential a particular standard and agreed to license them on FRAND terms. *See Barnes & Noble*, 849 F. Supp. 2d at 943 (denying motion to strike implied license defense). Although there is no express license in this situation, one may be inferred from the patentee's conduct. *Id.*

Evolved simply ignores the enumerated bases for the defense and the allegations that support it. For example, as to unenforceability due to license, HTC's allegation extends to bases potentially beyond FRAND, and at this stage HTC has no obligation to be more specific. D.I. 10 ¶¶ 136-137. Further, as to implied license, to the extent the Patents-in-Suit are essential to any 3GPP or ETSI standard, HTC has an implied license to the Patents-in-Suit as a consequence of Evolved's contractual obligation to license its declared-essential patents on FRAND terms. D.I. 10 at 19. These allegations are more than sufficient to provide Evolved with fair notice of the issues involved, and therefore withstand a motion to strike. *See Barnes & Noble*, 849 F. Supp. 2d at 942 (denying motion to strike license defense where Barnes and Noble alleged only that, "to the extent any of the [a]sserted [p]atents are essential to an IEEE, 3GPP, [TI], ETSI, or [ATIS] standard," it had "an irrevocable right to a license under such patents").

### 5. Evolved's Motion to Strike Should be Denied Because Evolved Has Not Shown that it Will be Prejudiced if HTC's Affirmative Defenses Remain in the Case.

Entirely absent from Evolved's opening brief is any evidence showing that Evolved will be prejudiced by the continuing presence of HTC's FRAND-based defenses in the litigation. D.I. 32. This defect is fatal to Evolved's motion to strike. *See, e.g.*, *See Symbol*

*Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) ("[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party."); *Vurimindi v. Fuqua Sch. of Bus.*, No. 10-234, 2011 U.S. Dist. LEXIS 96496 (E.D. Pa. Aug. 25, 2011) (denying motion to strike where the plaintiff failed to show "that declining to strike this defense [would] prejudice him in any way"). Indeed, Evolved cannot possibly make such a showing, because each of the challenged defenses arises from the same set of facts—concerning Evolved's breach of its obligation to license the Patents-in-Suit on FRAND terms—that will necessarily be part of this case regardless of HTC's affirmative defense. In particular, these defenses are premised on the same facts as HTC's counterclaim for breach of contract, which, as explained above, is properly pleaded. Further, even if the Court were to dismiss HTC's counterclaim, the FRAND-related issues are the subject of allegations in Evolved's Complaint and would therefore be the subject of fact and expert discovery related to damages. *See, e.g.*, D.I. 1 at ¶¶ 13 (discussing FRAND obligations), 66-71 (discussing failed licensing discussions between Evolved and HTC).

## V.     CONCLUSION

For the foregoing reasons, HTC respectfully requests that this Court deny Evolved's motion in full. In the event the Court grants Defendants' motion in whole or in part, it should do so with leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Motivation Innovations, LLC v. Express, Inc.*, No. 11-615, 2012 WL 1415412, at *2 (D. Del. Apr. 24, 2012) ("[T]he Supreme Court has instructed that leave to amend should be freely granted . . . .").

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen S. Korniczky                        By:  */s/ Philip A. Rovner*
Martin R. Bader                                   Philip A. Rovner (#3215)
Ericka Schulz                                     Jonathan A. Choa (#5319)
Nam H. Kim                                        Hercules Plaza
Kayla E. Page                                     P.O. Box 951
SHEPPARD, MULLIN, RICHTER &                       Wilmington, DE  19899
HAMPTON, LLP                                      (302) 984-6000
12275 El Camino Real                              provner@potteranderson.com
Suite 200                                         jchoa@potteranderson.com
San Diego, CA 92130
(858) 720-8900                               *Attorneys for Defendants and Counterclaimants*
                                             *HTC Corporation and HTC America, Inc.*

Dated:  April 4, 2016
1220471