# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-543-SLR-SRF |
| | ) | |
| HTC CORPORATION, and HTC | ) | **PUBLIC VERSION** |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**LETTER TO THE HONORABLE SHERRY R. FALLON FROM PHILIP A. ROVNER, ESQ.**</u>

OF COUNSEL:

Stephen S. Korniczky
Martin R. Bader
Ericka Schulz
Nam H. Kim
Kayla E. Page
SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP
12275 El Camino Real
Suite 200
San Diego, CA 92130
(858) 720-8900

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendants HTC Corporation and
HTC America, Inc.*

Dated: September 13, 2016
Public Version:  September 19, 2016
1233546



**Potter
Anderson
Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

Philip A. Rovner
**Partner**
provner@potteranderson.com
(302) 984-6140 Direct Phone
(302) 658-1192  Fax

September 13, 2016

**BY CM/ECF AND HAND DELIVERY**

The Honorable Sherry R. Fallon
Magistrate Judge
U.S. District Court for the District of Delaware
U.S. Courthouse
844 North King Street
Wilmington, DE 19801

**PUBLIC VERSION**
September 19, 2016

Re:  *Evolved Wireless, LLC v. HTC Corporation, et al.,*
     *D. Del., C.A. No. 15-543-SLR*

Dear Judge Fallon:

Evolved Wireless, LLC ("Evolved") brought independent infringement actions against
six competing telephone manufacturers.  But for Evolved, there is nothing "related" about the six
independent actions.  Yet, Evolved has requested that HTC produce its confidential license
agreements with third parties to the unrelated competitor-Defendants in the other Evolved cases.



Evolved's request is an end run around Rule 45.  For example, if Evolved had only sued
HTC, to use the license agreements from the competitor-Defendants, Evolved would have had to
first subpoena each of them and overcome any objections and likely motions to quash.

---

1

The Honorable Sherry R. Fallon
September 13, 2016  PUBLIC VERSION September 19, 2016
Page 2

Nevertheless, Evolved requests that HTC and the Third Party Licensor produce confidential information in a litigation that (1) has nothing to do with HTC, (2) has nothing to do with the Third Party Licensor, (3) where the confidential license agreements are unrelated to the competitor-Defendant in the case, and (4) where the competitor-Defendants have no personal stake in maintaining the confidentiality of the agreements, potentially prejudicing HTC including a loss in competitive advantage.[2]  Thus, HTC objects to Evolved producing these Third Party Licenses to HTC's competitors in the unrelated cases due to confidentiality issues, wherein the risk of disclosure necessarily multiplies upon disclosure to every new person.

Moreover, HTC objects to Evolved producing the license agreements of the other unrelated competitor-Defendants in this case, as it will unjustifiably increase the discovery burden significantly, and disproportionally, to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  This increased burden on discovery far outweighs its likely benefit given the lack of importance on resolving issues in the other cases.  *Id.*

### The More Expansive the Disclosure, the Higher Likelihood of Inadvertent Disclosure

Even if the agreements were disclosed to only outside counsel of the other five defendants, that would be collectively at least 33 other attorneys of record, plus an unknown number of staff, third party vendors, and experts.  The more custodians exposed to the confidential license agreement, the greater risk of inadvertent disclosure.  As stated in attached Exhibits A and B, letters from both Nokia Corp. and Wi-LAN International respectively, the risk that the confidential license agreements will be inadvertently disclosed to competitors is real, and very high.  HTC has also received an objection to the cross-production from PanOptis, who will be providing additional information.

Of particular concern



Additionally, even if disclosed only to outside-counsel, that attorney may one day represent the competitor-Defendant (or another competitor) in negotiating a similar license, and that attorney's advice would necessarily be corrupt as he or she would not be able to delete the confidential business information from his or her memory.  Furthermore, the other competitor-Defendants do not want the license agreements, and Evolved has failed to provide a valid reason why the other unrelated competitor-Defendants should be forced to receive them.

Finally, how a solution of an "outside attorneys' eyes" only designation would actually play out is unclear.  For example, if Evolved uses the HTC agreements against the other

---

[2] With the exception of ▇▇▇▇▇▇

The Honorable Sherry R. Fallon
September 13, 2016  PUBLIC VERSION September 19, 2016
Page 3

competitor-Defendants, employees of the competitor-Defendants will likely need to be privy to the information as it could have a substantial impact on the resolution of their case.  Thus, HTC finds no reassurance in Evolved's statement that the confidential information will not be disclosed to in-house counsel.

### Receiving Competitor-Defendants' Confidential License Agreements Exponentially Expands the Burden of Discovery

In this case, Evolved demanded HTC produce all license agreements related to LTE, regardless if the relationship to LTE was marginal at best.  For example, even where a license agreement covered entire company patent portfolios, as long as a licensing party owns patents related to LTE, Evolved expected production.  (Ex. C, August 19, 2016 Email from Ryan Schultz.)  Thus, if each of the five other defendants in co-pending litigation against Evolved produced approximately the same number of agreements, *i.e.,* ████ similar agreements, there are likely over ████ additional license agreements, and potentially ████ of additional Third Party Licensors, at issue.  Evolved has made no effort to narrow the scope of the production of license agreements, but instead lumps all ████ agreements together, and states that they will show "customary rates for patents essential to the LTE standard."  (D.I. 89 at 3.)  However, Evolved never shows how this would be the case.  Nor does Evolved reasonably explain why license agreements that would never have been available to HTC or Evolved are relevant in analyzing their hypothetical negotiation.  Moreover, to verify Evolved's argument requires substantial investigation ignored by Evolved's brief.

Before the Third Party Licenses can be used, HTC and Evolved must determine if there is evidence that ties "the relevant facts and circumstances of the particular case at issue [*i.e.*, each of the other competitor-Defendants' licenses] and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010)).

For example, for each of the ████ additional license agreements, Evolved and HTC would need to explore the *Georgia-Pacific* factors, including whether the patents in the proffered license are comparable to the patents in this case. *See Georgia-Pacific*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 2) (emphasis added); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2007 U.S. Dist. LEXIS 396376 (N.D. Ill. 2007) (citing 1-20 Chisum on Patents § 20.07 (2007)). Given that a number of the agreements HTC provided involve entire patent portfolios of both parties, the ████ additional license agreements could include hundreds to tens of thousands of patents to analyze.  HTC would also need to depose the competitor-Defendants on *each* of their non-related agreements and probe a whole host of factors to see if the agreements would have even been relevant to the particular hypothetical negotiation between HTC and Evolved.

Although Evolved cites to *Microsoft v. Motorola, Inc.*, No. C10-1823JLR, 2013 U.S. Dist. LEXIS 60233, at *19 (W.D. Wash. Apr. 25, 2013), to supports its contention that a "modified version" of the *Georgia-Pacific* factors can be considered, Judge Robart did not

The Honorable Sherry R. Fallon
September 13, 2016  PUBLIC VERSION September 19, 2016
Page 4

decide that random third party license agreements are always relevant, or that an unfettered production to competitor-Defendants is justified. *Id.*

Even if using the "modified version" of the *Georgia-Pacific* factors, the parties would still need to consider the importance of each standard essential patent ("SEP") in the third party patent portfolio to the LTE standard *Id.* at *19. Moreover, the parties would need to consider the importance of the standard and each SEP to the products at issue in the specific license agreement. *Id.* Finally, the parties would need to figure out how to separate out the non-LTE patents from the license.

Furthermore, the investigation must consider whether, as compared to HTC and Evolved's situation: (1) the fee-structure, exclusive nature, and other terms of the prior license are significantly different; (2) the prior license arose in the context of litigation; (3) the prior license was consummated at a significantly different time, or in a significantly different industry; (4) the technology claimed in the prior license was intended for significantly different use; (5) the parties involved in the prior license had a significantly different relationship; (6) the prior license confers rights beyond those of the patent-in-suit; (7) the prior license does not involve the patent-in-suit; or (8) the prior license involves only third parties.

Investigating these factors for just the ▇ HTC license agreements that Evolved demanded will be extensively burdensome and expensive. Evolved's position would unjustifiably substantially increase this burden by a factor of ▇▇▇▇.

Finally, Evolved has had many of the license agreements from HTC and the other competitor-Defendants for months now. Yet they failed to show that any of the non-HTC agreements are specifically relevant to the hypothetical negotiation between Evolved and HTC, or how the HTC agreements are specifically relevant to the non-related Defendants. Accordingly, the cross-production and use of the unrelated license agreements is unjustified given the needs of the case, and Evolved's request should be denied. *See* Fed. R. Civ. P. 26(b)(1).

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner
provner@potteranderson.com

cc: Counsel of Record – by CM/ECF and E-mail
1233546