IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-543-JFB-SRF |
| | ) | |
| HTC CORPORATION AND HTC AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-544-JFB-SRF |
| | ) | |
| LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., AND MOTOROLA MOBILITY, | ) | |
| | ) | |
| Defendants. | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-545-JFB-SRF |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| EVOLVED WIRELESS, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-546-JFB-SRF |
| | ) | |
| ZTE CORPORATION, ZTE (USA) INC., | ) | |
| AND ZTE SOLUTIONS INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-547-JFB-SRF |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| MICROSOFT MOBILE OY, AND NOKIA | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT OF VALIDITY**

OF COUNSEL:
Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
Kayla Page
SHEPPARD, MULLIN, RICHTER &
    HAMPTON, LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900


OF COUNSEL:
Mitchell G. Stockwell
Richard W. Goldstucker
Shayne E. O'Reilly
KILPATRICK TOWNSEND AND
    STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500


Taylor H. Ludlam
KILPATRICK TOWNSEND AND
    STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700


OF COUNSEL:
Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Defendants HTC Corporation
and HTC America, Inc.*


David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendant Motorola Mobility LLC*


John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*

OF COUNSEL:
Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000

Kelly E. Farnan (No. 4395)
Travis S. Hunter (No. 5350)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
hunter@rlf.com
*Attorneys for Defendant ZTE (USA) Inc.*

OF COUNSEL:
Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Joseph A. Micallef
Anna M. Weinberg
Wonjoo Suh
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Rodger D. Smith II (No. 3778)
Jeremy A. Tigan (No. 5239)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
rsmith@mnat.com
jtigan@mnat.com
*Attorneys for Defendants Microsoft Corporation,*
*Microsoft Mobile Oy, and Microsoft Mobile Inc.*
*(f/k/a Nokia Inc.)*

Dated: November 7, 2017

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

III.   SUMMARY OF THE ARGUMENT .................................................................1

IV.   COUNTERSTATEMENT OF FACTS .............................................................2

     A.    The '373 Patent..........................................................................................2

           1.    Overview of the '373 Patent .........................................................2

           2.    The '373 Provisional Application.................................................4

     B.    The Prior Art.............................................................................................5

           1.    Person of Ordinary Skill in the Art..............................................5

           2.    The Wang Reference.....................................................................6

           3.    Asserted Obviousness Combinations............................................6

V.    ARGUMENT .....................................................................................................7

     A.    Legal Standard ..........................................................................................7

     B.    Genuine Issues of Material Fact Regarding the Priority Date of the '373
          Patent Preclude Summary Judgment of Validity ......................................7

           1.    "wherein the preamble information is a dedicated preamble used
                 only for a specific terminal" ('373 Patent, all asserted claims)...................9

           2.    "wherein the dedicated preamble is determined by the target base
                 station" ('373 Patent, all asserted claims)....................................................12

           3.    "wherein the access information is for a random access channel
                 (RACH)" ('373 Patent, claim 5) ...............................................................14

           4.    "wherein the preamble information includes frequency information
                 and time information" ('373 Patent, claim 6) ...........................................15

            5.    "transmitting a handover command that contains the access
                 information to the terminal upon receiving the access information
                 by the source base station" ('373 Patent, claim 7)....................................15

i

6. "wherein the preamble information is used to identify the terminal" ('373 Patent, claim 12)..............................................................................16

7. "transmitting the preamble information to the target base station for performing a radio access procedure with the target cell" ('373 Patent, claim 18) ...................................................................17

8. "wherein the access information includes a transmission characteristic of the preamble information, and the transmission characteristic relates to frequency and time used in transmitting the preamble information" ('373 Patent, claim 19)...........................................18

9. "wherein the access information includes system information transmitted from the target base station" ('373 Patent, claim 20) .............19

C. Genuine Issues of Material Fact Regarding the Priority Date of the Wang Prior Art Reference Preclude Summary Judgment of Validity ............................20

1. "a reserved RACH preamble signature" / "a particular RACH preamble signature is reserved"................................................................22

2. "a reserved RACH preamble signature is indicated in the handover command"..................................................................................26

D. Genuine Issues of Material Fact Regarding Whether the Wang Prior Art Reference Discloses "the dedicated preamble is determined by the target base station" Preclude Summary Judgment of Validity ........................................27

E. Defendants Have Provided Sufficient Motivations to Combine Prior Art References..............................................................................32

1. Defendants Have Provided Sufficient Motivations to Combine the Hu Reference with the Wang Reference and the Hu Reference with the NEC Reference ..............................................................................33

2. Defendants Have Provided Sufficient Analysis for Their Single-Reference Obviousness Arguments..........................................................38

(a) Defendants Have Provided Sufficient Motivations to Combine the Wang Reference with the Knowledge of a POSITA.............................................................................38

(b) Defendants Have Provided Sufficient Motivations to Combine the Hu Reference with the Knowledge of a POSITA.............................................................................39

VI. CONCLUSION.............................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)......................................................................... 37

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970).......................................................................................... 39

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................... *passim*

*Application of Hogan*,
  559 F.2d 595 (C.C.P.A. 1977) ......................................................................... 31

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016)........................................................................ 39

*Bd. of Trustees of Leland Stanford Junior Univ. v. Chinese Univ. of Hong Kong*,
  860 F.3d 1367 (Fed. Cir. 2017)........................................................................ 31

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
  733 F. Supp. 2d 517 (D. Del. 2010).................................................................. 29

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
  661 F.3d 629 (Fed. Cir. 2011)........................................................................... 27

*B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*,
  375 F. App'x 28 (Fed. Cir. 2010) ............................................... 20, 23, 27, 34

*Bone Care Int'l, L.L.C. v. Roxane Labs., Inc.*,
  C.A. No. 09-285-GMS, 2012 WL 2126896 (D. Del. June 11, 2012)................................ 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)............................................................................................ 7

*Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech. (USA) Inc.*,
  542 F.3d 1363 (Fed. Cir. 2008)........................................................................ 38

*Cont'l Can Co. USA v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991)........................................................................ 30

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
  800 F.3d 1375 (Fed. Cir. 2015)..................................................................... 8, 26

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
    464 F.3d 1356 (Fed. Cir. 2006)........................................................................ 32

*E.I. du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*,
    657 F. App'x 1004 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 1123, 197 L. Ed. 2d
    235 (2017)........................................................................................................... 36

*Enzo Life Scis., Inc. v. Gen-Probe Inc.*,
    C.A. No. 12-104-LPS, 2017 WL 2829625 (D. Del. June 28, 2017)........................ 19, 21

*Ethyl Corp. v. Borden, Inc.*,
    427 F.2d 206 (3d Cir. 1970)........................................................................... 17, 24

*Goldman v. Standard Ins. Co.*,
    341 F.3d 1023 (9th Cir. 2003) ............................................................................. 24

*HSM Portfolio LLC v. Elpida Memory Inc.*,
    160 F. Supp. 3d 708 (D. Del. 2016)..................................................................... 31

*ICN Photonics, Ltd. v. Cynosure, Inc.*,
    73 F. App'x 425 (Fed. Cir. 2003) ................................................................. *passim*

*IGT v. Bally Gaming Int'l, Inc.*,
    610 F. Supp. 2d 288 (D. Del. 2009), *aff'd*, 659 F.3d 1109 (Fed. Cir. 2011) ............ 37

*In re Imes*,
    778 F.3d 1250 (Fed. Cir. 2015).......................................................................... 30

*In re Magnum Oil Tools Int'l, Ltd.*,
    829 F.3d 1364 (Fed. Cir. 2016)....................................................................... 8, 13

*In re Wertheim*,
    646 F.2d 527 (C.C.P.A. 1981) ........................................................................... 26

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008).......................................................................... 37

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    221 F. Supp. 3d 534 (D. Del. 2016)................................................................... 27

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014).......................................................................... 37

*Invitrogen Crop. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005).......................................................... 7, 15, 17, 25

*Johns Hopkins Univ. v. 454 Life Scis. Corp.*,
    183 F. Supp. 3d 563 (D. Del. 2016) ................................................................. 8

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ............................................................... 32, 34

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007) ....................................................................... 32, 35, 36

*Lambda Optical Sols. LLC v. Alcatel-Lucent USA, Inc.*,
    C.A. No. 10-487-RGA-CJB, 2017 WL 4002148 (D. Del. Mar. 31, 2017), *report
    and recommendation adopted*, C.A. No. 10-487-RGA-CJB, 2017 WL 4002141
    (D. Del. Sept. 11, 2017) ........................................................................ 29

*Lamoureux v. AnazaoHealth Corp.*,
    No. 03-cv-01382(WIG), 2012 WL 12537933 (D. Conn. Sept. 24, 2012) ....................... 12

*M2M Sols. LLC v. Motorola Sols., Inc.*,
    C.A. No. 12-033-RGA, 2016 WL 70814 (D. Del. Jan. 6, 2016) .............................. 18, 24

*M2M Sols. LLC v. Sierra Wireless Am., Inc.*,
    C.A. No. 12-030-RGA, 2016 WL 1298961 (D. Del. Mar. 31, 2016) ........................ *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................. 7

*Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*,
    527 F.3d 1330 (Fed. Cir. 2008) ........................................................... *passim*

*OSRAM Sylvania v. Am. Induction Techs.*,
    701 F.3d 698 (Fed. Cir. 2012) ....................................................... 29, 35, 39, 40

*Padcom, Inc. v. NetMotion Wireless, Inc.*,
    C.A. No. 03-983-SLR, 2006 WL 416866 (D. Del. Feb. 22, 2006) .............................. 27

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007) ................................................................. 36

*Plantronics, Inc. v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013) ................................................................. 32

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    C.A. No. 08-309-LPS, 2012 WL 938926 (D. Del. Mar. 13, 2012) ................................. 8

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000) ................................................................. 20

*Resolution Trust Corp. v. Gill*,
   960 F.2d 336 (3d Cir. 1992)............................................................................ 7, 16, 21, 32

*Robocast, Inc. v. Apple Inc*.,
   39 F. Supp. 3d 552 (D. Del. 2014)................................................................................ 29

*Rockwell Int'l Corp. v. United States*,
   147 F.3d 1358 (Fed. Cir. 1998)..................................................................................... 24

*Scott v. Harris*,
   550 U.S. 372 (2007)......................................................................................................... 7

*Solvay, S.A. v. Honeywell Int'l Inc*.,
   886 F. Supp. 2d 396 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014) ..................... 36

*Structural Rubber Prods. Co. v. Park Rubber Co*.,
   749 F.2d 707 (Fed. Cir. 1984)...................................................................................... 27

*Suffolk Techs., LLC v. AOL Inc.*,
   752 F.3d 1358 (Fed. Cir. 2014)............................................................................... 14, 15

*Tarkus Imaging, Inc. v. Adobe Sys., Inc*.,
   C.A. No. 10-063-LPS, 2012 WL 2175788 (D. Del. June 14, 2012)............................... 24

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010)................................................................... 34, 35, 39, 40

*Transonic Sys., Inc. v. Non–Invasive Med. Techs. Corp*.,
   143 F. App'x. 320 (Fed. Cir. July 25, 2005).................................................................. 24

*U.S. Water Servs., Inc. v. Novozymes A/S*,
   843 F.3d 1345 (Fed. Cir. 2016).......................................................................... 17, 19, 31

*Vas–Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991).................................................................................... 31

*Vasudevan Software, Inc. v. MicroStrategy, Inc*.,
   782 F.3d 671 (Fed. Cir. 2015)...................................................................................... 14

## Statutes

35 U.S.C. § 119................................................................................................................ 26

Fed. R. Civ. P. 56............................................................................................................. 39

NOTE ON CITATIONS

- "Defendants" refers collectively to HTC Corporation, HTC America, Inc. (collectively "HTC"), Motorola Mobility LLC ("Motorola"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively "Samsung"), ZTE (USA) Inc. ("ZTE"), Microsoft Corporation, Microsoft Mobile Oy, and Microsoft Mobile Inc. (f/k/a Nokia Inc.) (collectively "Microsoft") in the above-captioned matters.

- "Evolved" refers to plaintiff Evolved Wireless, LLC in the above-captioned matters.

- Unless otherwise noted, docket entries (D.I.) cited herein refer to Case No. 15-cv-545.

- "Br." refers to Evolved Wireless's Opening Summary Judgment Brief on Validity (D.I. 249).

- "'373 Patent" refers to U.S. Patent. No. 7,809,373, attached as Exhibit 1 to the Declaration of Ryan M. Schultz in Support of Evolved Wireless's Opening Summary Judgment Brief on Validity ("Schultz Decl.") (D.I. 250).

- "'373 Provisional" and "'373" refer to U.S. Provisional Patent Application No. 60/732,080, to which the '373 Patent claims priority, and is attached as Exhibit 5 to the Schultz Decl.

- "Wang Patent" refers to U.S. Patent. No. 8,131,295, which Defendants are asserting as prior art against the '373 Patent, and is attached as Exhibit 4 to the Schultz Decl.

- "Wang Provisional" refers to U.S. Provisional Patent Application No. 60/815,023, to which the Wang Patent claims priority, and is attached as Exhibit 7 to the Schultz Decl.

- "Wang" and "Wang reference" refer collectively to the Wang Patent and Wang Provisional.

- "Hu" and "Hu reference" refer to the certified English translation of PRC Patent Publication No. CN1596020A, which Defendants are asserting as prior art against the '373 Patent, and is attached as Exhibit C to the Declaration of Todd M. Briggs in support of Defendants' Answering Brief ("Briggs Decl."), filed concurrently herewith.

- "NEC" and "NEC reference" refer to the document titled "EUTRAN handover procedure for LTE_ACTIVE" submitted by NEC and NTT DoCoMo as Technical Document No. TSGR3(05)1106 to the Joint RAN2-RAN3 3GPP Working Group Meeting #48bis held in Cannes, France on October 11-14, 2005, which Defendants are asserting as prior art against the '373 Patent, and is attached as Exhibit D to the Briggs Decl.

- References to U.S. patents are indicated by column and line number, or by claim number.  A reference to "'373 at 2:40-3:34" therefore means column 2, line 40 through column 3, line 34 of Schultz Decl., Exhibit 1, U.S. Patent No. 7,809,373.

- Deposition transcripts are referenced by the name of the deponent.  A reference to "Kakaes Tr. 358:13-359:11" therefore means page 358, line 13 through page 359 line 11 of the August 18-19, 2017 deposition of Dr. Apostolos Kakaes, excerpts of which are attached as Exhibit B to the Briggs Decl.

- References to expert reports are indicated by the name of the expert witness and paragraph number.  A reference to "Cooklev Reb. ¶¶ 466-477" therefore means paragraphs 466 through 477 of Dr. Todor Cooklev's corrected rebuttal report, served on June 26, 2017, excerpts of which are attached as Exhibit A to the Briggs Decl.  Similarly, "Kakaes Op." refers to the May 22, 2017 opening expert report of Dr. Apostolos K. Kakaes, which is attached as Exhibit 1 to his declaration filed herewith ("Kakaes Decl.").  Similarly, "Kakaes Supp." refers to the July 20, 2017 supplemental expert report of Dr. Kakaes, excerpts of which are attached as Ex. 2 to the Kakaes Decl.

- References to other exhibits are indicated by production number.  For example, a reference to "Ex. D at 2586" means production page number EW_DEFENDANTS0002586 of the NEC reference, Ex. D to the Briggs Decl.

## I.      INTRODUCTION

Defendants[1] submit this answering brief in opposition to Evolved's Motion for Summary Judgment on Validity by which Evolved "moves for partial summary judgment that the '373 patent is valid over [Defendants'] anticipation and obviousness arguments."  *See* Br. at 36. Evolved's motion should be denied because there are numerous disputed issues of material fact with respect to the validity of the '373 patent—each of which independently precludes summary judgement of validity.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

Evolved's statement of the nature and stage of the proceedings is generally accurate.  *See* Br. at 1-2.  Defendants further refer the Court to their Opening Brief in Support of Motion for Summary Judgement of Covenant not to Sue for an overview of the proceedings thus far. (D.I. 224).  Also currently pending before the Court is Defendants' Motion for Summary Judgement of Non-Infringement (D.I. 223), for which Defendants submitted their opening brief on October 6, 2017 (D.I. 248).  By the instant motion, Evolved has not sought summary judgment of validity for U.S. Patent No. 7,881,236, the second of the two remaining patents-in-suit.

## III.      SUMMARY OF THE ARGUMENT

1.      Genuine issues of material fact regarding the priority date of the '373 Patent preclude summary judgment of validity.  Each party's expert witness has provided extensive testimony opining on whether the '373 Provisional patent application does—or does not— provide written description support for the asserted claims in the issued '373 Patent.  These experts disagree on numerous material facts relating to this issue.  As written description is a

---

[1]   Because Evolved filed "substantially the same" opening briefs in each of the above-captioned matters, Defendants jointly submit this opposition to Evolved's motion. Br. at 2 n.2

question of fact, it cannot be resolved on the instant record without weighing of the evidence or credibility determinations—both of which are prohibited on summary judgment.

2.      Genuine issues of material fact regarding the priority date of the Wang reference also preclude summary judgment of validity.  Again, each party's expert witness has provided conflicting opinions on whether the Wang Provisional provides written description support for the Wang Patent.  These conflicting opinions present questions of fact that cannot be resolved on the instant record without improper weighing of evidence or credibility determinations.

3.      Genuine issues of material fact regarding the anticipatory disclosure of the Wang reference also preclude summary judgment of validity.  As with other matters raised in Evolved's brief, the parties' experts have provided directly conflicting testimony regarding whether Wang anticipates, expressly or inherently, that "the dedicated preamble is determined by the target base station," as recited by each asserted claim of the '373 Patent.  Evolved's arguments also overlook the fact that Defendants have presented unrebutted testimony regarding several aspects of the Wang reference.  Summary judgment is accordingly inappropriate.

4.      Defendants have provided, through the testimony of their technical expert witness, sufficient motivations to combine the prior art references asserted against the '373 Patent. With its disregard for significant portions of Defendants' expert's opinions, Evolved's opening brief presents a distorted picture of the record through the lens of a legally inaccurate standard for obviousness.  Moreover, as with the rest of the matters raised in Evolved's motion, significant issues of material fact preclude summary judgment.

## IV.   COUNTERSTATEMENT OF FACTS

### A.   The '373 Patent

#### 1.    Overview of the '373 Patent

As explained more fully in Defendants' Opening Brief in Support of Their Motion for

Summary Judgment of Non-Infringement (D.I. 248 at 3-5), incorporated by reference herein, the

'373 Patent, filed on October 27, 2006, relates to methods and an apparatus for performing a

handover of a mobile terminal from a source base station to a target base station. *See* '373 Patent

at 5:51-63, Fig. 1. The '373 Patent does not purport to have invented the concept of a handover

in a mobile communications system. *See id.* at 4:66-57. Indeed, nearly half of the specification

and eight of the nine figures in the '373 Patent describe prior art handover techniques rather than

the claimed invention. *See id.* at 1:1-5:7, Figs. 1-8. Instead, the '373 Patent purports to claim

only a narrow improvement over the prior art: a "dedicated preamble used only for a specific

terminal," as recited in each independent claim. *See, e.g.*, *id.* at 10:15-16; D.I. 248 at 5-6.

The "Background Art" section of the '373 Patent's specification explains that much, if

not most, of the details of the LTE handover procedure were admittedly known in the prior art.

*See id.* at 1:1-5:7; Kakaes Op. ¶¶ 41-62. For example, a random access channel ("RACH") was

used in the prior art wideband code-division multiple-access ("W-CDMA") standard. '373

Patent at 1:32-35, 2:40-3:21. This RACH was "mapped to a Physical Random Access Chanel"

("PRACH"), which in turn was "divided into a preamble part and a message part." *Id.* at 2:48-

56. The "preamble" was of length 4096 chips and consisted of 256 repetitions of a signature of

length 16 chips. *Id.* at 3:26-34; Kakaes Op. ¶¶ 147-151. A W-CDMA terminal ("UE")

transmitted the preamble in the uplink direction—*i.e.*, from the terminal to the base station. '373

Patent at 2:62-67, 3:32-34; Kakaes Op. ¶ 56. This technology carried through to LTE. For

example, the "Evolved Universal Mobil[e] Telecommunication System (E-UMTS)," on which

LTE is based (*see* Cooklev Op., D.I. 251, Ex. A ¶¶ 88-92), "evolved from the UMTS system"

through "standardization work . . . being performed by the 3GPP standards organization." '373

Patent at 3:38-41. UMTS, in turn, was based on W-CDMA technology. *Id.* at 1:29-35. As the

'373 Patent specification further explains, the prior art "E-UMTS network generally comprise[d] at least one mobile terminal (i.e., user equipment: UE)" and "base stations (i.e., Node Bs)."  *Id.* at 3:42-44.  And in this system, "the terminal use[d] the RACH for an uplink time synchronization with the target [base station] and for an uplink resource allocation."  *Id.* at 5:1-4.

Contrary to Evolved's opening brief, "eliminating the need for RNCs by having the relevant functionality related to handovers in the 'evolved' or 'enhanced' base stations" is not a claimed invention—this functionality is described in the "Background Art" section of the specification.  *See* Br. at 5 (citing *id.* at 3:37-53, 3:60-67, Fig. 6).  Further, the '373 Patent does not purport to claim that it is novel for "the source base station to make the handover decision."  *Id.*  At the time of filing "standardization work [was] currently being performed by the 3GPP standards organization." *Id.* at 3:40-41.  The NEC reference, which was published before the filing of the '373 Provisional, explains that the "Source E-Node B decides the appropriate target cell" during a handover.  Briggs Decl., Ex. B at 2586; Kakaes Op. ¶¶ 458, 465-466, App'x B.

## 2.    The '373 Provisional Application

The '373 Patent, which was filed on October 27, 2006 as Appl. No. 11/553,939, claims priority to the '373 Provisional, which was filed on October 31, 2005.  *See* Schultz Decl., Ex. 5 at 8253; '373 Patent at 1:9-14.  The '373 Provisional itself is not a single, self-contained document.  Rather, as recognized by both parties' experts, it is a collection of at least six separate documents: Untitled ('373 Provisional at 8257-8267), "RACH for LTE" (*id.* at 8268-8274), "LTE Protocol and Architecture aspects" (*id.* at 8275-8281), "Functions of E-RRC and E-MAC" (*id.* at 8282-8283), "Broadcast, Paging/Notification and Shared Channel" (*id.* at 8284-8288), and "LTE Protocol and Architecture aspects" (*id.* at 8289-8295).  *See e.g.*, Kakaes Op. ¶ 89; Cooklev Reb. ¶¶ 334-335.  Each of these individual documents, in turn, consists of several numbered and/or titled sections.  For example, the "RACH for LTE" document includes sections titled "2.1

4

usage of RACH in current system" ('373 Provisional at 8268), "2.2 INITIAL ACCESS for LTE" (*id.* at 8269), "2.3 CELL Change for LTE" (*id.* at 8271), "2.4 Scheduling Information for LTE" (*id.* at 8273), and "2.5 MEASUREMENT REPORTING for LTE" (*id.* at 8274).  Of all the foregoing disclosures, the parties agree only that the "2.3 CELL Change for LTE" section of the "RACH for LTE" document (*id.* at 8271-8273) is possibly relevant to the asserted claims of the '373 Patent.  *See e.g.*, Kakaes Op. ¶¶ 89-90; Cooklev Reb. ¶ 334.  The parties disagree whether the remaining sections and documents are relevant.  *See, e.g.*, Kakaes Op. ¶¶ 89-90; Kakaes Supp. ¶ 14; Cooklev Reb. ¶¶ 335, 352.  More fundamentally, as detailed in Section V.B below, the parties disagree whether the '373 Provisional provides support for the '373 Patent.  *Compare, e.g.*, '373 Provisional at Fig. 5 *with* '373 Patent at Fig. 9:



Fig 5. Proposed cell change procedure with SCH

## B.   The Prior Art

### 1.   Person of Ordinary Skill in the Art

The parties agree that a person having ordinary skill in the art ("POSITA") at the time of the alleged invention would have had at least a degree in electrical engineering, two to three years of experience in cellular communications systems, and awareness of the 3GPP working groups and their work on the LTE standard.  *See* Br. at 10-11.

5

## 2.   The Wang Reference

Defendants are asserting the Wang Patent as prior art to the '373 Patent under 35 U.S.C. §§ 102(e) and 103.  The Wang Patent was filed on June 19, 2007 as Appl. No. 11/765,013 and claims priority to the Wang Provisional, which was filed on June 20, 2006.  Like the '373 Patent, the Wang reference "is related to a method and system for performing handover[s] in a long term evolution (LTE) system."  Wang Patent at 1:14-17.  Wang taught that a "dedicated RACH preamble signature is indicated in the handover command."  *Id*. at 4:64-5:1. The parties dispute whether the Wang Provisional provides support for the Wang Patent (Section V.C, below) and whether Wang teaches that "the dedicated preamble is determined by the target base station" (Section V.D, below).  *Compare, e.g.*, Wang Provisional at Fig. 1 *with* Wang Patent at Fig. 9:



## 3.   Asserted Obviousness Combinations

Defendants contend that the following prior art references render the '373 Patent obvious under 35 U.S.C. § 103: (1) the combination of the Wang and Hu references (*see, e.g.*, Kakaes

Op. ¶¶ 454-457); (2) the combination of the Hu and NEC references (*id.* ¶¶ 458-472); (3) the

Wang reference alone (*id.* ¶¶ 283-453); and (4) the Hu reference alone (*id.* ¶¶ 104-282).  Evolved

has not contested the public availability of these references.  *See, e.g., id.* at App'x B.

## V.      ARGUMENT

### A.      Legal Standard

A motion for summary judgment must be denied if genuine issues as to any material fact

exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986); *see also Resolution Trust Corp. v. Gill*, 960 F.2d

336, 340 (3d Cir. 1992) ("[W]here . . . the motion does not establish the absence of a genuine

factual issue, the district court should deny summary judgment even if no opposing evidentiary

matter is presented.").  If that burden has been met, the non-moving party must then come

forward and establish the specific material facts in dispute to survive summary judgment.

*Matsushita Elec. Indus. Co*. 475 U.S. at 588.  In determining whether a genuine issue of material

fact exists for trial, a trial court views the evidence and the inferences in the light most favorable

to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).   "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . [when] ruling on a motion for summary judgment . . . ."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Moreover, "[u]nsubstantiated

attorney argument regarding the meaning of technical evidence is no substitute for competent

expert testimony" and cannot support the moving party's burden on summary judgment.

*Invitrogen Crop. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005).

### B.      Genuine Issues of Material Fact Regarding the Priority Date of the '373
                Patent Preclude Summary Judgment of Validity

As evidenced by Evolved's own opening brief, there exist numerous issues of material

fact that are disputed between the parties regarding the priority date of the '373 Patent.  Indeed,

Evolved's brief highlights no less than **nine** claim limitations for which each party's expert

witness provides directly conflicting opinions.  Evolved nonetheless asks this Court to reject **all**

of the conclusions of Defendants' expert, Dr. Apostolos Kakaes, as "contradictory and not

supported by the evidence," and instead adopt wholesale those of its own expert, Dr. Todor

Cooklev.  *See* Br. at 13.  Such weighing of the evidence and credibility determinations at

summary judgment are manifestly inappropriate.  *See Anderson*, 477 U.S. at 255; *see also, e.g.,*

*ICN Photonics, Ltd. v. Cynosure, Inc.*, 73 F. App'x 425, 430-431 (Fed. Cir. 2003) (reversing

grant of summary judgment where district court's conclusion that expert opinion regarding

written description "was conclusory and lacking in factual foundation" was "a factor going the

weight of his testimony, not a fatal flaw"); *Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F.

Supp. 3d 563, 574 (D. Del. 2016) (competing expert testimony "creates a genuine issue of

material fact with respect to whether the [patent] application provides adequate written

description."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CA 08-309-

LPS, 2012 WL 938926, at *9 (D. Del. Mar. 13, 2012) (same).

There is no presumption that a patent is entitled to an earlier effective filing date.  "[A]

patentee bears the burden of establishing that its claimed invention is entitled to an earlier

priority date than an asserted prior art reference."  *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d

1364, 1375-76 (Fed. Cir. 2016).  The Federal Circuit has ruled for instance that "because the

PTO does not examine provisional applications as a matter of course[,] such a presumption is . . .

not justified" for patents that claim the benefit of a provisional application, as is the case here.

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1380 (Fed. Cir. 2015).

Evolved cannot, at this stage of the case, establish as a matter of law that the '373 Patent

is entitled to the filing date of the '373 Provisional.  "To establish that an asserted claim of a patent-in-suit is entitled to the priority filing date of an earlier parent application, the patentee has the burden of proving that the written description in that earlier application supports the later-filed claim."  *Bone Care Int'l, L.L.C. v. Roxane Labs., Inc.*, No. 09-CV-285 GMS, 2012 WL 2126896, at *34 (D. Del. June 11, 2012).  In addition to the numerous factual disputes detailed below, Evolved's brief is riddled with attorney argument for which it provides no record citation. *See M2M Sols. LLC v. Sierra Wireless Am., Inc.*, No. CV 12-30-RGA, 2016 WL 1298961, at *3 (D. Del. Mar. 31, 2016) ("[T]he written description inquiry is a fact question, viewed from the perspective of a person of ordinary skill in the art, and attorney arguments are not facts.").

Each of the following disputes provides an independent reason for denying Evolved's request for summary judgment of validity of the '373 Patent.

### 1.   "wherein the preamble information is a dedicated preamble used only for a specific terminal" ('373 Patent, all asserted claims)

Dr. Kakaes (Defendants' expert) and Dr. Cooklev (Evolved's expert) have provided divergent opinions as to whether the '373 Provisional provides written description support for the claim limitation "wherein the preamble information is a dedicated preamble used only for a specific terminal," which is found in all asserted claims of the '373 Patent.[2]  *Compare* Kakaes Op. ¶¶ 86-95, Kakaes Supp. ¶¶ 5-14, *and* Kakaes Tr. 189:13-192:6, *with* Cooklev Reb. ¶¶ 347-358.  In support of its motion, Evolved's opening brief more or less parrots the opinions that Dr. Cooklev provided in his rebuttal report.[3]  *Compare* Br. at 14-17 *with* Cooklev Reb. ¶¶ 349-

---

[2]   Evolved's brief only discusses this limitation in the context of independent claims 15 and 24. Br. at 13.  For completeness, Samsung also refers to the Court to independent claims 1 and 8.

[3]   However, Evolved's brief also attributes opinions to Dr. Cooklev that are not found in his report.  For example, Dr. Cooklev does not discuss the "PRACH of a WCDMA prior art system" or whether the "reserved resource" in Fig. 6 of the '373 Provisional is "reserved for a specific terminal."  *Compare* Br. at 16 *with* Cooklev Reb. ¶¶ 347-353.

352.   Evolved then asks this Court to disregard the detailed opinions of Dr. Kakaes—not on the basis of some alleged legal deficiency, but on the merits of his technical analysis.  This is not the standard for summary judgment.  *See Sierra Wireless*, 2016 WL 1298961, at *3 (Party's "written description arguments, supported by the[ir] expert['s] report . . . and his numerous citations to the patent, raise genuine issues of material fact that are not susceptible to summary judgment.").

Dr. Kakaes and Dr. Cooklev disagree as to whether "Proposed procedure 2" in the '373 Provisional (Schultz Decl., Ex. 5 at 8272) provides support for "a dedicated preamble used only for a specific terminal."  *Compare* Kakaes Op. ¶¶ 92-93 *and* Kakaes Supp. ¶7, *with* Cooklev Reb. ¶¶ 349-350.  Evolved argues that Dr. Kakaes ignores the text underneath Fig. 5 that states "UE assign the radio resource in Target e-Node B from Serving eNode-B or Target e-Node-B" ('373 Provisional at 8272).  Br. at 17.  In fact, Dr. Kakaes explains that the text of "Proposed procedure 2" in Fig. 5, which expressly recites "No Preamble," actually "teaches **away** from using a preamble."  Kakaes Supp. ¶ 7 (emphasis original); *see also id.* ¶ 12:



Dr. Kakaes and Dr. Cooklev also disagree whether the "Initial Access for LTE" section

of the '373 Provisional (Schultz Decl., Ex. 5 at 8269) is relevant to the claimed handover procedures in the '373 Patent.  *Compare* Kakaes Op. ¶¶ 89-90 and Kakaes Supp. ¶ 14, *with* Cooklev Reb. ¶ 352.  Dr. Kakaes, who meets both parties' definition of a person having ordinary skill in the art at the time of the alleged invention (*see, e.g.*, Br. 10-11; Kakaes Tr. 11:12-12:10), explains that the "Initial Access for LTE" section "refers to the case that the UE is being paged, which is not related to the handover case."  Kakaes Supp. ¶ 14.  Evolved nonetheless argues— without citation to the record—that these initial access procedures "are undeniably relevant to what the provisional teaches to one of ordinary skill regarding how to use the RACH during a handover procedure."  Br. at 17.  This is merely attorney argument, which cannot support a motion for summary judgment.  *See Sierra Wireless*, 2016 WL 1298961, at *3.

      Dr. Kakaes and Dr. Cooklev also disagree on support for the "dedicated preamble used only for a specific terminal" claim limitation in the '373 Provisional vis-à-vis the Hu and Wang references.  *Compare, e.g.,* Kakaes Op. ¶¶ 158-165 (discussing Hu), *id.* ¶¶ 326-332 (discussing Wang), *and id.* ¶¶ 86-95, Kakaes Supp. ¶¶ 5-14 (discussing '373 Provisional), *with* Cooklev Reb. ¶¶ 203-209, 216-221 (discussing Hu), *id.* ¶¶ 446-472 (discussing Wang), *and id.* ¶¶ 347-353 (discussing '373 Provisional).  Both parties' experts opined at length regarding distinctions between the disclosures in each of these three documents.  Dr. Kakaes concludes that the Hu and Wang references disclose the "dedicated preamble used only for a specific terminal" limitation, whereas the '373 Provisional does not.  Kakaes Op. ¶¶ 86-95, 158-165, 326-332; Kakaes Supp. ¶¶ 5-14; *see also* Kakaes Tr. 111:15-112:20, 138:5-141:8, 168:11-170:20, 189:8-192:6.  Dr. Cooklev reaches the opposite conclusion.  Cooklev Reb. ¶¶ 203-209, 216-221, 347-353, 446-472.  Yet, in summarily labeling Dr. Kakaes' analysis as "unsupported, contradictory, and incomplete," Evolved is asking this Court to weigh the persuasiveness of Dr. Kakaes' testimony

against that of Dr. Cooklev. This is inappropriate at summary judgment. *See Anderson*, 477 U.S. at 255; *see also, Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1338–39 (Fed. Cir. 2008) (vacating district court's summary judgment where there was "a direct conflict in the [expert] declaration as to a material fact" because "[r]esolving such credibility disputes . . . is not appropriate on summary judgment").

Finally, the case on which Evolved relies in its brief (Br. at 18), *Lamoureux v. AnazaoHealth Corp.*, No. 03-cv-01382(WIG), 2012 WL 12537933 (D. Conn. Sept. 24, 2012), is readily distinguishable. Unlike the instant case, the patentee-plaintiffs in *Lamoureux* did not move for summary judgment of validity; rather, the defendant moved for invalidity. *Id.* at *1. Thus, the court in *Lamoureux* "[c]onstru[ed] the facts in the light most favorable to Plaintiffs" in finding that the defendant had failed to demonstrate that the patent-in-suit was not entitled to the priority date of its provisional application. *Id.* at *7. Here, the plaintiff Evolved is the moving party, and thus the facts must be construed in the light most favorable to Defendants.

> **2.** **"wherein the dedicated preamble is determined by the target base station" ('373 Patent, all asserted claims)**

Though Evolved does not specifically address in its opening brief the claim limitation "wherein the dedicated preamble is determined by the target base station" (which is found in all asserted claims of the '373 Patent), Dr. Kakaes and Dr. Cooklev provide differing opinions regarding the support (or lack thereof) in the '373 Provisional for this limitation. *Compare* Kakaes Op. ¶¶ 93, 95 *and* Kakaes Supp. ¶¶ 8-10 *with* Cooklev Reb. ¶¶ 354-358. For example, Dr. Cooklev opines that step 2 of "Procedure 3," which recites "Target eNode-B reserve [sic] the resource for handover UE and broadcast this information on UL-MAP" (Schultz Decl., Ex. 5 at 8273), supports his conclusion that the '373 Provisional teaches "a reserved RACH signature determined by the target base station" (Cooklev Reb. ¶2 356-357). By contrast, Dr. Kakaes

explains that this disclosure "does not teach or suggest that the target eNodeB transmits a preamble that is dedicated or used only for one specific terminal," because the "eNodeB can 'reserve the resource for handover' without ever transmitting a preamble" or "'reserve' a preamble and yet not use it only for one specific terminal."  Kakaes Supp. ¶ 9.  This conflicting expert testimony presents a genuine issue of material fact that precludes summary judgment. *See, e.g., Anderson*, 477 U.S. at 255; *Bancorp*, 527 F.3d at 1338–39.

More significantly, Evolved does not argue in its brief, or through the testimony of its expert Dr. Cooklev, that the '373 Provisional provides support for the "target base station" claim element, despite bearing the burden of proof on this issue.  *Magnum*, 829 F.3d at 1375-76.  On November 14, 2016, the Court construed "target base station" as "[t]he source base station determines that the mobile terminal will be transferred to the target base station."  (D.I. 128 at 8). On January 17, 2017, Defendants served Common Interrogatory No. 13 on Evolved asking it to:

> Identify, with specific citations, the portions of U.S. Provisional Application No. 60/732,080 that you contend provide written description support for the claim element "wherein the preamble information is a dedicated preamble used only for a specific terminal, and wherein the dedicated preamble is determined by the target base station" recited in claims 1, 8, 15, and 24 of U.S. Patent No. 7,809,373.

Evolved responded, in relevant part:

> Evolved Wireless further objects to this Interrogatory to the extent that it calls for a legal conclusion and/or seeks information that is more properly the subject of expert testimony or expert reports, which will be produced consistent with the Federal Rules of Civil Procedure and the Scheduling Order in these litigations.
>
> Evolved Wireless further responds that because discovery and Evolved Wireless's investigation are ongoing, Evolved Wireless reserves the right to supplement its response to this Interrogatory. Such supplementation may also include timely produced expert reports, expert testimony, and other pretrial disclosures consistent with any order by the Court and the Federal Rules of Civil Procedure.

Briggs Decl., Ex. E at 4-5.  Yet Evolved never supplemented its interrogatory response, and Dr. Cooklev does not opine anywhere in his rebuttal report that the '373 Provisional discloses

that the source base station determines that the mobile terminal will be transferred to the target

base station.  *See* Cooklev Reb. ¶¶347-358, 390-393, 417-420, 457-460.[4]  By contrast,

Dr. Kakaes specifically opined that the '373 Provisional does not support this claim element.

*See* Kakaes Supp. ¶¶ 8, 10; Kakaes Tr. 358:13-359:11.

Evolved's disregard for the requirement that "[t]he source base station determines that the

mobile terminal will be transferred to the target base station" in the '373 Provisional is fatal to its

motion.  *See, e.g.*, *Vasudevan Software, Inc. v. MicroStrategy, Inc*., 782 F.3d 671, 683 (Fed. Cir.

2015) (holding that "[expert] opinion, which was not challenged by any contrary expert

testimony, at least raises a genuine issue of material fact" and reversing summary judgment for

invalidity based on lack of written description support); *see also Suffolk Techs., LLC v. AOL Inc.*,

752 F.3d 1358, 1367 (Fed. Cir. 2014) (holding that "mere attorney argument," without

supporting expert testimony, is insufficient to overcome credible testimony from opposing

party's expert on summary judgment).

### 3.   "wherein the access information is for a random access channel (RACH)" ('373 Patent, claim 5)

Relying primarily on attorney argument, Evolved fails to demonstrate that there is no

genuine issue of material fact regarding the alleged support in the '373 Provisional for the claim

limitation "wherein the access information is for a random access channel (RACH)."  *See Sierra*

*Wireless*, 2016 WL 1298961, at *3.  In its brief, Evolved argues that "Proposed procedure 1" in

the '373 Provisional (Schultz Decl., Ex. 5 at 8271-8272) "undeniably shows that the inventors

were in possession" of this claim limitation.  Br. at 18-19.  However, Dr. Cooklev does not opine

---

[4]   Tellingly, when analyzing the Hu prior art reference, Dr. Cooklev *does* rely on the Court's construction of "target base station" to opine that the Hu prior art reference fails to disclose this element because "there is no disclosure in Hu that the source base station determines the handover."  *Id.* ¶¶ 144-145.

in his report that "Proposed procedure 1" provides support for claim 5 of the '373 Patent. *See*

Cooklev Reb. ¶¶ 370-376.  Rather, Dr. Cooklev opines that "Proposed procedure 2" and

"Proposed procedure 3" provide the requisite support. *Id.*  Dr. Kakaes disagrees, explaining: (1)

that "proposed procedure 2 . . . says '<u>No</u> preamble,' which suggests that there is no preamble

information or preamble in . . . the CELL CHANGE message from the UE to the Target eNode-

B" (Kakaes Op. ¶ 92 (emphasis original); *see also* Kakaes Supp. ¶ 11); and (2) that "proposed

procedure 3 . . . does not describe using a RACH but instead describes using an SCH" (Kakaes

Op. ¶ 96).  This disagreement between the experts presents yet another "factual dispute for a fact

finder to assess." *Sierra Wireless*, 2016 WL 1298961, at *3.

### 4.      "wherein the preamble information includes frequency information and time information" ('373 Patent, claim 6)

Evolved's position regarding support in the '373 Provisional for claim 6 in the '373

Patent rests entirely on attorney argument, as Dr. Cooklev did not opine at all on this issue. *See*

Cooklev Reb. ¶¶ 333-465.  By contrast, Dr. Kakaes's unrebutted opinion is that "none of the

three proposed procedures . . . describes 'preamble information' that 'includes frequency

information and time information,' as claim 6 recites."  Kakaes Op. ¶ 97.  Summary judgment of

validity is not warranted under these circumstances. *See Suffolk Techs*, 752 F.3d at 1367;

*Invitrogen*, 429 F.3d at 1068; *Sierra Wireless*, 2016 WL 1298961, at *3.

### 5.      "transmitting a handover command that contains the access information to the terminal upon receiving the access information by the source base station" ('373 Patent, claim 7)

Though Evolved fails to address claim 7 of the '373 Patent in its opening brief, the

parties' experts disagree whether the '373 Provisional provides support for this claim language.

*Compare* Kakaes Op. ¶ 98 *with* Cooklev Reb. ¶¶ 377-383.  Dr. Kakaes opines that the '373

Provisional does not disclose a "handover command." *See* Kakaes Op. ¶ 98.  Dr. Cooklev opines

that "a POSITA would understand that . . . the source base station is sending the reserved RACH

preamble signature received from the target base station to the UE," but stops short of opining

that the '373 Provisional discloses a "handover command."  *See* Cooklev Reb. ¶ 382.[5]  As

Evolved has failed to meet its burden that there is no genuine issue of material fact with respect

to this claim, its motion should be denied.  *See Resolution Trust*, 960 F.2d at 340.

> ### 6.       "wherein the preamble information is used to identify the terminal" ('373 Patent, claim 12)

Dr. Cooklev and Dr. Kakaes disagree whether the '373 Provisional provides support for

claim 12 of the '373 Patent, thereby precluding summary judgment of validity.  *Compare* Kakaes

Op. ¶¶ 89-90, 99, *and* Kakaes Supp. ¶ 17, *with* Cooklev Reb. ¶¶ 402-408.[6]  In particular,

Dr. Cooklev opines, on the basis of a document in the '373 Provisional titled "LTE Protocol and

Architecture aspects," that a "POSITA would understand that communications between the base

stations, for example, for context forwarding and to preconfigure resources for handover, would

be used by the target base station to identify the terminal."  Cooklev Reb. ¶ 407.  In other words,

Dr. Cooklev opines that one of skill in the art would combine the teachings of two documents—

"RACH for LTE" (Schultz Decl., Ex. 5 at 8268-8274) and "LTE Protocol and Architecture

aspects" (*id.* at 8275-8281)—to arrive at the claim limitation "wherein the preamble information

is used to identify the terminal."  *See* Cooklev Reb. ¶¶ 405, 407.  By contrast, Dr. Kakaes

disagrees that the "LTE Protocol and Architecture aspects" document is relevant to the claimed

invention of the '373 Patent.  *See* Kakaes Op. ¶¶ 89-90, 99.  As there is conflicting expert

---

[5]  This omission by Evolved and Dr. Cooklev is telling, because—unlike the '373 Provisional—the Wang Provisional (discussed below in Section V.C) does in fact expressly teach a "handover command."  *See, e.g.*, Kakaes Op., App'x A at 4, 9-10; Kakaes Supp. ¶¶ 23-24; Wang Provisional at Fig. 1.

[6]  Evolved's opening brief inexplicably cites to ¶ 351 of Dr. Cooklev's Rebuttal Report (Br. at 21); however, this portion of his report addresses an entirely different limitation from claim 1.

testimony regarding the written description of the '373 Provisional—an issue of fact—summary

judgment is inappropriate.  *See, e.g., Bancorp*, 527 F.3d at 1338-39; *Ethyl Corp. v. Borden, Inc*.,

427 F.2d 206, 210 (3d Cir. 1970) (holding that court may not resolve "disputed and relevant

factual issues on conflicting affidavits of qualified experts").

Evolved's argument that Dr. Kakaes "fail[s] to analyze the entire disclosure of the '373

provisional" overlooks the fact that the '373 Provisional is actually a collection of several

different documents.  *See supra* Section IV.A.2.  Evolved and its expert, Dr. Cooklev,

"[w]orking backward from a knowledge of [the claims], that is by hindsight," seek "to derive

written description support from an amalgam of disclosures plucked selectively from" the '373

Provisional.  *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1349 (Fed. Cir. 2016).

Whether the "LTE Protocol and Architecture aspects" document provides any support for the

asserted claims of the '373 Patent is a question of fact for the jury to decide.  *See ICN Photonics*,

73 F. App'x at 430-431.

### 7.    "transmitting the preamble information to the target base station for performing a radio access procedure with the target cell" ('373 Patent, claim 18)

As with claim 5, again relying on attorney argument, Evolved fails to demonstrate that

there is no genuine issue of material fact regarding the alleged support in the '373 Provisional for

the claim limitation "transmitting the preamble information to the target base station for

performing a radio access procedure with the target cell."  Without citation to the record,

Evolved argues that "[i]t is axiomatic from the '373 provisional that the mobile device will

transmit the reserved RACH preamble to the target base station in the handover procedure."  Br.

at 20.  This is insufficient to support a motion for summary judgment.  *See Invitrogen*, 429 F.3d

at 1068; *Sierra Wireless*, 2016 WL 1298961, at *3.

Moreover, Dr. Cooklev and Dr. Kakaes disagree whether "Proposed procedure 2" and

"Proposed procedure 3" in the '373 Provisional provide support for claim 18 of the '373 Patent. *Compare* Kakaes Op. ¶¶ 100-101 *and* Kakaes Supp. ¶¶ 15-16, *with* Cooklev Reb. ¶¶ 421-424, 432-432.  Referring back to his argument for claim 15, Dr. Cooklev opines that "a POSITA would understand that the alternative 'RACH preamble resource e.g. signature' included a reserved RACH signature that would be used by the terminal to access the target base station." Cooklev Reb. ¶¶ 423, 432.  By contrast, Dr. Kakaes explains that "Dr. Cooklev's assertion is misplaced because claim 15 requires transmitting a preamble <u>to</u> a UE (*i.e.*, in the <u>downlink</u> direction) while claim 18 adds the requirement of transmitting the preamble <u>by</u> the UE (*i.e.*, in the <u>uplink</u> direction)."  Kakaes Supp. ¶ 16 (emphasis original). "Because each party presents conflicting expert testimony, there are genuine disputes of material fact . . . . Accordingly, summary judgment on [Evolved's] written description argument is not warranted."  *M2M Sols. LLC v. Motorola Sols., Inc.*, No. CV 12-33-RGA, 2016 WL 70814, at *14 (D. Del. Jan. 6, 2016).

        **8.**      **"wherein the access information includes a transmission characteristic of the preamble information, and the transmission characteristic relates to frequency and time used in transmitting the preamble information" ('373 Patent, claim 19)**

Dr. Kakaes and Dr. Cooklev disagree whether the '373 Provisional provides support for claim 19 of the '373 Patent, thereby precluding summary judgment of validity.  *Compare* Kakaes Op. ¶¶ 89, 102, *and* Kakaes Supp. ¶¶ 14, 17, *with* Cooklev Reb. ¶¶ 433-439.  Relevant here, as noted above in Section V.B.1, Dr. Kakaes and Dr. Cooklev disagree whether the "Initial Access for LTE" section of the '373 Provisional (Schultz Decl., Ex. 5 at 8269) is relevant to the claimed handover procedures in the '373 Patent.  *Compare* Kakaes Op. ¶¶ 89-90 and Kakaes Supp. ¶ 14, *with* Cooklev Reb. ¶ 438.  Dr. Cooklev opines that the discussion of RACH resources "in the context of paging signals" supports his conclusion in the context of a handover that "a POSITA would understand that  the alternative 'RACH preamble resource e.g. signature' . . . would also

include time and frequency information." Cooklev Reb. ¶¶ 437-438.  By contrast, Dr. Kakaes

opines that "paging" and "[i]nitial access [are] different from the handover case to which the

claims are directed." Kakaes Op. ¶ 89; Kakaes Supp. ¶ 14).  This is a genuine issue of material

fact that precludes summary judgment.  *See Enzo Life Scis., Inc. v. Gen-Probe Inc.*, No. CV 12-

104-LPS, 2017 WL 2829625, at *5 (D. Del. June 28, 2017).

As with claim 12, Evolved's argument that Dr. Kakaes "fail[s] to consider the entire

disclosure of the '373 provisional" overlooks the fact that the '373 Provisional is not a single,

cohesive document.  *See supra* Section IV.A.2.  The Federal Circuit has held that it is

inappropriate "to derive written description support from an amalgam of disclosures plucked

selectively from the [priority] application." *Novozymes*, 723 F.3d at 1349.  Even where a priority

"application provides formal textual support for each individual limitation recited in the claims

of the [asserted] patent," it may nonetheless "lack meaningful support" for the written

description of the claims "as an integrated whole." *Id.*  Whether the "Initial Access for LTE"

section of the '373 Provisional provides any support for the asserted claims of the '373 Patent is

a question of fact for the jury to decide.  *See ICN Photonics*, 73 F. App'x at 430-431.

### 9. "wherein the access information includes system information transmitted from the target base station" ('373 Patent, claim 20)

The parties' dispute regarding the alleged support in the '373 Provisional for claim 20 of

the '373 Patent mirrors that of the disputes regarding claims 12 and 19 and the limitation

"dedicated preamble used only for a specific terminal" found in all claims.  Dr. Kakaes and

Dr. Cooklev disagree whether the "LTE Protocol and Architecture aspects" document (Schultz

Decl., Ex. 5 at 8275-8281) and the "Initial Access for LTE" section of the "RACH for LTE"

document (*id.* at 8269-8271) are relevant to the claimed handover procedures of the '373 Patent.

*Compare* Kakaes Op. ¶¶ 89-90, 103 *and* Kakaes Supp. ¶¶ 14, 17, *with* Cooklev Reb. ¶¶ 442-443.

Here, in particular, Dr. Cooklev has cobbled together disparate disclosures from multiple documents to support his written description opinion. *See* Cooklev Reb. ¶¶ 442-443. But as the Federal Circuit has cautioned, "one cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention. In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure." *Purdue Pharma L.P. v. Faulding Inc*., 230 F.3d 1320, 1326–27 (Fed. Cir. 2000). Thus, for the same reasons articulated above in Sections V.B.1, V.B.6, and V.B.8, Defendants respectfully submit that Evolved's motion should be denied.

### C.   Genuine Issues of Material Fact Regarding the Priority Date of the Wang Prior Art Reference Preclude Summary Judgment of Validity

As with the '373 Patent and its provisional application, discussed above, there exist numerous issues of material fact that are disputed between the parties regarding the priority date of the Wang Patent prior art reference vis-à-vis its corresponding provisional application—any one of which independently warrants denial of Evolved's motion for summary judgment of validity. Evolved argues that "no reasonable jury could find that Wang's provisional application supports the claims of the issued Wang patent" (Br. at 24), but the juxtaposition of the competing opinions of Dr. Kakaes and Dr. Cooklev in Evolved's own brief demonstrates otherwise. Evolved cannot, at this stage of the case, establish as a matter of law that the Wang reference is not prior art to the '373 Patent. *See B-K Lighting, Inc. v. Fresno Valves & Castings, Inc*., 375 F. App'x 28, 32 (Fed. Cir. 2010) (vacating district court's summary judgment order for disregarding conflicting expert testimony that created a genuine issue of material fact regarding disclosure of prior art reference); *see also ICN Photonics*, 73 F. App'x at 430-431 (reversing grant of summary judgment because expert affidavit that "cited specific passages in the [patent] specification and explained [how] a [POSITA] would have interpreted them" was "sufficient to

20

create a genuine issue of material fact" regarding written description and that "[f]urther probing

of his basis for the opinion is . . . a topic for later exploration as the case proceeds"); *Enzo*, 2017

WL 2829625, at *5 (denying summary judgment of lack of adequate written description where

"[b]oth sides cite record evidence for their contentions, including expert opinions, such that a

reasonable jury could find for either side").

Evolved's arguments regarding the Wang Provisional can be separated into two

categories: (a) whether the Wang Provisional provides support for the "reserved RACH preamble

signature" disclosure in the Wang Patent (Br. at 24-27); and (b) whether the Wang Provisional

provides support for the "reserved RACH preamble signature [being] indicated in the handover

command" disclosure in the Wang Patent (Br. at 26). Evolved argues that the Wang Provisional

does not support two similar claim limitations in the Wang Patent: "a particular RACH preamble

signature is reserved for the handover" (claims 9 and 27) and "a reserved RACH preamble

signature is indicated in the handover command" (claims 10 and 28). *See* Br. at 24.[7] Evolved

also argues that the Wang Provisional does not support certain portions of the Wang Patent

specification on which Dr. Kakaes relies in support of his invalidity opinions. *See* Br. at 27

(citing Kakaes Op. ¶¶ 326-332). In particular, Evolved argues that the Wang Provisional does

not provide support for disclosures in the Wang Patent specification regarding a "dedicated

access signature" (Wang Patent at 3:50) a "particular (dedicated) RACH preamble signature . . .

reserved for the handover" (*id.* at 4:64-65) and a "reserved RACH preamble signature" (*id.* at

---

[7]   Neither Evolved nor Dr. Cooklev dispute that the Wang Provisional provides support for
claims 1-8, 11-13, 17-26, or 30-32. *Compare* Kakaes Op., App'x A *with* Cooklev Reb. ¶¶ 466-
484 *and* Br. at 24-27. Evolved also does not argue in its opening brief that the Wang Provisional
does not support claims 14, 15, and 16 of the Wang Patent, despite conflicting opinions between
the parties' experts. *Compare* Kakaes Op., App'x A at 5-6, *and* Kakaes Supp. ¶ 25, *with*
Cooklev Reb. ¶¶ 478-483. Accordingly, Evolved has failed to meet its burden as the moving
party at least with respect to these claims. *See Resolution Trust*, 960 F.2d at 340.

5:1-2).  *See* Br. at 27.[8]  Though Evolved discusses separately in its opening brief (a) support for

the claims of the Wang Patent (Br. at 24-27) and (b) support for the specification of the Wang

Patent (Br. at 27-29), as a practical matter, both issues turn on the same set of facts because both

employ the same language.  For example, claim 10 of the Wang Patent recites "a reserved RACH

preamble signature," which is also found at column 5, lines 1-2 of the Wang Patent's

specification.  As such, these issues rise and fall together.

     To aid the Court in navigating the many issues of material fact with regard to all of the

foregoing disclosures of the Wang Provisional, Defendants address below common factual issues

together, whether they arise in the context of the Wang Patent claims or specification.

###     1.    "a reserved RACH preamble signature" / "a particular RACH preamble signature is reserved"

     Evolved cannot meet its burden to demonstrate no genuine issue of material fact

regarding the support in the Wang Provisional for "a reserved RACH preamble signature,"

because the parties' experts provide directly conflicting opinions regarding the meaning of

certain passages in the Wang Provisional.  *See, e.g., Bancorp*, 527 F.3d at 1338-39.  Defendants'

expert, Dr. Kakaes, opines that support for the "reserved RACH preamble signature" of the

Wang Patent is found at paragraphs 34-36 and claims 4 and 21 of the Wang Provisional.  *See*

Kakaes Op., App'x A at 4, 9-10; Kakaes Supp. ¶¶ 21-22; Kakaes Tr. 168:11-170:20.  Evolved's

expert, Dr. Cooklev, disagrees that paragraphs 35-36 disclose a "reserved RACH preamble

signature," but does not opine on claims 4 and 21 of the Wang Preamble.  *See* Cooklev Reb.

---

[8]  Neither Evolved nor Dr. Cooklev dispute that these discloses anticipate or render obvious "a dedicated preamble used only for a specific terminal," found in all asserted claims of the '373 Patent.  *Compare* Kakaes Op. ¶¶ 326-332 *with* Cooklev Reb. ¶¶ 485-491 *and* Br. at 29-30.

¶¶ 469, 472.[9]  "This conflict in expert declarations regarding whether the [Wang Provisional] disclosed [a reserved RACH preamble signature] create[s] a genuine issue of material fact that ma[kes] summary judgment inappropriate." *B-K Lighting*, 375 F. App'x at 32.

The factual dispute between the parties primarily centers on the interpretation of paragraphs 34-35 of the Wang Provisional (Schultz Decl., Ex. 7 at 6):

> [0034]   Option 2: RACH procedure
>
> [0035]   Following claims are proposed to this option:
>
> i.   Set UL HARQ and ARQ with different parameters before UE accesses the target eNB (cell).
>
> ii.  If RACH process is to be used, the access signature with higher orthogonality, higher priority and/or higher power are proposed to be used.
>
> [0036]   According to the present invention, the RACH or the message immediately after RACH indicates a handover UE. There are differences between the UE's access to the target eNB (cell) and the UE's access to an eNB (cell) because of state transition from LTE-Idle to LTE-Active. A handover UE preferably has higher priority to access the eNB (cell) than access due to state transition.

In particular, the parties' experts disagree over the meaning of paragraph 35(ii) of the Wang Provisional.  Dr. Kakaes explains that one of skill in the art would understand from this disclosure "that: (i) the 'access signature' is a RACH preamble signature; and (ii) this RACH preamble signature is reserved for handover such that when the RACH transmits this access signature, the RACH indicates a UE is a handover UE."  Kakaes Supp. ¶ 21.  By contrast, Dr. Cooklev opines that this paragraph "discloses using different **groups** of RACH preambles for

---

[9]   Dr. Cooklev also does not rebut Dr. Kakaes' opinion that claim 27 of the Wang Patent, which recites "a particular RACH preamble signature is reserved for the handover," is supported by the Wang Provisional.  *Compare* Kakaes Op., App'x A at 9 *with* Cooklev Reb. ¶¶ 466-477.  In fact, Dr. Cooklev expressly opines that "the Wang Provisional may support claims 8 and 27" of the Wang Patent.  Cooklev Reb. ¶ 476.

use by UEs going through the handover procedure," and that "a UE's random selection of an access signature within that grouping would 'indicate a handover UE.'"  Cooklev Reb. ¶¶ 469, 472 (emphasis original).[10]  Dr. Kakaes disagrees with this conclusion, opining that "paragraph [0035] refers to '**the** access signature' (singular)" and that "[n]othing in that paragraph mentions groups of preambles."  Kakaes Supp. ¶ 22 (emphasis original).  He further explained at his deposition that one of skill in the art would recognize that the word "are" in paragraph 35 is a typo and should instead read "is"—*e.g.*, "the access signature with higher orthogonality, higher priority and/or higher power **is** proposed to be used."  *See* Kakaes Tr. 169:18-170:20.

The competing testimony of Dr. Kakaes and Dr. Cooklev thus "present[s] a 'battle of the experts' that is not amenable to resolution" on summary judgment.  *Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, No. CA 10-63-LPS, 2012 WL 2175788, at *1 (D. Del. June 14, 2012) (citing *Transonic Sys., Inc. v. Non–Invasive Med. Techs. Corp.*, 143 F. App'x. 320, 330 (Fed. Cir. July 25, 2005); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998)) (quoting *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (denying summary judgment because determination of "who is correct in this battle of experts is not for [the Court] to decide")).  "[R]esolv[ing] disputed and relevant factual issues on conflicting affidavits of qualified experts . . . is not permitted" at this stage of the case.  *Ethyl Corp.*, 427 F.2d at 210; *see also Bancorp*, 527 F.3d at 1338–39 (holding that "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"); *Motorola*, 2016 WL 70814, at *14 (conflicting expert testimony regarding written description creates a genuine

---

[10]   Neither Dr. Cooklev nor Evolved explain how the Wang Provisional discloses "randomly select[ing]" a preamble within this alleged group of handover preambles.  *See* Cooklev Reb. ¶ 472; Br. at 26.  The Wang Provisional does not mention "random" selection of anything— preambles or otherwise.  *See* Schultz Decl., Ex. 7.

dispute of material fact that precludes summary judgment).

The attorney argument in Evolved's opening brief does not overcome this fundamental flaw in its motion and cannot support its burden on summary judgment. *See Invitrogen*, 429 F.3d at 1068; *Sierra Wireless*, 2016 WL 1298961, at *3. Evolved argues that paragraph 35 of the Wang Provisional refers to a portion of the Wang Patent specification that discloses: "[A] *plurality* of RACH preamble signatures with different orthogonality and different priority may be used . . . ." Br. at 25 (quoting Wang Patent at 4:59-63) (emphasis original). But Evolved does not explain how the Wang Patent specification's further disclosure that from "among the plurality of RACH preamble signatures, **a** [singular] RACH preamble signature . . . may be used for the handover purpose" is inconsistent with Dr. Kakaes' opinion that "**the** [singular] access signature" in paragraph 35 of the Wang Provisional refers to "a reserved RACH preamble signature." *Compare* Br. at 25 *with* Kakaes Supp. ¶¶ 21-22 (emphasis added). Evolved's inherency argument suffers from the same defect. Br. at 26-27. Evolved also argues that "claim 8 [of the Wang Patent] was originally included in the Wang provisional as claim 20." Br. at 25. To the contrary, claim 8 of the Wang Patent recites "a **plurality** of RACH preamble signatures," whereas claim 20 of the Wang Provisional recites only "**an** access signature." *Compare* Wang Patent at 7:65-8:3 *with* Wang Provisional at 10 (emphasis added). Thus, even if Evolved's attorney arguments were proper on a motion for summary judgment—they are not—such arguments do not affirmatively support Evolved's position.

As previously noted, support in the Wang Provisional for disclosure in the Wang Patent specification is the same as that for the Wang Patent claims. Accordingly, Evolved's arguments that the Wang Provisional does not support the Wang Patent specification (Br. at 27-29) fail for the same reasons as those regarding the Wang Patent claims, notwithstanding Evolved's reliance

on *In re Wertheim*, 646 F.2d 527 (C.C.P.A. 1981).[11]  The *Wertheim* case is, in any event,

distinguishable, as it deals with a "continuation-in-part application, [which] by definition, adds

new matter to the parent application previously filed."  *Wertheim*, 646 F.2d at 536.  The

*Wertheim* court began its analysis with the assumption that new matter had been added to the

later-filed applications.  *Id.*  By contrast, a non-provisional application claiming priority to a

provisional application does not "by definition" add new matter.  *See* 35 U.S.C. § 119(e)(1)

(2006).  Regardless, the Federal Circuit has more recently invoked *Wertheim* for the proposition

that "[a] reference patent is only entitled to claim the benefit of the filing date of its provisional

application if the disclosure of the provisional application provides support for the claims in the

reference patent in compliance with § 112, ¶ 1."  *Dynamic Drinkware*, 800 F.3d at 1381 (citing

*Wertheim*, 646 F.2d at 537).  Under this standard, Evolved cannot at this stage of the case

demonstrate that the Wang Patent is not entitled to the filing date of the Wang Provisional, as

demonstrated above.

### 2.  "a reserved RACH preamble signature is indicated in the handover command"

Dr. Kakaes and Dr. Cooklev also disagree whether the Wang Provisional provides

support for "a reserved RACH preamble signature is indicated in the handover command," as

recited in claims 10 and 28 of the Wang Patent and found, *e.g.*, in Figs. 1 and 2 of the Wang

Patent specification.  *Compare* Kakaes Op. ¶¶ 295-298, 312-314, 317, 327, App'x A at 4, 9-10

*and* Kakaes Supp. ¶¶ 23-24, *with* Cooklev Reb. ¶¶ 470-471.  Dr. Cooklev opines that "the Wang

Provisional is completely silent on including a reserved or dedicated RACH preamble in the

handover command."  Cooklev Reb. ¶ 470.  By contrast, Dr. Kakaes explains that "[a]ccording

---

[11]  Evolved also cites to paragraphs 377-388 of Dr. Cooklev's Rebuttal Report (Br. at 27);
however, these paragraphs address the '373 Provisional, not the Wang Provisional.

to the Wang provisional, [the] handover command [in Fig. 1] may include information concerning . . . the 'RACH procedure,'" because one of skill in the art would understand that "the Wang provisional involves the use of an access signature to indicate a handover UE." Kakaes Supp. ¶ 24; *see also* Kakaes Tr. 161:12-162:19.  Such conflicting expert testimony precludes entry of summary judgment of validity.  *See, e.g.*, *B-K Lighting*, 375 F. App'x at 32; *ICN Photonics*, 73 F. App'x at 430-431; *Padcom, Inc. v. NetMotion Wireless, Inc*., No. CIV.03-983-SLR, 2006 WL 416866, at *4 (D. Del. Feb. 22, 2006).

**D.   Genuine Issues of Material Fact Regarding Whether the Wang Prior Art Reference Discloses "the dedicated preamble is determined by the target base station" Preclude Summary Judgment of Validity**

Evolved's argument that the Wang reference "does not explicitly disclose that the claimed 'dedicated preamble' is 'determined by the target base station'" (Br. at 29) overlooks well-established law that "[t]he prior art need not be *ipsissimis verbis* (i.e., use identical words as those recited in the claims) to be anticipating."  *Intellectual Ventures I LLC v. Toshiba Corp*., 221 F. Supp. 3d 534, 545 (D. Del. 2016) (citing *Structural Rubber Prods. Co. v. Park Rubber Co*., 749 F.2d 707, 716 (Fed. Cir. 1984)).  Thus, asking whether the words "determined by the target base station" appear verbatim in the Wang reference does not end the inquiry.  *See id.*

Though Evolved focuses its opening brief on the issue of inherent anticipation, the parties' experts disagree whether the Wang reference expressly teaches that the target base station determines the dedicated preamble.[12]  *Compare* Kakaes Op. ¶¶ 310-319, 333-335 *and* Kakaes Supp. ¶ 26, *with* Cooklev Reb. ¶¶ 472, 485-491.  In particular, Dr. Kakaes and

---

[12]   Evolved's reliance on *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2011) is misplaced in this regard.  *See* Br. at 29.  Dr. Kakaes does not opine that it is merely "possible" that the target base station determines the dedicated preamble in the Wang reference.  Rather, he opines that the Wang reference affirmatively "taught that the target eNode-B 256 determines the dedicated RACH preamble signature."  Kakaes Op. ¶ 316; *see also id.* ¶¶ 312-315.

27

Dr. Cooklev disagree whether the "information" disclosed at column 6, lines 7-9 of the Wang

Patent includes the "dedicated preamble":

> The target eNode-B **256** sends uplink and downlink resource scheduling information for data transmission and an RRC message to the WTRU (step **228**). The RRC message includes at least one of radio access bearer (RAB) reconfiguration information, a starting PDCP SN in the downlink, an RLC control message, and measurement related information. Some or all of the above information may optionally be sent as part of the handover command or the first packet from the target eNode-B **256**.

*Compare* Kakaes Op. ¶¶ 313, 334 *and* Kakaes Tr. 186:2-188:9, *with* Cooklev Reb. ¶ 486.  As

Dr. Kakaes explained at his deposition, "[t]he uplink resource scheduling information [6:1-2]

includes information about the RACH signature."  Kakaes Tr. 188:17-18.  By contrast,

Dr. Cooklev opines that this instead refers to "(1) what messages the mobile device includes in

the handover complete message, and (2) 'parameters related to transmission to the target eNode-

B 256 (or cell)' that 'are include[d] in the handover command message.'"  Cooklev Reb. ¶ 486

(citing Wang Patent 5:50-67).

Dr. Kakaes and Dr. Cooklev also disagree whether the Wang Provisional, which is

incorporated by reference into the Wang Patent (1:8-10), discloses "a dedicated RACH preamble

determined by the target base station."  *Compare* Kakaes Supp. ¶ 26 *with* Cooklev Reb. ¶ 472.

As noted above in Section V.C.1, Dr. Cooklev opines that "[t]he Wang Provisional only teaches

providing different groups of access signatures to handover UEs."  Cooklev Reb. ¶ 472.  By

contrast, Dr. Kakaes explains that the "Admission Control" step performed by the target base

station in Fig. 1 of the Wang Provisional "configures the required resources" for "a successful

[handover]," including "the dedicated RACH preamble."  Kakaes Supp. ¶ 26; *see also* Kakaes

Tr. 159:21-160:11, 161:3-9, 162:5-19.

These disagreements alone are sufficient to create a genuine issue of material fact that

28

precludes entry of summary judgment. *See Robocast, Inc. v. Apple Inc*., 39 F. Supp. 3d 552, 564 (D. Del. 2014) ("Disputed material issues of fact concerning how one of ordinary skill in the art would understand disclosure of a particular technology mandates denial of summary judgment of anticipation.") (citing *OSRAM Sylvania v. Am. Induction Techs*., 701 F.3d 698, 706 (Fed. Cir. 2012)); *see also Lambda Optical Sols. LLC v. Alcatel-Lucent USA, Inc.*, No. CV 10-487-RGA-CJB, 2017 WL 4002148, at *5 (D. Del. Mar. 31, 2017), *report and recommendation adopted*, No. 1:10-CV-00487-RGA-CJB, 2017 WL 4002141 (D. Del. Sept. 11, 2017) (same).

Further, Dr. Kakaes' unrebutted testimony that the "admission control" step performed by the target base station in the Wang reference also warrants denial of Evolved's motion for summary judgment of validity. *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 548 (D. Del. 2010) (Robinson, J.) (unrebutted expert testimony that prior art reference discloses element that patentee contends is missing precludes summary judgment of validity). Specifically, Dr. Kakaes opined that the "target eNode-B 256 may determine and generate the access information to be included in the handover command, including the dedicated preamble, as part of admission control process 208" in Fig. 2 of the Wang Patent:



Kakaes Op. ¶¶ 312, 314 (emphasis in Kakaes Op.). Dr. Kakaes similarly testified at his deposition that "it is [the] target eNode-B that makes the [ad]mission decision, and then that target eNode-B will make the decision as to what resources are available in the target base station and tell the UE, via the source eNode-B, where those resources should be," including "the

dedicated preamble."  Kakaes Tr. 181:1-5, 183:18-22; *see also id.* at 179:18-182:16, 183:18-188:9; Kakaes Op. ¶ 316.  Dr. Cooklev does not address "admission control" by the target base station at all in his report.  *See* Cooklev Reb. ¶¶ 485-491.

Evolved's and Dr. Cooklev's disregard of the "admission control" step in the Wang reference also undermines Evolved's inherency argument.  Dr. Kakaes and Dr. Cooklev disagree whether "POSITAs would have recognized that it would not be practical for a source eNode-B to dictate to a target eNode-B what access information a WTRU must use to connect to a target eNode-B in a handover procedure."  *Compare* Kakaes Op. ¶ 316 *with* Cooklev Reb. ¶ 488.  Dr. Kakaes testified that "[b]ecause the target base station performs an [ad]mission control and the target base station decides, as part of that [ad]mission control, whether or not it can accept that particular mobile," a POSITA would know that the "target base station determines the preamble."  Kakaes Tr. 182:4-16.  Dr. Kakaes' opinions with regard to the Wang Provisional are the same.  *See* Kakaes Supp. ¶ 26.[13]  Without addressing Dr. Kakaes' opinions regarding "admission control," however, Dr. Cooklev opines that a POSITA would not consider the Wang reference to disclose either the source or target base station as determining the preamble.  *See* Cooklev Reb. ¶¶ 488-489.  Evolved would ask this Court to ignore unrebutted testimony and find as a matter of law that Dr. Cooklev is right and Dr. Kakaes is wrong.  Br. at 30.  But "[o]n

---

[13]  In reaching these conclusion, Dr. Kakaes applied Dr. Cooklev's definition of a POSITA that "would have been aware of the Third Generation Partnership Project ("3GPP") and its work on the LTE standard."  Kakaes Supp. ¶ 26; *see also* Kakaes Tr. 159:21-160:8.  To further explain his opinion, Dr. Kakaes references a June 20, 2006 3GPP document (TR 25.912), which illustrates the understanding and knowledge of a POSITA as of the filing date of the Wang Provisional.  *Id.*  "[W]here technological facts are known to those in the field of the invention, albeit not known to judges," it is appropriate to refer to such extrinsic evidence.  *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991); *see also In re Imes*, 778 F.3d 1250, 1254 (Fed. Cir. 2015) ("A second reference may be used to show that a feature is inherent in a first reference if the first reference is silent with regard to the inherent feature.") (citing *Cont'l Can*, 948 F.2d at 1268-69).

summary judgment, the Court is not permitted to weigh the testimony of the competing experts and draw its own conclusion." *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 727 (D. Del. 2016) (denying summary judgment of express or inherent anticipation of competing expert testimony creates factual issues to be resolved); *see also Novozymes*, 843 F.3d at 1352 ("The testimony from [plaintiff's] experts demonstrates that a genuine dispute as to a material fact remained and that, consequently, the District Court improperly granted summary judgment on inherent anticipation.").

Further, the basis of Evolved's argument against inherent anticipation—a 3GPP document from Motorola (Schultz Decl., Ex. 8)—is irrelevant, as it post-dates the Wang Provisional by more than a year. *See* Br. at 30 (citing Cooklev Reb. ¶¶ 488-489 Schultz Decl., Ex. 8 at 3866). Under well-established law, "[a]pplication sufficiency under § 112 first paragraph, must be judged as of the filing date." *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991). In its 3GPP submission, Motorola expressly recognizes that it is presenting a new proposal that is at odds with the then-current understanding that "requires the target eNB to reserve a RACH preamble for the UE." Schultz Decl., Ex. 8 at 3862. Courts "may not, however, use post-dated references as a source for 'later knowledge about later art-related facts . . . which did not exist on the filing date.'" *Bd. of Trustees of Leland Stanford Junior Univ. v. Chinese Univ. of Hong Kong*, 860 F.3d 1367, 1378 (Fed. Cir. 2017) (quoting *Application of Hogan*, 559 F.2d 595, 605 (C.C.P.A. 1977)). If anything, the Motorola 3GPP submission actually supports Dr. Kakaes' opinion, as it is a "post-filing date publication" that includes "evidence of the state of the art existing on the filing date of [the] application." *Id.* (quoting *Hogan*, 559 F.2d at 605).

In sum, numerous issues of material fact—both with respect to the priority date of the

'373 Patent and the priority date of the Wang reference—preclude entry of summary judgment of validity.  *See Anderson*, 477 U.S. at 255; *Resolution Trust*, 960 F.2d at 340.

### E.    Defendants Have Provided Sufficient Motivations to Combine Prior Art References

Defendants, through their expert Dr. Kakaes, have provided substantial evidence and analysis establishing that the asserted prior art combinations (Section IV.B.3) render the asserted claims of the '373 Patent obvious.  Evolved's arguments to the contrary are plagued with unsupported generalities that ignore significant portions of the record.  And Evolved compounds this error through its attempt to apply a legally inaccurate, rigid formula to the obviousness inquiry—presumably to distract the Court from considerable factual disputes between the parties' experts.

The Federal Circuit has repeatedly recognized that the motivation to combine inquiry must be "expansive and flexible."  *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (citing *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415, 419 (2007)).  "The motivation need not be found in the references sought to be combined, but may be found in any number of sources, *including common knowledge, the prior art as a whole, or the nature of the problem itself*."  *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006) (emphasis added).  "[M]otivation to combine may be found explicitly or implicitly in market forces; design incentives; the interrelated teachings of multiple patents; any need or problem known in the field of endeavor at the time of invention and addressed by the patent; and *the background knowledge, creativity, and common sense of the person of ordinary skill*."  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013) (citations omitted) (emphasis added).

Under the proper legal and analytical framework, Evolved's summary judgment motion

must be denied.  As set forth below, Dr. Kakaes has opined at length, through written and oral

testimony, why and how a POSITA would be motivated to combine Defendants' prior art

references to arrive at the alleged invention of the '373 Patent.

> **1.      Defendants Have Provided Sufficient Motivations to Combine the Hu
> Reference with the Wang Reference and the Hu Reference with the
> NEC Reference**

Dr. Kakaes' opening invalidity report provides significant detail regarding the

combinations of the Hu reference with each of the Wang and NEC references, including *why* and

*how* a POSITA *would* combine these references to arrive at the alleged invention of the '373

Patent.  *See, e.g.*, Kakaes Op. ¶¶ 454-472; Kakaes Tr. 113:4-120:24, 131:22-132:2, 133:6-

136:18, 137:14-138:4.  Evolved's vague, non-specific arguments and selective citations to the

record mask genuine issues of material fact that preclude entry of summary judgment.

With respect to the combination of the Hu and Wang references, Dr. Kakaes identifies

disclosures in the prior art, the common knowledge of a POSITA, and the problem itself to

support his position that a POSITA would combine the references.  For example, Dr. Kakaes

explains that "Hu and Wang are directed to the same subject matter: performing a handover in a

mobile communication system" and draws parallels between quoted disclosures each reference:

|  | *Hu*[150] | *Wang*[151] |
|---|---|---|
| Title | (54) Title of the Invention<br>METHOD OF ACCESSING TARGET BASE STATION BY MOBILE TERMINALS<br>SWITCHING BETWEEN BASE STATIONS | **METHODS AND SYSTEM FOR<br>PERFORMING HANDOVER IN A WIRELESS<br>COMMUNICATION SYSTEM** |
| Abstract | The invention discloses a method of accessing the target<br>base station by a mobile terminal switching between base<br>stations. In this method, a mobile terminal switching | A method and system for performing handover in a third<br>generation (3G) long term evolution (LTE) system are dis-<br>closed. A source evolved Node-B (eNode-B) makes a han- |

*Id.* at ¶ 455; *see also* Kakaes Tr. 113:17-114:22, 121:15-122:18.  Dr. Kakaes then describes *why*

and *how* a POSITA would have been motivated to incorporate Hu's teachings into those of

Wang.  *Id.* at ¶¶ 456-457.  For example, Dr. Kakaes opined that because "Hu explicitly taught

that the target base station generates and determines the dedicated access resource and send it to

the source base station . . . POSITAs would have understood that target eNode-B 256 [of Wang] would include the dedicated RACH preamble signature . . . within the handover response sent to source eNode-B 254 in step 210 [of Fig. 2]." *Id.* at ¶ 457; *see also* Kakaes Tr. 113:17-114:22, 131:22-132:2. Evolved's expert, Dr. Cooklev, disagrees with this analysis. *See, e.g.*, Cooklev Reb. ¶¶ 496-499. However, "[w]hether there is a reason to combine prior art references is a question of fact." *Kinetic Concepts*, 688 F.3d at 1367 (citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,* 617 F.3d 1296, 1303 (Fed. Cir. 2010). This conflicting expert testimony, accordingly, warrants denied of Evolved's motion. *See, e.g.*, *Bancorp*, 527 F.3d at 1338-39; *B-K Lighting*, 375 F. App'x at 32.

Similarly, with respect to the Hu and NEC references, Dr. Kakaes provides ample analysis for why and how a POSITA would successfully make this combination. For example, Dr. Kakaes explains that Hu and NEC are "directed to the same subject matter: performing a handover in a mobile communication system." Kakaes Op. ¶ 470; *see also id.* ¶¶ 460, 465, 471; Kakaes Tr. 134:12-14 ("They both involved handovers in 3GPP systems, and there is a big overlap of what happens in 3GPP systems of one generation versus the next generation . . . ."). Dr. Kakaes further notes that "Hu's teachings are not limited to any particular mobile communication system . . . [as] Hu taught that access resources can be allocated according to code word, time, frequency, space, or any combination thereof." *Id.* at ¶ 471; *see also* Kakaes Tr. at 133:6-136:18, 137:14-138:4 ("[A] POSITA would have understood that Hu's handover procedures appl[y] to LTE . . . ."). Again, Dr. Cooklev disagrees "that a POSITA would have incorporated concepts from Hu into NEC's LTE handover environment." Cooklev Reb. ¶ 503. However, whether the network architecture disclosed by Hu limits (Dr. Cooklev) or does not limit (Dr. Kakaes) its applicability to an LTE system is again a factual dispute, making entry of

summary judgment inappropriate.  *See OSRAM*, 701 F.3d at 706 (reversing district court's

"obviousness rulings . . . because they depend on resolution of disputed issues of fact");

*Transocean*, 617 F.3d at 1303.

Evolved's argument that Dr. Kakaes "only alleges that a person *could* combine the[se]

references" is a red herring.  Br. at 30 (emphasis original).  As an initial matter, Evolved's

statement is demonstrably false.  Dr. Kakaes explicitly states that a POSITA "would" be

motivated to combine these references.  *See, e.g.*, Kakaes Op. ¶ 454 ("For the following reasons,

POSITAs **would** have combined Hu's teachings with Wang's teachings."), ¶ 469 ("For the

following reasons, POSITAs **would** have combined Hu's teachings with NEC 106's teachings.")

(emphasis added).  Further, Dr. Kakaes merely uses the word "could" in limited places to mean

"are capable of"—*i.e.* in the context of describing what the combined system "could" do.  *See*

*e.g. id*. at ¶ 456:

> Hu taught that access resources can be allocated according to code word, time,
> frequency, space, or any combination thereof, so POSITAs would have
> understood that Hu's handover procedure applies to LTE . . . Therefore, POSITAs
> could have incorporated concepts from Hu's disclosed handover procedure into
> Wang's handover procedure in the LTE environment.

Placed in their proper context, Dr. Kakaes' statements make clear his opinion that a POSITA

"would" have been motivated to combine these references and explains why they would do so.

*See* Kakaes Op. ¶¶ 455-457, 469-472.

Further, Evolved's argument that Dr. Kakaes did not recite the magic words "reasonable

expectation of success" (Br. at 35) in certain portions of his report is the sort of "rigid and

mandatory formula[]" that "den[ies] factfinders recourse to common sense" that the Supreme

Court rejected in *KSR*.  550 U.S. at 419, 421.  For example, in a case such as this, where the prior

art gives more than just "general guidance as to the particular form of the claimed invention,"

such that "the claimed process would at least have been obvious to try," the Federal Circuit has

held that a POSITA "would have had a reasonable expectation of success." *E.I. du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 657 F. App'x 1004, 1015 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 1123, 197 L. Ed. 2d 235 (2017).  Dr. Kakaes testified that a "code word" in the Hu reference is only "one of a handful of options" available for a POSITA "to pick and use according to the balancing act of advantages and disadvantages of each."  Kakaes Tr. 116:23-119:4.  And "[w]hen . . . there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp," making such a combination "obvious to try." *KSR*, 550 U.S. at 421.  Similarly, this Court held in *Solvay* that the following expert testimony was sufficient to demonstrate an expectation of success: "[W]hen you combine the '192 patent which specifically tells us the chemistry . . . together with the '509, in my judgment, a person of ordinary skill in the art would know exactly what to do." *Solvay, S.A. v. Honeywell Int'l Inc.*, 886 F. Supp. 2d 396, 407 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014).  Dr. Kakaes' testimony is even more detailed.

For example, with respect to the Hu and NEC references, Dr. Kakaes opines that "the NEC document recognizes that the functionalities that were previously assigned to either a base station or to the RNC are now being assigned to the eNode-B, which, basically, translates to Hu's teaching that . . . the handover decision could be made by the RNC."  Kakaes Tr. 136:7-12.  Further, "to the extent that Hu teaches that the handover decision can be made at the RNC[,] incorporating the architecture of the NEC [reference] would teach a [POSITA] that that functionality of the RNC . . . in particular[,] would be executed by the eNode-B in the LTE system." *Id.* 137:21-138:3.  Dr. Kakaes's description of the capabilities of the combined system are offered to show that a POSITA "would have had a reasonable expectation of success" when implementing the combined system. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir.

2007).  In any event, Dr. Kakaes states in his report that he applied the "reasonable expectation of success" metric in his obviousness analysis.  *See, e.g.*, Kakaes Op. ¶ 28.

Evolved's reliance on the *InTouch Techs., Innogenetics,* and *ActiveVideo* cases is misplaced.  For example, *InTouch* is inapposite because the prior art references at issue there were "disparate" and "separate pieces of a jigsaw puzzle."  *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1348-49 (Fed. Cir. 2014).  The references in this case, however, "are directed to the same subject matter: performing a handover in a mobile communication system."  Kakaes Op. ¶¶ 455, 470.   Likewise, the experts in *Innogenetics* and *Bally Gaming* merely listed a number of prior art references and failed to provide any additional analysis or rationale.  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008); *IGT v. Bally Gaming Int'l, Inc.* 610 F. Supp. 2d 288, 329 (D. Del. 2009), *aff'd*, 659 F.3d 1109 (Fed. Cir. 2011).  Here, by contrast, Dr. Kakaes provides "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness" for the combination of the Hu and Wang references and the combination of the Hu and NEC references.  *Innogenetics*, 512 F.3d. at 1373.  For example, he shows, through the disclosures in the references themselves, that each reference teaches handover procedure(s) in a mobile communications system, and that each reference explicitly or implicitly applies to LTE.  *See* Kakaes Op. ¶¶ 454-457, 469-472.

Finally, as discussed above, unlike the expert reports in *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312 (Fed. Cir. 2012), Dr. Kakaes proffers several reasons why a POSITA would have been motivated to combine the specific references, noting that each is "directed to the same subject matter" and describing *why* a POSITA would have combined them.  *See, e.g.*, Kakaes Op. ¶¶ 455-457, 469-472.  The Federal Circuit has held that where "references are sufficiently similar"—as is the case here—"there is a factual question whether a

person of ordinary skill in the art would have looked to the teaching of those references" in

seeking to solve a particular problem.  *Commonwealth Sci. & Indus. Research Org. v. Buffalo

Tech. (USA) Inc.*, 542 F.3d 1363, 1375-76 (Fed. Cir. 2008).  This alone is sufficient to deny

Evolved's motion for summary judgment.

### 2.    Defendants Have Provided Sufficient Analysis for Their Single-Reference Obviousness Arguments

Evolved does not develop its argument that Defendants have failed to make a *prima facie*

case of obviousness based on single-reference combinations beyond the bare statement that "Dr.

Kakaes fails to offer any particular analysis why a POSITA would modify the reference, based

only on their knowledge, to arrive at the claimed invention."  Br. at 35.  This is simply false.

### (a)    Defendants Have Provided Sufficient Motivations to Combine the Wang Reference with the Knowledge of a POSITA

Defendants' expert, Dr. Kakaes, opines at length how the Wang reference, alone, renders

the asserted claims of the '373 Patent obvious.  As an initial matter, Evolved does not dispute

that the Wang reference discloses every limitation of the asserted claims other than "wherein the

dedicated preamble is determined by the target base station."  Br. at 29-30; Cooklev Reb. ¶¶ 485-

491.  With respect to this limitation, Dr. Kakaes opines:

> To the extent that Plaintiff argues that Wang does not teach that target eNode-B 256 makes the determination, it would have been obvious to POSITAs that, in the disclosure of Wang, it is only the target base station that can make that determination . . . . In addition, it would not be practical for process 204 at the source eNode-B to determine and generate the access information because doing so could potentially waste time and resources.

Kakaes Op. ¶¶ 316-317; *see also* Kakaes Tr. 179:14-185:20.[14]  Dr. Kakaes has clearly articulated

his rationale for why this limitation would have been obvious, and his analysis is therefore

---

[14]   Dr. Kakaes also opines that, to the extent the "dedicated preamble" limitation does **not** encompass a preamble index, the Wang reference renders this limitation obvious.  *See, e.g.*, Kakaes Tr. 111:18-112:20, 172:2-173:2.

sufficient. *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) (requiring "reasoned analysis and evidentiary support, especially when dealing with a limitation missing from the prior art references specified.").

Dr. Cooklev's conflicting opinion merely illustrates that there is a genuine issue of material fact for the factfinder to resolve. *See* Cooklev Reb. ¶¶ 488-491 (concluding "Wang's target base station does not determine the dedicated preamble—if the target base station determined the dedicated preamble, a message part following the RACH preamble would be a very poor design choice to identify the handover UE."). Summary judgment is, accordingly, inappropriate. *See, e.g.*, *OSRAM*, 701 F.3d at 706; *Transocean*, 617 F.3d at 1303-05.

> **(b)   Defendants Have Provided Sufficient Motivations to Combine the Hu Reference with the Knowledge of a POSITA**

Evolved's brief is entirely devoid of argument with respect to Defendants' single-reference obviousness argument based on the Hu reference beyond the bald and conclusory statement that "Dr. Kakaes has not opined why he would modify either Hu or Wang individually to arrive at the invention of the '373 patent without relying on the '373 patent as a roadmap." Br. at 35-36. Evolved does not cite any portion of Dr. Kakaes' or Dr. Cooklev's expert reports to indicate what limitations are allegedly lacking in Hu. Evolved's motion therefore fails as a matter of law. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."); Fed. R. Civ. P. 56.

Regardless, Dr. Kakaes provides extensive analysis and testimony regarding why the Hu reference renders the '373 Patent obvious in view of the knowledge of a POSITA. *See, e.g.*, Kakaes Tr. 108:14-110:5, 130:21-132:13. For example, Dr. Kakaes explains that while the Hu

reference does not explicitly teach that "the source base station determines the mobile terminal will be transferred," there are only three entities that could make such a handover decision: the RNC, the terminal, or the source base station.  Kakaes Tr. 130:21-131:17, 132:7-13.  The first two options are expressly disclosed by the Hu reference, while the third would be obvious to try. *Id.*  He explains further in his report that:

> While Hu taught that the RNC makes a handover decision, it would have been obvious to a POSITA that the source base station could (and would) make the handover decision in certain mobile communication systems. Hu's teachings are not specific to a particular mobile communication system, and apply to various systems, including LTE. During the development of LTE, and before the claimed priority date, POSITAs were aware that 3GPP was working toward a network-based handover approach in which the source eNodeB would make a handover decision. . . . Thus, based on their background knowledge, POSITAs would have understood and found it obvious from Hu's teachings that the source eNodeB would determine the target eNodeB to which the mobile terminal is to be transferred.

Kakaes Op. ¶ 123.   Dr. Cooklev disagrees with this analysis, opining that "[t]his task was not easy or routine at the time of the application that issued as the '373 Patent."  Cooklev Reb. ¶ 148. But this is, again, a factual dispute that cannot be resolved on summary judgment.  *See, e.g.*, *OSRAM*, 701 F.3d at 706; *Transocean*, 617 F.3d at 1303-05.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that Evolved's motion for summary judgement of validity be denied in its entirety.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

/s/ Philip A. Rovner
Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Defendants HTC Corporation
and HTC America, Inc.*

OF COUNSEL:
Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
Kayla Page
SHEPPARD, MULLIN, RICHTER &
   HAMPTON, LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900

POTTER ANDERSON & CORROON LLP

/s/ Bindu A. Palapura
David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Stephanie E. O'Byrne (No. 4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
*Attorneys for Defendant Motorola Mobility LLC*

OF COUNSEL:
Mitchell G. Stockwell
Richard W. Goldstucker
Shayne E. O'Reilly
KILPATRICK TOWNSEND AND
   STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

Taylor H. Ludlam
KILPATRICK TOWNSEND AND
   STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700

SHAW KELLER LLP

OF COUNSEL:
Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

OF COUNSEL:
Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000

/s/ Kelly E. Farnan
Kelly E. Farnan (No. 4395)
Travis S. Hunter (No. 5350)
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
hunter@rlf.com
*Attorneys for Defendant ZTE (USA) Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

OF COUNSEL:

Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Joseph A. Micallef
Anna M. Weinberg
Wonjoo Suh
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

Dated: November 7, 2017

Rodger D. Smith II (No. 3778)
Jeremy A. Tigan (No. 5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
rsmith@mnat.com
jtigan@mnat.com
*Attorneys for Defendants Microsoft Corporation,*
*Microsoft Mobile Oy, and Microsoft Mobile Inc.*
*(f/k/a Nokia Inc.)*

43