**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HTC CORPORATION and<br>HTC AMERICA, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 15-cv-543-JFB-SRF<br><br>**JURY TRIAL DEMANDED** |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO GROUP LTD.,<br>LENOVO (UNITED STATES) INC., and<br>MOTOROLA MOBILITY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 15-cv-544-JFB-SRF<br><br>**JURY TRIAL DEMANDED** |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 15-cv-545-JFB-SRF<br><br>**JURY TRIAL DEMANDED** |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ZTE (USA) INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. No. 15-cv-546-JFB-SRF<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY SUMMARY JUDGMENT BRIEF ON VALIDITY**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com
aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
agothing@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499

ahuang@robinskaplan.com

Dated: December 6, 2017                    **Counsel For Plaintiff Evolved Wireless, LLC**

# Table of Contents

Page

Table of Contents ........................................................................................................ iv

Table of Authorities .................................................................................................... v

I.      ARGUMENT ................................................................................................... 1

    A.      Wang is not Prior Art to the '373 Patent................................................ 1

        1.      The '373 Patent is Entitled to the Priority Date of its Provisional Application................................................................ 2

        2.      Wang Is Not Entitled to Claim Back to its Provisional. ............................ 8

    B.      Wang does not Anticipate Any Asserted Claim. .................................... 10

    C.      Defendants Have Failed to Offer a Legally Sufficient Motivation to Combine............................................................................ 14

        1.      Defendants Provide Insufficient Explanation as to *Why* a Person of Ordinary Skill Would Selectively Combine or Modify the Specific References............................................................. 15

        2.      Defendants Fail to Identify the Actual Combination They Contend Renders Any Claim of the '373 Patent Obvious....................................... 19

        3.      Defendants Provide No Explanation as to Why One of Skill Would Have a Reasonable Expectation of Success Based on the Chosen References............................................................. 20

II.      CONCLUSION ................................................................................................ 20

# Table of Authorities

Page(s)

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)...............................................................17, 18, 19, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................2, 10, 15

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016).....................................................................16

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
661 F.3d 629 (Fed. Cir. 2011).....................................................................12, 14

*Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*,
542 F.3d 1363 (Fed. Cir. 2008).....................................................................18

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015).................................................................2, 9, 10

*IGT v. Bally Gaming Int'l Inc.*,
610 F. Supp. 2d 288 (D. Del. 2009).............................................................2, 15

*In re Mann*,
Appeal 2015-003571, 2016...........................................................................10

*In re Wertheim*,
646 F.2d 527 (CCPA 1981)...........................................................................10

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008).....................................................................16

*InTouch Techs., Inc. v. VGo Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014).................................................................17, 20

*Merck Sharp & Dohme B.V. v. Warner Chilcott Co.*,
2016-2583, 2017 U.S. App. LEXIS 20441 (Fed. Cir. Oct. 19, 2017) ....................16

*Microsoft Corp. v. Enfish, LLC*,
662 F. App'x 981 (Fed. Cir. 2016) ...............................................................16

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017).................................................................17, 20

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008).....................................................................2, 4

Defendants' invalidity arguments fail to raise a genuine issue of material fact that U.S. Patent No. 7,809,373 ("the '373 Patent") is invalid by clear and convincing evidence. Defendants ignore their heavy burden and urge the Court to deny Evolved Wireless's motion because their expert witness, Dr. Kakaes, has provided contrary conclusions from Evolved Wireless's expert, Dr. Cooklev. But Dr. Kakaes' conclusions are unsupported by the record evidence, and no reasonable jury could find for Defendants by clear and convincing evidence. As such, Evolved Wireless's motion for summary judgment on validity should be granted.

# I. ARGUMENT

## A. Wang is not Prior Art to the '373 Patent.

Defendants rely on U.S. Patent No. 8,131,295 ("Wang") as both an anticipatory and obviousness reference. *See* D.I. 250-3 ¶ 283.[1] As a matter of law, these assertions fail to render the '373 Patent invalid, however, as Wang is not prior art to the '373 Patent. The Wang patent application was filed on June 19, 2007, and claims priority to a provisional application filed on June 20, 2006. D.I. 250-4. The '373 Patent application was filed on October 27, 2006, and claims priority to an October 31, 2005 provisional. D.I. 250-1. Thus, the '373 Patent was filed before the Wang patent was filed, and the '373 Provisional was filed before the Wang Provisional.



---

[1] Defendants HTC, Motorola, Microsoft, Samsung, and ZTE submitted one joint brief in opposition to Evolved Wireless's motion for summary judgment. As such, Evolved Wireless submits only one reply brief. Docket entries refer to case number 15–cv–00545. Appendix A to this brief includes a chart identifying the proper citations to the record in each of the five cases.

Wang is only prior art to the '373 Patent if *both* (1) the '373 Patent *is not* entitled to its provisional application's filing date, *and* (2) Wang *is* entitled its provisional application's filing date. Summary judgment is appropriate because no reasonable jury could find in favor of Defendants on both of these issues by clear and convincing evidence.

### 1. The '373 Patent is Entitled to the Priority Date of its Provisional Application.

To claim the benefit of an earlier filed provisional application, the provisional must properly disclose the inventions claimed in the later filed patent. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). As shown below, Evolved Wireless met its burden of production to come forward with evidence showing the '373 Patent is entitled to its provisional application. Thus, the ultimate burden of persuasion remains with Defendants to prove, by clear and convincing evidence, that the '373 Patent is not supported by its provisional application. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1328 (Fed. Cir. 2008). As a matter of law, Defendants have not and cannot meet this burden.

Defendants allege that because Dr. Kakaes has offered opinions that are contrary to those provided by Evolved Wireless's expert, Dr. Cooklev, summary judgment should be denied. But the "mere existence of a scintilla of evidence" in support of Defendants' position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To rebut Evolved Wireless's detailed evidence that the '373 Patent is supported by its provisional, Defendants were required to bring forth evidence on which a reasonable jury could find in Defendants' favor, in light of their heighted burden, that one or more elements of the claimed invention was not disclosed in the provisional. As described more fully below, Defendants' fail to identify evidence that raises a genuine issue of material fact for trial. *IGT v. Bally Gaming Int'l Inc.*, 610 F. Supp. 2d 288, 329 (D. Del. 2009).

**a. "wherein the preamble information is a dedicated preamble used only for a specific terminal"**

As previously briefed, the '373 provisional explicitly discloses this limitation. D.I. 249 at 13-16. When discussing multiple handover procedures using some type of resource reservation, the '373 provisional explicitly states that an alternative procedure includes the "target NB could send UE *a RACH preamble resource* e.g. signature via source NB." D.I. 250-5 at 8273 (emphasis added); *see also* D.I. 251-2 ¶¶ 347-53. Defendants do not address this disclosure in their opposition. D.I. 261 at 10-12. This failure alone is sufficient to grant summary judgment.

Moreover, the arguments raised by Defendants are irrelevant and incorrect. First, in one alternative handover procedure, Figure 5 of the provisional discloses that the target base station may assign a radio resource to the mobile terminal. D.I. 250-5 at 8272. Defendants allege that Figure 5 does not disclose a preamble as the resource because Figure 5 states "No Preamble." D.I. 261 at 10. This argument is irrelevant because Figure 5 is only one *alternative* procedure, and the text accompanying the next procedure in Figure 6 discloses that one of the reserved resources proposed by the provisional is a "RACH preamble resource." D.I. 250-5 at 8273.

Second, the '373 provisional describes reserved RACH preamble resources when discussing the initial access procedure. *Id.* at 8269. Defendants allege that the random access procedure used for initial access is somehow different from the random access procedure used for handover, and thus nothing discussed in the initial access procedures can support the claimed handover procedure. D.I. 261 at 10-11. However, Defendants do not cite any testimony or opinions from their expert, Dr. Kakaes, that the random access procedure is different in these scenarios. Indeed, aside from using the claimed "dedicated preamble," the random access procedure is essentially the same for either scenario. D.I. 251-1 ¶¶ 92-94, 104-06. Defendants' failure to address the explicit disclosure of this limitation in Figure 6 of the '373 provisional, and

failure to identify evidence upon which a reasonable jury could find in their favor by clear and convincing evidence, renders summary judgment appropriate.

### b.  "wherein the dedicated preamble is determined by the target base station"

Contrary to Defendants' brief, the Court need not make any credibility determination as to whether this limitation is disclosed in the '373 provisional. On its face, the limitation is expressly disclosed and Dr. Kakaes' conclusions to the contrary are not factually supported. When discussing multiple handover procedures using some type of resource reservation, the '373 provisional explicitly identifies an alternative procedure in which the "*target NB could send UE a RACH preamble resource e.g. signature via source NB.*" D.I. 250-5 at 8273 (emphasis added); D.I. 251-2 ¶¶ 354-58. This is an explicit disclosure of a reserved RACH preamble resource determined by and sent from the target base station. Significantly, Defendants do not even address this express disclosure in their brief. There is no need for the Court to weigh credibility when this limitation is, without dispute, expressly disclosed in the provisional.

### c.  "target base station"

Defendants' arguments as to this limitation demonstrate the lengths Defendants are willing to go to attempt to create a fact dispute. Defendants allege that Evolved Wireless bears "the burden of proof on this issue" and that Dr. Cooklev does not offer any analysis that the claimed "target base station," as construed by the Court, is disclosed in the provisional application. D.I. 261 at 21-22. Both of these allegations are false. First, Evolved Wireless only has the burden of production to come forward with evidence that the '373 Patent is supported by the provisional, after which Defendants bear the ultimate burden of persuasion to show—by clear and convincing evidence—that the '373 Patent is unsupported. *Tech. Licensing*, 545 F.3d at 1328. Evolved Wireless met its burden of production through Dr. Cooklev, who provided over 45 pages of analysis showing the '373 Patent is entitled to its provisional application. *See* D.I. 251-2 ¶¶ 333-

465. Defendants, on the other hand, have not met their burden by clear and convincing evidence.

Significantly, Defendants mislead the Court by asserting that Evolved Wireless and Dr. Cooklev offer no evidence from the '373 provisional disclosing "that the source base station determines that the mobile terminal will be transferred to the target base station." D.I. 261 at 16 (citing Dr. Cooklev's expert report at paragraphs 347-58, 390-93, 417-20, 457-60). Defendants completely ignore that Dr. Cooklev addressed this limitation elsewhere in his report, for example when discussing the source base station claims which require the source base "deciding to perform a handover for a terminal to a cell of a target base station" (claim 1), "receiving a measurement report from the terminal" (claim 2), and "determining whether to perform a handover based on the received measurement report" (claim 4). D.I. 251-2 ¶¶ 334-36, 358-69. As the '373 provisional shows, the source base station both receives a measurement report and determines whether to perform the handover to the target base station. *Id.*; *see also* D.I. 250-5 at 8272 ("the UE is indicated to perform CELL CHANGE *by Serving eNode-B*"), 8273, 8280 ("Handover procedure[FFS]: 1. measurement reporting *to Serving eNodeB*"), 8283 ("Cell level mobility (initial cell selection and re-selection): RRC *at Node B* manages cell update for UEs in RRC active mode"). Indeed, Dr. Kakaes never disputed that the claimed "target base station" was unsupported by the provisional, and Defendants' attorney argument is baseless. Summary judgment is appropriate because no genuine issue of fact remains regarding this limitation.

### d.   "wherein the access information is for a random access channel (RACH)" (claim 5)

Once again, Defendants seek to create a dispute with incorrect and irrelevant arguments that are contrary to the express disclosures in the '373 provisional application. Among the alternative procedures proposed in the provisional, several types of handovers using the RACH are discussed. D.I. 250-5 at 8272-73. The provisional specifically discloses that one of the alternative reserved resource types is "a RACH preamble resource"—the claimed "RACH"

access information. *Id.* at 8273. Defendants do not dispute this disclosure, but only suggest that because some alternatives do not use a RACH, no other disclosures can support this limitation. D.I. 261 at 14-15. Defendants' tortured reading of the provisional is plainly incorrect on its face, and no reasonable jury could find for Defendants by clear and convincing evidence when the *exact words* from the claim are in the provisional. Summary judgment is appropriate.

**e. "wherein the preamble information includes frequency information and time information" (claim 6)**

Defendants' arguments as to claim 6 are moot, as Evolved Wireless is no longer asserting this claim against Samsung (the only party it was originally asserted against). The corresponding limitation for the mobile device found in asserted claim 19 is discussed further below.

**f. "transmitting a handover command that contains the access information to the terminal upon receiving the access information by the source base station" (claim 7)**

Like his opinions on other limitations, Dr. Kakaes' opinions are contrary to the express disclosure in '373 provisional such that no reasonable jury could find in favor of Defendants. The '373 provisional explicitly discloses sending access information, such as the "RACH preamble resource," to the terminal "via source NB." D.I. 250-5 at 8273; *see id.* at 8272 ("the UE is indicated to perform CELL CHANGE *by Serving eNode-B*"). These disclosures show that the source base station sends a message to the mobile device after receiving access information from the target base station. Dr. Kakaes does not explain why he believes the provisional does not support this limitation, and Defendants' brief does not explain the dispute either. Given the disclosures and Defendants' heightened burden to show the '373 Patent is unsupported, Defendants' conclusory allegations of a dispute is insufficient on summary judgment.

**g. "wherein the preamble information is used to identify the terminal" (claim 12)**

Defendants' sole argument on this limitation is an alleged dispute on whether other portions of the '373 provisional application outside of pages 8268-8274 should be considered.

*See* D.I. 261 at 16-17. However, Defendants ignore that this limitation is disclosed in these pages. For example, the provisional disclosed that a "RACH preamble resource e.g. signature" is assigned by the target base station and used by the mobile device in a handover. D.I. 250-5 at 8273. This disclosure shows that the preamble information, such as the "RACH preamble resource e.g. signature," is used to identify the terminal in the handover by the base station because that is the purpose of the target base station assigning the "RACH preamble resource e.g. signature" to the mobile device. D.I. 249 at 21. The other disclosures in other portions of the '373 provisional provide additional support for this disclosure, and Defendants cannot ignore these other portions. As such, there is no genuine issue of material fact as to this limitation.

### h.  "transmitting the preamble information to the target base station for performing a radio access procedure with the target cell" (claim 18)

As discussed in more detail in Evolved Wireless's opening brief, there is no dispute that the '373 provisional discloses this limitation. *Id.* at 18-19. Defendants' arguments for this limitation reargue whether the "dedicated preamble" limitation is supported, but do not make any unique argument as to this claim. Because the '373 provisional discloses the disputed "dedicated preamble" limitations, there is no genuine issue of material fact as to this limitation in claim 18.

### i.  "wherein the access information includes a transmission characteristic of the preamble information, and the transmission characteristic relates to frequency and time used in transmitting the preamble information" (claim 19)

Defendants again ignore the express disclosures in the '373 provisional when discussing this limitation. As outlined in Evolved Wireless's opening brief, there is express disclosure of multiple RACH preamble resources, such as "freqeuncy[sic]/symbols" and "signature[s]," that are used in accessing the random access channel. *Id.* at 20. Dr. Kakaes does not dispute that multiple RACH resources are disclosed in the '373 Provisional, but instead offers only an unsupported conclusion that the frequency and symbol resources reserved for initial access are

7

different than RACH resources used for handovers. This unsupported conclusion cannot show by *clear and convincing* evidence that the limitation is not supported.

### j. "wherein the access information includes system information transmitted from the target base station" (claim 20)

Defendants' sole argument as to this limitation is incorrect on the face of the documents. It is undisputed that this limitation is disclosed in the initial access section of the '373 provisional, just two pages prior to the handover discussion. D.I. 250-5 at 8270; D.I. 249 at 21-22. Defendants again assert that the random access procedure for initial access is somehow completely different and unrelated to the random access procedure for handover. D.I. 261 at 19-20. As discussed above, the random access procedure is the same for handover and initial access and this argument is unsupported. Because the disclosures identified by Evolved Wireless in its opening brief are relevant and undisputedly disclose this limitation, there is no genuine issue of material fact as to this limitation.

### 2. Wang Is Not Entitled to Claim Back to its Provisional.

Even if the '373 Patent were not entitled to claim priority to its provisional—which it is— Wang is still not prior art to the '373 Patent because neither the claims nor the specification in the Wang patent are supported by the Wang provisional application. Defendants base their invalidity arguments on the disclosures of a "dedicated RACH preamble signature" and a "reserved RACH preamble signature" in the Wang patent specification. *See* D.I. 250-3 ¶¶ 326-32. These disclosures were also claimed in Wang claims 9, 10, 27, and 28. D.I. 250-4. The claims and the portions of the specification on which Defendants rely, however, were only added *in the Wang patent application*, which was filed almost one year after the Wang provisional. As such, the claims and the disclosures are only entitled to the filing date of the Wang patent application—which is too late.

Claims 9, 10, 27, and 28 in Wang each require that "a particular RACH preamble signature is reserved for the handover." D.I. 250-4. Defendants rely on limited disclosures in the Wang provisional to support these claims. *See* D.I. 250-3 at App. A; D.I. 261 at 23. Specifically, Defendants allege that because the Wang provisional discloses "*the* access signature with higher orthogonality, higher priority and/or higher power *are* proposed to be used," a person of ordinary skill would understand that the Wang provisional discloses a "dedicated RACH preamble signature." D.I. 261 at 23. None of these disclosures, however, teach a person of ordinary skill that one *particular* signature is *dedicated* or *reserved* for one mobile device, as none of these words—which are used for the first time in the Wang patent application—appear anywhere in the provisional. At best, these disclosures only demonstrate that one preamble signature is selected by the mobile terminal out of a group of signatures, but not that the signature is dedicated to a specific mobile device. D.I. 251-2 ¶¶ 469-72 (Cooklev Rep.).

Indeed, the disclosures of "*the* access signature with higher power . . ." are actually claimed—almost verbatim—in a different dependent claim in both the Wang provisional and the Wang patent, and not in claims 9, 10, 27, and 28. *See* D.I. 250-4 at cl. 8 & 26; D.I. 250-7 at cl. 20; *compare* D.I. 250-4 at cl. 8 & 26, *with id.* at cl. 9, 10, 27, & 28.[2] Because no reasonable jury could conclude that claims 9, 10, 27, and 28 are supported by the Wang provisional, the Wang patent is not entitled to the provisional filing date and is not prior art. *See Dynamic Drinkware,* 800 F.3d at 1382 (holding a "reference patent is only entitled to claim the benefit" of

---

[2] Defendants allege that Dr. Cooklev admits claim 27, claiming "a particular RACH preamble signature is reserved for the handover," is supported by the provisional. D.I. 261 at 23 n.9. This is false. Dr. Cooklev clearly states that he disagrees any claims to "a particular RACH preamble signature" are unsupported by the provisional and at best, only claims to "a plurality of RACH preamble signatures" may be supported. *See, e.g.*, D.I. 251-2 ¶¶ 475-76. Dr. Cooklev mistakenly identified these claims to "a plurality . . . " as claims 8 and 27, instead of claims 8 and 26.

"its provisional application if the disclosure of the provisional application provides support for the claims in the reference patent in compliance with § 112, ¶ 1") (citing *In re Wertheim*, 646 F.2d 527, 537 (CCPA 1981)).[3]

*In re Wertheim* is directly on point, holding that disclosures added to a patent application claiming priority back to an original application are not entitled to the priority date of the original application because the later application is the only "application" that discloses the claimed invention. *In re Wertheim*, 646 F.2d at 537 ("[O]nly an application disclosing the patentable invention before the addition of new matter . . . can be relie[d] upon to give a reference disclosure the benefit of its filing date."). Even though *Wertheim* dealt with continuation-in-part applications, its rationale is equally applicable to provisional applications. In fact, the statute allowing for provisional applications itself presumes that a provisional may not support the patent application, as only applications "disclosed in the manner provided by section 112(a)" are entitled to claim priority back to the provisional application. 35 U.S.C. § 119(e)(1). Under any test this Court applies to the claims or specification, Wang is not prior art to the '373 Patent.

### B.   Wang does not Anticipate Any Asserted Claim.

In another attempt to create a fact dispute, Defendants again use unsupported expert witness testimony to avoid summary judgment. But a genuine issue of material fact requires more than mere conclusions, and Defendants must bring forward evidence on which a reasonable jury could find in their favor by clear and convincing evidence. *Anderson*, 477 U.S. at 252. Here,

---

[3] The PTAB has noted under *Dynamic Drinkware*, "a provisional application that discloses X" may support "a non-provisional child that discloses both X and Y yet claims only X." *In re Mann*, Appeal 2015-003571, 2016 Pat. App. LEXIS 12592, at *13 (PTAB Dec. 23, 2016). The PTAB determined that for Y to claim priority back to the provisional application to invalidate the challenged claims, "the provisional application must also provide support for" Y. *Id.* at *11-13. In this case, under the test in *Mann*, the disclosures of a "particular," "dedicated," or "reserved" RACH preamble signature in the Wang patent specification are not entitled to the priority date of the Wang provisional as they are not disclosed in the provisional, regardless of what else is.

Defendants have failed to raise a genuine issue of material fact that Wang anticipates the limitation "wherein the dedicated preamble is determined by the target base station," as required by each of the asserted claims. Defendants cannot show that Wang anticipates because Wang contains no disclosure of which base station determines the dedicated RACH preamble signature. Recognizing this lack of disclosure, Defendants' expert, Dr. Kakaes, wrote in his opening expert report that "POSITAs would have recognized that it would not be practical for a source eNode-B to dictate to a target eNode-B what access information a WTRU must use to connect to a target eNode-B in a handover procedure." D.I. 250-3 ¶ 316. As evidenced by one of Defendants' own documents submitted to the LTE standards body, this allegation is false, as both the source and target base stations were proposed to determine the dedicated preamble. D.I. 250-8. Because Wang does not expressly or inherently disclose each and every limitation of the asserted claims, Wang cannot anticipate any claim.

In their response brief, Defendants rely on several disclosures in Wang for express anticipation. D.I. 261 at 28-31. Yet nowhere in these disclosures does Wang expressly disclose the target base station determining the dedicated preamble, and Defendants must completely twist the reference or fill in this missing limitation with testimony from its expert witness to show anticipation. This is wholly insufficient. For example, Defendants allege that column 6, lines 1 and 2 disclose the target base station determining the dedicated preamble. *Id.* at 28. These lines in the specification disclose that the "target eNode-B 256 sends uplink and downlink resource scheduling information for data transmission" in step 228. D.I. 250-4 at 6:1-2. Bus step 228 cannot disclose the target base station determining the dedicated preamble because the dedicated preamble is sent in the handover command in step 212 and used by the mobile device much earlier in the handover process in step 214(b). *Id.* at 3:40-51. The step in column 6, lines 1

11

and 2 (step 228) occurs much later in the handover process. *Id.* at 6:1-7: Fig. 2.

Defendants also allege that Wang expressly discloses the target base station determining the dedicated preamble signature in step 208, referred to as "admission control." D.I. 261 at 29. But again, there is no express disclosure. Wang's specification only discloses that as part of the admission control step, the "target eNode-B 256 can accept the WTRU 252" and can also send "a handover response to the source eNode-B 254 indicating that a handover should commence." D.I. 250-4 at 5:34-41. There is no disclosure of what information the target base station includes in the handover response message. Dr. Kakaes admits this in his obviousness analysis. D.I. 250-3 ¶ 457 ("Wang did not explicitly disclose the details of the handover response sent in step 210."). To address this gap, Defendants rely on possibilities posited by Dr. Kakaes. D.I. 261 at 29 ("Dr. Kakaes opined that the 'target eNode-B 256 *may determine and generate* the access information to be included in the handover command"). Because this *possibility* is not disclosed anywhere in Wang and is only supported by Dr. Kakaes' testimony, Wang cannot expressly anticipate the '373 Patent. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011).[4]

Further, Wang does not inherently disclose this limitation, as it is possible for both the source base station and the target base station to determine the dedicated preamble. Significantly, Defendants do not contest that anticipation by inherency requires the "prior art necessarily functions in accordance with, or includes, the claimed limitations." *Bettcher*, 661 F.3d at 639. "Inherency, however, may not be established by probabilities or possibilities." *Id.* This case law is determinative. Here, Defendants have made no showing that the target base station *must*

---

[4] Defendants allege that Dr. Cooklev did not discuss the "admission control" step in his expert report and thus Dr. Kakaes' testimony that this step discloses the target base station determining the dedicated preamble signature is unrebutted. D.I. 261 at 29. This is incorrect, as Dr. Cooklev clearly opined that none of the disclosures in Wang disclosed the target base station determining the dedicated preamble signature. D.I. 251-2 ¶ 487.

*necessarily* determine the dedicated preamble in Wang, instead alleging only that "it would not be practical for a source eNode-B" to determine the dedicated preamble. D.I. 250-3 ¶ 316. Defendants do not even contest that it was possible for the source base station to determine the dedicated preamble. Indeed, the prior art itself shows it is possible. For example, as described by Dr. Kakaes, Wang discloses that the target base station sends a handover response to the source base station and the source base station sends a handover command to the mobile device. *Id.* ¶ 295. Further, the dedicated preamble disclosed in Wang is sent in the handover command message. *Id.* ¶ 296. On its face, it is possible for the source base station to determine the dedicated preamble because the source base station generates and sends the handover command message to the mobile device.

Notwithstanding the possibilities in Wang, Defendants' own documents show it was possible for the source base station to determine the dedicated preamble. *See* D.I. 250-8. A 3GPP proposal submitted by Motorola during development of the LTE standard proposes this exact scenario, where the source base station, and not the target base station, determines the dedicated preamble. *See* D.I. 250-8; D.I. 251-2 ¶¶ 488-89. Defendants argue that because this proposal was submitted later than the Wang provisional application, it is irrelevant to what Wang inherently discloses. D.I. 261 at 31. Not only do Defendants misconstrue the inherency test for anticipation, but Defendants also ignore that the Motorola document was submitted the same month that the Wang patent application was filed in June 2007—the Wang patent's priority date, given that it is not supported by its provisional. *Compare* D.I. 250-4 (filed June 19, 2007), *with* D.I. 250-8 (submitted for June 25, 2007 meeting). Even assuming that Wang is entitled to its provisional date, Defendants have not made any showing that, prior to the Motorola document, it was *impossible* for the source base station to determine the dedicated preamble. Instead, Defendants

13

only alleged it was *impractical*. As a matter of law, impractical solutions that are still possible

cannot anticipate through inherency. *Bettcher*, 661 F.3d at 639. Thus, because Wang does not

explicitly disclose that the target base station determines the dedicated preamble and it is

possible for the source base station to determine it instead, Wang cannot expressly or inherently

anticipate any of the asserted claims. Summary judgment of no anticipation is warranted.

### C.     Defendants Have Failed to Offer a Legally Sufficient Motivation to Combine.

Defendants fail to show a motivation to combine the identified obviousness references for

three distinct reasons. First, Defendants fail to show *why* a person of ordinary skill would look to

combine the specific references used by Dr. Kakaes. Second, Defendants fail to show *what*

portions of the selected references would actually be combined, alleging instead the references

could be combined in any number of ways. Third, Defendants fail to show that a person of

ordinary skill would have a *reasonable expectation of success* in making the combination.

Rather, Defendants rely on impermissible hindsight to combine the prior art and arrive at the

claimed invention, using the '373 Patent as a roadmap to invalidity. Indeed, Defendants offer

only conclusory statements from its expert that because the references are from the same field of

technology and *could* be combined, a person of ordinary skill would simply think to combine

them. These conclusory statements, dressed up as "facts," fail to raise a genuine issue that

the '373 Patent is obvious by clear and convincing evidence.

Defendants attempt to conceal their faulty analysis by pointing to the "significant detail

regarding the combinations" in its expert report as evidence of a genuine issue of material fact.

D.I. 261 at 33. But the report submitted by Dr. Kakaes lacks substantive analysis of the

combinations and is mostly a discussion of individual disclosures in the prior art. Further,

Defendants ignore both (1) the heavy burden to prove invalidity by clear and convincing

evidence, and (2) this Court's standard for summary judgment, which requires "genuine"

disputes to be one "that a *reasonable* jury" could resolve in favor of the non-moving party. *Anderson*, 477 U.S. at 248 (emphasis added). As many other district courts have found on summary judgment, Defendants' conclusory statements regarding motivation to combine fail to raise a genuine issue of material fact on which a reasonable jury could find by clear and convincing evidence that a person of ordinary skill in the art would have been independently motivated to arrive at the claimed inventions in the '373 Patent prior to the invention date. *See, e.g.*, *Bally Gaming*, 610 F. Supp. 2d at 329 n.33 (granting summary judgment where only evidence of motivation to combine five references was suggestion that combining certain of the references would result in "greater efficiency and ease of monitoring"). Absent these showings, Defendants' combinations fail as a matter of law.

### 1.      Defendants Provide Insufficient Explanation as to *Why* a Person of Ordinary Skill Would Selectively Combine or Modify the Specific References.

Defendants fail to show why a person of ordinary skill would look to modify the specific asserted references to arrive at the '373 Patent's claimed invention. Defendants' final invalidity contentions identify 227 pieces of prior art as allegedly invalidating the five asserted patents. Ex. 1 at 7-25.[5] Further, Defendants' final invalidity contentions identified at least 32 references that allegedly anticipate and/or render the '373 Patent obvious. *See id.* at 36-37 (citing 7 anticipatory references); *id.* at Ex. F-03 pp. 1-2 (citing 25 obviousness references). Yet, Dr. Kakaes selected only a small subset (three) of the references on which to base his obviousness opinions. *See* D.I. 250-4 ¶¶ 785 & 857. Defendants were required to explain *why*, out of all the possible references, a person of ordinary skill would pick and combine or modify the specific references prior to the invention date. Summary judgment is appropriate because Defendants failed to do so.

While the obviousness inquiry is expansive in nature, the Court "must still be careful not to

---

[5] Exhibits are attached to the concurrent declaration of Ryan M. Schultz, filed herewith.

allow hindsight reconstruction of references to reach the claimed invention without any

explanation as to how or why the references would be combined to produce the claimed

invention." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008). "Thus,

it is improper to combine references 'like separate pieces of a simple jigsaw puzzle' without

'explain[ing] what reason or motivation one of ordinary skill in the art at the time of the

invention would have had to place these pieces together.'" *Merck Sharp & Dohme B.V. v.*

*Warner Chilcott Co.,* 2016-2583, 2017 U.S. App. LEXIS 20441, at *6-7 (Fed. Cir. Oct. 19,

2017) (citations omitted). "[R]eferences to 'common sense'—whether to supply a motivation to

combine or a missing limitation—cannot be used as a wholesale substitute for reasoned analysis

and evidentiary support." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016).

Although Defendants' opposition brief identifies opinions in Dr. Kakaes' report that

purport to describe the operation and teachings of the selected references (D.I. 261 at 33-35),

Defendants fail to show *why* these references would have been combined prior to the invention

of the '373 Patent. More specifically, while Defendants' brief argues that the references

identified by Dr. Kakaes are from the same general technological field, the mere fact that the

asserted references are from a common field of technology is insufficient to support a proper

motivation to combine. *Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016).

Defendants' assertions, "without more, [are] insufficient to show persuasively that a relevant

artisan would have recognized some deficiency in one reference or had some other reason to

motivate looking to the other and combining them." *Id.* Rather, a substantive explanation is

required, articulating why these references, out of all references in a field, would be chosen. *Id.*

Closer review of Dr. Kakaes' proffered motivation to combine confirms Defendants have

not offered the requisite explanation—Dr. Kakaes does not explain why he would have selected

and modified the asserted references in the first place. *See Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) (Defendant must explain a "motivation to pick out those two references and combine them to arrive at the claimed invention"). For example, Defendants argue that "Dr. Kakaes identifies disclosures in the prior art, the common knowledge of a POSITA, and the problem itself to support his position that a POSITA would combine the references." D.I. 261 at 31. Yet neither Dr. Kakaes nor Defendants explain what the alleged problem is that would motivate a person of ordinary skill to combine the references. Worse, neither Dr. Kakaes nor Defendants explain *why*, other than explaining that a person of ordinary skill *could* combine the references, a person of ordinary skill *would* combine or modify them to independently reach the claims of the '373 Patent prior to the invention date. This is fatal.

Here, Dr. Kakaes' analysis merely describes the asserted references while building to a simple and generic conclusion that "POSITAs would have combined Hu's teachings with Wang's teachings." D.I. 250-3 ¶ 454; *see also id.* ¶ 469 (asserting only that "POSITAs *could* have incorporated Hu's teachings with NEC," but not stating *why* a person *would* have made the combination). Dr. Kakaes' conclusions are insufficient to carry Defendants' burden to show why one of skill in the art would combine or modify, out of all of the possible references, the specific references proposed by Dr. Bims. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012); *InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, 751 F.3d 1327, 1353-54 (Fed. Cir. 2014).

As discussed in Evolved Wireless's opening brief, Dr. Kakaes's testimony is similar to the expert testimony in *ActiveVideo*, where the defendant's expert argued that the "modular" nature of the prior art was a reason why one of ordinary skill would have been motivated to combine the identified references. *ActiveVideo*, 694 F.3d at 1327. The Federal Circuit rejected this approach

as "fraught with hindsight bias" because the expert "failed to explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claims." *Id.* Further, the testimony "was essentially a conclusory statement that a person of ordinary skill in the art would have known . . . how to combine any of a number of references to achieve the claimed inventions." *Id.* Dr. Kakaes' testimony is very similar to *ActiveVideo*.

Defendants cite to *Commonwealth Science* to distinguish *ActiveVideo*, where the Federal Circuit held that a fact question existed regarding whether two "sufficiently similar" references would be combined. D.I. 261 at 37-38. For example, in *Commonwealth*, the Federal Circuit found a fact question existed for trial as to whether it would have been obvious to use the same outdoor-based solution to solve the same problem in an indoor environment. *Commonwealth Sci. & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1373 (Fed. Cir. 2008) (primary reference disclosed every limitation of the challenged claims except for one, using the invention in an indoor environment instead of the outdoor environment disclosed in the reference). This case does not apply here, where the various references Defendants argue should be combined to support its obviousness argument were not directed to any common problems.

Instead, Defendants merely allege—without going into any technical detail about what problems existed in handover procedures or what common solutions were allegedly taught to solve any of these problems—that because the references deal with handovers, they could and would be combined or modified to reach the '373 Patent claims. This is nothing more than hindsight bias, using the '373 Patent itself as a roadmap to arrive at the claimed invention. Thus, no reasonable jury could find that Defendants have shown an articulated motivation to combine or modify the references by clear and convincing evidence, and summary judgment is proper.

### 2. Defendants Fail to Identify the Actual Combination They Contend Renders Any Claim of the '373 Patent Obvious.

Second, Defendants have not sufficiently described *what* the combinations would actually be, instead merely concluding without analysis that one of ordinary skill would have combined them. For example, Dr. Kakaes discusses the Hu and Wang combination in less than two pages and the Hu and NEC combination in as little as five pages in his report. *See* D.I. 250-3 ¶¶ 454-72. For Hu and Wang, Dr. Kakaes makes the bald assertion that "POSITAs could have incorporated Hu's teachings into Wang's teachings" without actually explaining what the combination would actually be. *Id.* ¶¶ 454-57. Further, the Hu and NEC section consists of a discussion of NEC's disclosures and a two-paragraph conclusion that the references could be combined. *Id.* ¶¶ 470-71. Again, absent is a discussion of what the combination of Hu and NEC would be. As discussed in the opening brief, this is not enough to meet Defendants' obviousness burden, as Dr. Kakaes fails to identify what the combination of the references would be, or how the asserted combinations are supposed to work. *See* D.I. 249 at 34-35.

Dr. Kakaes' analysis is again very similar to what was found legally insufficient in *ActiveVideo*, where the expert "failed to explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claim." 694 F.3d at 1327. Instead, the expert testified that "a person of ordinary skill in the art would have known . . . how to combine any of a number of references to achieve the claimed inventions." *Id.* According to the Federal Circuit, the expert's testimony had "no relation to any specific combination of prior art elements" and was "fraught with hindsight bias." *Id.* at 1327-28. Here, Dr. Kakaes fails to show what portions of the references make up the combinations, instead only concluding that the "combination" of the references teaches the limitations. Without showing what portions of the

19

references would be combined to invalidate the claims of the '373 Patent, and how they would be combined, Defendants cannot meet their burden to prove the claims are obvious. *Personal Web*, 848 F.3d at 994 (must "clearly explain[], or cite[] evidence showing, *how* the combination of the [asserted] references was supposed to work").

> ### 3.   Defendants Provide No Explanation as to Why One of Skill Would Have a Reasonable Expectation of Success Based on the Chosen References.

Further, Defendants have not appropriately articulated why one of skill in the art would have a "reasonable expectation of success" in combining or modifying the references. Indeed, for both the combinations, Dr. Kakaes does not even explain what the combination is, much less how it would successfully work. This is the fatal flaw with Defendants' argument—neither Defendants nor Dr. Kakaes address why one of skill in the art would independently modify or combine the references and have a reasonable expectation of success in doing so. *InTouch Techs.*, 751 F.3d at 1347. Rather, Defendants impermissibly rely on the teachings of the '373 Patent to craft an obviousness combination without adequately explaining what the combination would be, why one of skill in the art would independently combine or modify these portions of asserted references, or why one of skill would have a reasonable expectation of success in combining or modifying them in the manner claimed by the '373 Patent. *KSR*, 550 U.S. at 418; *Personal Web*, 848 F.3d at 993-94; *ActiveVideo*, 694 F.3d at 1327. Summary judgment that the '373 Patent is not obvious should be granted accordingly.

## II. CONCLUSION

For the reasons stated above, the Court should grant Evolved Wireless's summary judgment motion on validity.

Dated: December 6, 2017

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com
aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
agothing@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP

21

399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**