**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC.,<br><br>Defendant. | )<br>)<br>) C.A. No. 15-542-JFB-SRF<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **PUBLIC VERSION**<br>)<br>)<br>) |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HTC CORPORATION, and<br>HTC AMERICA, INC.,<br><br>Defendants. | )<br>)<br>) C.A. No. 15-543-JFB-SRF<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **PUBLIC VERSION**<br>)<br>)<br>)<br>) |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY LLC,<br><br>Defendant. | )<br>)<br>) C.A. No. 15-544-JFB-SRF<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **PUBLIC VERSION**<br>)<br>)<br>) |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | )<br>)<br>) C.A. No. 15-545-JFB-SRF<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **PUBLIC VERSION**<br>)<br>)<br>) |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-546-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ZTE (USA) INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-547-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MICROSOFT CORPORATION, MICROSOFT | ) | **PUBLIC VERSION** |
| MOBILE OY and NOKIA INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE
TESTIMONY OF DR. COOKLEV PURSUANT TO FED. R. EVID. 702 AND 403**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III.    SUMMARY OF THE ARGUMENT .................................................................3

IV.     STATEMENT OF FACTS ...................................................................................4

    A.   Dr. Cooklev's Infringement Opinions Are Heavily Based On Two Types Of TechPats Testing............................................................................4

V.      ARGUMENT........................................................................................................7

    A.   Legal Standard ..........................................................................................7

    B.   Dr. Cooklev's Infringement Opinions Relying On The TechPats Test Reports Are Unreliable And Must Be Excluded.......................................8

        1.   Dr. Cooklev's opinions of infringement based upon TechPats reports are purely speculative. ...........................................................8

        2.   Dr. Cooklev's opinions based upon TechPats' field testing are inapplicable to and/or incomplete for Defendants' Accused Products and must be excluded.................................................................10

    C.   The Probative Value Of Dr. Cooklev's Conclusions Relying On The TechPats Test Reports Are Outweighed By The Danger Of Misleading The Jury. ..................................................................................................12

VI.     CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ............................................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................... 3, 7

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................... 7, 8

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) .............................................................................. 7, 8, 12

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ............................................................................................... 7

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985) ........................................................................... 10, 12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) ............................................................................... 10, 11-12

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ............................................................................... 7

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000) ............................................................................... 8, 10

**Statutes**

Fed. R. Evid. 403 ............................................................................................... passim

Fed. R. Evid. 702 ............................................................................................... passim

## I.   INTRODUCTION

To support his infringement opinions, Evolved's expert, Dr. Todor Cooklev, relies heavily on "emulation tests" that a third party, TechPats, ran on a subset of Defendants'[1] Accused Products. These TechPats tests purport to show how a tested device interacts with an LTE cellular network by capturing the external signals sent between a tested device and a cellular base station. These tests, however, show *only* the "end result" signal. As the person who performed the tests plainly testified, the TechPats tests *do not* show or provide any insight into how Defendants' Accused Products operate internally. The asserted claims of the '373 and '236 patents, however, are in fact directed to the internal operation of a mobile device. Thus, using the emulation tests as Dr. Cooklev did—to somehow conclude that Defendants' Accused Products infringe the '373 and '236 patents—is an exercise in pure speculation. His opinions based on the emulation testing are simply not reliable and must be excluded under Federal Rule of Evidence 702.

TechPats also performed field testing (meaning tests performed out in the real world), but it did so using only a single LG device (not a party to this suit) and a single Samsung device (for only one of the two remaining patents in this case). Dr. Cooklev nevertheless relies on these field tests as "proof" of infringement against Defendants whose devices were not actually tested. Further, Dr. Cooklev admits that these field tests were incomplete. Dr. Cooklev's opinions based on these field tests are completely unreliable, and should be excluded as well.

---

[1] "Defendants" refers collectively to Apple Inc. ("Apple"), HTC Corporation, HTC America, Inc. (collectively "HTC"), Motorola Mobility LLC ("Motorola"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively "Samsung"), ZTE (USA) Inc. ("ZTE"), Microsoft Corporation, Microsoft Mobile Oy, and Microsoft Mobile Inc. (f/k/a Nokia Inc.) (collectively "Microsoft") in the above-captioned matters.

In any event, the probative value of Dr. Cooklev's opinions based on the TechPats tests (of which there is none) is so heavily outweighed by the high likelihood of misleading a jury, that his opinions should also be excluded under Federal Rule of Evidence 403.  For these reasons, Dr. Cooklev's opinions relying on TechPats testing and associated reports should be excluded in their entirety.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

On June 25, 2015, Evolved filed six related actions against Defendants, asserting patent infringement claims on five patents declared "essential" to the Long-Term Evolution ("LTE") wireless communications standard.  (D.I. 1.[2])  Evolved accuses various mobile devices that are compatible with LTE networks.  Defendants answered Evolved's Complaints, denying that they infringed the patents-in-suit and asserting numerous affirmative defenses and counterclaims.

On November 11, 2015, the parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and Paragraph 3 of the District of Delaware Default Standard for Discovery.  Since then, the parties have engaged in extensive fact and expert discovery.  Fact discovery closed on April 10, 2017, and expert discovery closed on August 23, 2017.

On May 22, 2017, the Parties exchanged opening expert reports.  Defendants served opening expert reports detailing the invalidity of the Asserted Patents, and Evolved served opening expert reports by Dr. Cooklev detailing the alleged bases for infringement by Defendants' Accused Products.  On June 26, 2017, the Parties exchanged rebuttal reports concerning Dr. Cooklev's bases for the alleged validity of the Asserted Patents and Defendants' experts' bases for non-infringement of the Asserted Patents.

In July 2017, after having litigated the patents-in-suit for over two years, and after

---

[2] Unless otherwise noted, docket entries (D.I.) cited herein refer to Case No. 15-cv-542.

defendants had served two rounds of expert reports (on invalidity and non-infringement),

Evolved approached the Defendants in the six related actions about dismissing three of the

patents-in-suit.  Ultimately the parties stipulated to dismissal of these three patents, leaving only

two patents-in-suit: the '373 and '236 patents ("Asserted Patents").  Thereafter, on July 24, 2017,

the Parties exchanged supplemental expert reports.

On August 31, 2017, Defendants filed a motion and opening brief for summary judgment

of license with respect to the '373 patent. (D.I. 191.)  On October 6, 2017, Evolved filed its

opening brief for summary judgment on validity of the '373 patent. (D.I. 221, 224.)  On October

6, 2017, Defendants filed an opening brief for summary judgment of non-infringement of the

'373 and '236 patents. (D.I. 223.)

## III.    SUMMARY OF THE ARGUMENT

Defendants move to exclude Dr. Cooklev's opinions that rely upon testing performed by

TechPats, and the test reports based thereon, because Dr. Cooklev's conclusions drawn from this

testing are unsubstantiated speculation and do not meet the reliability requirements of Fed. R.

Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*  TechPats' emulation testing does not

provide any insight into how a tested device operates, and only allows analysis of the final

signals transmitted externally by a tested device.  Because there is no visibility into what steps a

device performs internally prior to transmitting a signal, an expert cannot reliably conclude from

the tests that a tested device performs the limitations of the asserted claims of the '373 or '236

patents.  Dr. Cooklev's reliance on the TechPats testing to conclude that certain claim limitations

are satisfied is purely unsupported speculation and must be excluded because it is not founded in

reliable principles as Federal Rule of Evidence 702 requires.

Dr. Cooklev also relies on TechPats field testing to bolster his infringement opinions.

But these field tests were not conducted with devices from all Defendants' products, and thus Dr. Cooklev's reliance on these field tests is entirely misplaced for these Defendants. Dr. Cooklev should not be permitted to offer opinions about a Defendant's Accused Products based on the results of field testing if that Defendant's products were never field tested. Even for those devices that were tested, the field testing was incomplete and cannot possibly demonstrate infringement of all elements in the asserted claims.

Finally, apart from Federal Rule of Evidence 702, the Court also has discretion to exclude Dr. Cooklev's opinions that rely on the TechPats reports under Federal Rule of Evidence 403. The probative value of Dr. Cooklev's purely speculative opinions is greatly outweighed by the high likelihood of misleading the jury with opinions based on reports that offer no insight into the actual operation of the Accused Products. Accordingly, Dr. Cooklev's opinions should also be excluded under Federal Rule of Evidence 403.

## IV.    STATEMENT OF FACTS

### A.    Dr. Cooklev's Infringement Opinions Are Heavily Based On Two Types Of TechPats Testing.

Evolved is asserting claims 15-21 and 23-25 of the '373 Patent against all Defendants' mobile terminal products, *e.g.*, cellphones ("Accused Terminals"). Evolved is also asserting claims 1-10 and 12-13 of the '373 Patent against Samsung's base station products, *e.g.*, cell towers ("Accused Base Stations"). Evolved also asserts claims 1-10 and 12-13 of the '236 Patent against all Defendants' Accused Terminals. The Accused Terminals and Accused Base Stations are collectively referred to herein as the "Accused Products."

On May 22, 2017, Evolved's technical expert, Dr. Todor Cooklev, submitted in each of these six cases an opening report regarding infringement of the Asserted Patents. (Declaration of

Michael D. Jay ("Jay Decl."), Ex. A (Cooklev Op.)[3])  In ultimately opining that Defendants' Accused Products infringe the asserted claims of the '373 and '236 patents, Dr. Cooklev relied extensively on two types of device testing that a third-party company, TechPats Inc., had performed.

████████████████████████[4] TechPats performed, on a subset of Defendants' Accused Products, "emulation testing," which purports to simulate the operation of a tested device on an LTE network.  (Jay Decl., Ex. A (Cooklev Op.) at ¶ 250; *id.*, Ex. H (TechPats RKM-101 Verification of iPad Air 2, Royer Dep. Ex. 3) at 5-6.)  Only Accused Terminals were tested; no Accused Base Stations were tested.  To perform this emulation testing, TechPats retained a consultant, Mr. Claude Royer.  (Jay Decl., Ex. B (Royer Tr.) at 7:25-8:2; 30:8-15.)  Mr. Royer both performed the tests and wrote the reports based on the testing.  (*Id.* at 14:17-23; 30:8-15.)  In its emulation testing, TechPats' test equipment purportedly allows TechPats to emulate cellular networks, such that a device being tested will behave as though it is connected to a cellular tower when, in actuality, it is connected to the test equipment.  (*Id.* at 99:6-19.)  Significantly, the test equipment allows TechPats to capture *only* the signals transmitted between a tested device (*e.g.*, a mobile phone) and a cellular base station.  (*Id.* at 102:5-103:17.)  The test equipment used did not capture, and is actually incapable of capturing, *how* the tested device created the messages.  (*Id.* at 103:9-21.)  To the extent TechPats could have possibly used test

---

[3] Evolved served substantially identical opening infringement experts reports in all six cases against Defendants. Citations to Dr. Cooklev's opening infringement report herein refer to the report served in the Apple matter (15-cv-542), which for purposes of the instant motion is representative of Dr. Cooklev's opening infringement reports served in the other five matters.

[4] ████████████████████████████████████████████████████

equipment to try and capture the internal workings of a tested device, TechPats made no such attempt. (*Id.* at 104:13-105:21.) Nor did TechPats review any of the source code for the Accused Products to determine as part of this testing how the devices actually operate. (*Id.* at 52:6-15; 52:22-25.) Despite the limitations in TechPats' emulation testing, Dr. Cooklev relied extensively on TechPats' emulation testing and resulting reports for his opinion ███████████ ████████████████████████████████████████████[5]

In addition to the emulation testing, TechPats also performed field testing that Dr. Cooklev used to support his infringement opinions as well.[6] TechPats performed these field tests on an LG G5 device for the '236 Patent and a Samsung Galaxy S5 device for the '373 Patent in Plano, TX and Makena, IL, respectively. (*Id.* at 70:2-4; 121:14-22; Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8, 16.) TechPats did not, however, perform any field testing using any of Apple's, HTC's, Motorola's, ZTE's, or Microsoft's Accused Products. (Jay Decl., Ex. B (Royer Tr.) at 69:16-19, 97:9-16, 144:12-14; Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8, 16.) And TechPats did not perform any field testing of any Samsung Accused Product for the '236 Patent. (Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8). Further, the field testing related to the '373 Patent was performed using only one base station. (Jay Decl., Ex. D (Cooklev II Tr.) at 30:18-22; Jay Decl., Ex. C (TechPats RKM-103, Royer

---

[5] *See, e.g.,* Jay Decl., Ex. A (Cooklev Op.) at ¶¶ 247-254, 266-268, 278-279, 287-289, 296-298, 305-306, 313-314, 321-322, 332-333, 340-341, 349, 354, 363-365, 377-379, 394-395, 411-412, 423-424, 432-433, 444-446, 454-455, 466-467, 487-489, 502-504, 514-515, 525-526, 550-551, 561-562, 576-577, 587-588, 620-622, 632-633, 647-648, 659-661, 679-680, 682-683, 692-693, 698-699, 705-706, 714-715, 744-745, 754-755, 763-764, 800-805, 816-818, 832-833, 847-848, 889-891, 907-908, 937-939, 952-954, 964-966, 976-978, 989-991, 1001-1003, 1040-1042, 1053-1055, 1068-1070, 1078-1080, 1091-1093, 1107-1109, 1121-1123, 1133-1135, 1145-1147, 1158-1160, and 1169-1170.

[6] *See, e.g.,* Jay Decl., Ex. A (Cooklev Op.) at ¶¶ 254, 268, 289, 298, 349, 365, 379, 446, 489, 504, 622, 661, 682, 683, 805, 818, 891, 939, 954, 966, 978, 991, 1003, 1055, 1070, 1080, 1093, 1109, 1123, 1135, 1147 and 1160.

Dep. Ex. 31) at 16.)  And this single base station was not an Accused Base Station product.  (*Id.*)

## V.    ARGUMENT

### A.    Legal Standard

Federal Rule of Evidence 702 permits expert testimony if (1) the expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or

to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the

testimony is the product of reliable principles and methods; and (4) the expert has reliably

applied the principles and methods to the facts of the case.  *See also Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).  The proponent of expert testimony bears the burden

of establishing by a preponderance of the evidence that the admissibility requirements are met.

*Daubert*, 509 U.S. at 592 n. 10 (citation omitted); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717,

744 (3d Cir. 1994).

The district court must act as a "gatekeeper" to exclude expert testimony that "is

irrelevant or does not result from the application of reliable methodologies or theories to the facts

of the case."  *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).  The

expert must explain how and why they reached the conclusion being proffered and must have as

a basis more than a subjective belief or unsupported speculation.  *In re Paoli*, 35 F.3d at 742;

*General Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (noting failure of plaintiffs to explain

"how and why [they] ... could have extrapolated their opinions"); *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 152 (1999) (an expert must employ "in the courtroom the same level

of intellectual rigor that characterizes the practice of an expert in the relevant field"); *Daubert*,

509 U.S. at 590 (expert's testimony "must be supported by appropriate validation").  A court

may ultimately exclude an expert's opinion if it concludes "that there is simply too great a gap

between the data and the opinion proffered." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d

Cir. 2000) (citing *General Elec. Co.*, 522 U.S. at 146).

Even if an expert's testimony meets the requirements of Federal Rule of Evidence 702, a

court may nonetheless exclude relevant evidence if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Fed. R. Evid. 403; *In re Paoli*, 35 F.3d at 746.

> **B.     Dr. Cooklev's Infringement Opinions Relying On The TechPats Test Reports Are Unreliable And Must Be Excluded.**
>
> > **1.     Dr. Cooklev's opinions of infringement based upon TechPats reports are purely speculative.**

Dr. Cooklev relies heavily on the TechPats tests and resulting reports to conclude that

Defendants' Accused Products practice many limitations of the asserted claims of the '373 and

'236 patents. (*See, supra,* n.5.) These opinions, however, are purely unsupported speculation

because TechPats' testing provides no insight into how the Accused Products actually operate.

(Jay Decl., Ex. B (Royer Tr.) at 103:9-21.) Dr. Cooklev's speculative opinions must therefore be

excluded because they are unreliable. *In re Paoli*, 35 F.3d at 742.

As Mr. Royer freely admitted, TechPats' test equipment allows TechPats to capture *only*

the signals transmitted between a tested device (*e.g.*, a mobile phone) and a cellular base station.

(Royer Tr. at 102:5-103:17.) To do that, the test equipment decodes the waveform signals

transmitted between the tested device and the emulated base station. (*Id.* at 102:14-18.)

Decoding the signal, however, permits the test equipment to see only the final values that were

sent in the messages between the tested device and the emulated base station; the test equipment

is *incapable* of capturing *how* the tested device created the messages. (*Id.* at 103:9-21.) Mr.

Royer testified that the TechPats testing could not, for example, determine whether a tested

device performs the step of "determin[ing] whether there is data stored in the msg3 buffer" as the

asserted claims of the '236 patent require. (*Id.* at 108:5-10.)  The same holds true for a number

of the other limitations of the asserted claims of the '236 and '373 patents as well—limitations

relating to the internal operation of the devices. (*Id.*; *see also, e.g.*, Jay Decl., Ex. E ('236 patent)

at claims 1 ("determining whether the specific message is a random access response message"),

7 ("a message 3 (Msg3) buffer"); Ex. F ('373 patent) at claims 1 ("deciding to perform a

handover"), 12 ("preamble information is used to identify the terminal"), 16 ("measuring a

condition of a downlink physical channel"), 17 ("the measurement report is used to

determine");.)  Because the test equipment allows TechPats to see only the "end result" signal,

TechPats has no insight into *how* the devices actually process and create the signals that the

tested device sends.

Mr. Royer also admitted that to the extent TechPats could have possibly used test

equipment to try and capture the internal workings of a tested device, TechPats made no such

attempt.  (Jay Decl., Ex. B (Royer Tr.) at 104:13-105:21.)  Mr. Royer testified that any tools

available to TechPats that may have possibly allowed an internal trace of a tested device were

not used in creating the emulation test reports. (*Id.* at 104:13-20.)  Indeed, TechPats has no

knowledge of whether any such testing tool would even work with the Accused Products, and it

made no attempt to figure that out, let alone actually use any such testing tool. (*Id.* at 104:13-

105: 21.)

Given that the TechPats tests and resulting reports are silent as to the internal operation of

the tested devices, any conclusion Dr. Cooklev derives from these tests and reports that

Defendants' Accused Products practice a given claim limitation of the '373 or '236 is pure

unsupported speculation.  There is no dispute that the TechPats tests and reports offer no insight

into whether any of the tested devices perform a given claim limitation in the asserted claims.

Thus, it is simply not possible for Dr. Cooklev to reliably opine that the TechPats tests/reports support a conclusion that a claim limitation is met.  Permitting Dr. Cooklev to form his opinions based only on the end result of the emulation tests would essentially eliminate the requirement that an infringement analysis be performed on a limitation-by-limitation basis.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014); *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).  Dr. Cooklev cannot conclude based on the TechPats tests anything more than what the TechPats tests purport to show: that a tested device sent some final signal after some unknown processing.  Because "there is simply too great a gap between the [TechPats reports] and the opinion[s] proffered" (*Oddi*, 234 F.3d at 146), the Court should exclude Dr. Cooklev's opinions that rely on the TechPats reports.

> **2.    Dr. Cooklev's opinions based upon TechPats' field testing are inapplicable to and/or incomplete for Defendants' Accused Products and must be excluded.**

To support his infringement opinions for each Defendant, Dr. Cooklev also relies upon field testing that TechPats performed.  (*See, supra,* n.6.)  TechPats performed this field testing, however, using *only* a single LG G5 device in Plano, TX for the '236 Patent and a single Samsung Galaxy S5 device in Makena, IL for the '373 Patent.  (Jay Decl., Ex. B, Royer Tr. at 70:2-4; 121:14-22; Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8, 16.)  TechPats *did not* perform any field testing using any of Apple's, HTC's, Motorola's, ZTE's or Microsoft's Accused Products.  (Jay Decl., Ex. B (Royer Tr.) at 69:16-19, 97:9-16, 144:12-14; Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8, 16.)  And TechPats *did not* perform any field testing of any of Samsung's Accused Products for the '236 Patent.  (Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 8).  Nor did TechPats perform any field testing of Samsung's Accused Base Station products.  (*Id.* at 16.)  Neither TechPats nor Dr. Cooklev provide any reasoning as to how field testing of a device from one manufacturer

indicates anything about the operation of any device from another manufacturer. Dr. Cooklev should therefore not be permitted to rely on field testing performed with these devices to opine on: (a) infringement of either the '236 or '373 Patents by Apple's, HTC's, Motorola's, ZTE's or Microsoft's Accused Products; (b) infringement of the '236 Patent by Samsung's Accused Products; or (c) infringement of the '373 Patent by Samsung's Accused Base Station products.

Further, with respect to the field testing related to the '373 Patent, TechPats tested only *one* base station, whereas all asserted claims of the '373 Patent require *two* base stations. (Jay Decl., Ex. D (Cooklev II Tr.) at 30:18-22; Jay Decl., Ex. C (TechPats RKM-103, Royer Dep. Ex. 31) at 16.) Moreover, the tested T-Mobile base station is not an Accused Base Station product. (*Id.*) Every independent claim of the '373 Patent requires both a "source base station" and a "target base station." (Jay Decl., Ex. F ('373 Patent) at 10:1-2, 10:41-42, 11:3-5, 12:14-15.) Every independent claim requires that the source base station transmit a "dedicated preamble" to the mobile terminal. (*Id.* at 10:10-16, 10:41-48, 11:3-9, 12:13-23). And every independent claim requires that the dedicated preamble be "determined by the target base station." (*Id.* at 10:17-18, 10:49-50, 11:10-11, 12:24-25). In his rebuttal validity report, Dr. Cooklev relies heavily on the "determined by the target base station" limitation to distinguish the prior art. (Jay Decl., Ex. G (Cooklev Reb.) at ¶¶ 224, 262, 288, 322, 472, 486-491, 520). For example, Dr. Cooklev opines that "it is possible that the source base station in [the] Wang [prior art reference] determines the dedicated preamble." (*Id.* at ¶ 487.) Yet Dr. Cooklev does not make the same criticism of the TechPats field testing in his opening infringement report—███████████████████ ████████████████████████████████ (Jay Decl., Ex. D (Cooklev II Tr.) at 30:20.) Permitting Dr. Cooklev to form his opinions based only on the results from one base station would violate what is often referred to as the "all elements rule." *See Akamai*, 134 S. Ct.

at 2117 (2014); *Lemelson*, 752 F.2d at 1551.  Further, Dr. Cooklev's opinions based on the field

testing are unreliable in view of his inconsistent application of the claim language between the

prior art and the Accused Products. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d

1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both

invalidity and infringement.")

     For these additional reasons, Dr. Cooklev's infringement opinions relying on TechPats

field testing, should be excluded.

### C.    The Probative Value Of Dr. Cooklev's Conclusions Relying On The TechPats Test Reports Are Outweighed By The Danger Of Misleading The Jury.

     Independent of Federal Rule of Evidence 702, the Court also has the discretion to exclude

Dr. Cooklev's opinions based upon the TechPats testing and resulting reports because the danger

of misleading the jury outweighs the probative value of Dr. Cooklev's opinions.  Fed. R. Evid.

403; *In re Paoli*, 35 F.3d at 746.  As described above, TechPats' testing does not permit

TechPats to determine *how* a tested device manipulates and processes data before transmitting

the final signal, and TechPats did not attempt to trace how a device operates internally.  (Jay

Decl., Ex. B (Royer Tr.) at 103:9-21; 104:13-105:21.)  Despite this glaring flaw, the TechPats

reports themselves could appear to a lay jury as highly credible and "official" testing reports.

This creates great risk that a jury will then place significant weight on Dr. Cooklev's opinions

that stem from the TechPats testing and reports.  That is especially true given the

scientific/technical nature of the testing and appearance of the reports.  (*See, e.g.*, Jay Decl., Ex.

H (TechPats RKM-101 Verification of iPad Air 2, Royer Dep. Ex. 3) at 5-6.)  On the flip side of

that, there is no probative value to Dr. Cooklev's purely speculative opinions based upon the

TechPats testing and reports.  The risk of misleading the jury into believing that the TechPats

testing and reports show that claim limitations of the Asserted Claims are actually performed

outweighs any probative value (of which there is none) of Dr. Cooklev's unsubstantiated

opinions.  Thus, Dr. Cooklev's opinions based upon the TechPats test reports should also be

excluded under Federal Rule of Evidence 403.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that Dr. Cooklev's opinions

regarding, or based on, the TechPats emulation and/or field testing be excluded.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| Stephen S. Korniczky | By:  */s/ Philip A. Rovner*_____ |
| Martin R. Bader | Philip A. Rovner (#3215) |
| Ericka J. Schulz | Jonathan A. Choa (#5319) |
| Nam H. Kim | Hercules Plaza, 6th Floor |
| Eric K. Gill | 1313 N. Market Street |
| SHEPPARD, MULLIN, RICHTER & | Wilmington, DE  19801 |
| HAMPTON, LLP | Tel:  (302) 984-6000 |
| 12275 El Camino Real, Suite 200 | provner@potteranderson.com |
| San Diego, CA 92130 | jchoa@potteranderson.com |
| Tel:  (858) 720-8900 | |
| | *Counsel for Defendants HTC Corporation and* |
| | *HTC America, Inc.* |
| | |
| | |
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| Mitchell G. Stockwell | By:  */s/ Bindu A. Palapura*_____ |
| Richard W. Goldstucker | David E. Moore (#3983) |
| Shayne E. O'Reilly | Bindu A. Palapura (#5370) |
| KILPATRICK TOWNSEND AND STOCKTON LLP | Stephanie E. O'Byrne (#4446) |
| 1100 Peachtree Street, Suite 2800 | Hercules Plaza, 6th Floor |
| Atlanta, GA  30309 | 1313 N. Market Street |
| Tel:  (404) 815-6500 | Wilmington, DE  19801 |
| | Tel:  (302) 984-6000 |
| Taylor H. Ludlam | dmoore@potteranderson.com |
| KILPATRICK TOWNSEND AND STOCKTON LLP | bpalapura@potteranderson.com |
| 4208 Six Forks Road, Suite 1400 | sobyrne@potteranderson.com |
| Raleigh, NC  27609 | |
| Tel:  (919) 420-1700 | *Counsel for Defendant Motorola Mobility LLC* |

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Nandan R. Padmanabhan
Micol Small
Martin Ellison
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Tel:  (310) 752-2400

Steven Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel:  (510) 874 1000

POTTER ANDERSON & CORROON LLP

By:  */s/ Bindu A. Palapura*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Counsel for Defendant Apple Inc.*

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel:  (650) 801-5100

John T. McKee
Thomas D. Pease
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Tel:  (212) 849-7000

SHAW KELLER LLP

By:  */s/ Nathan R. Hoeschen*
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew E. Russell (#5382)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE  19801
Tel:  (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Counsel for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*

14

OF COUNSEL:

Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
Tel: (312) 372-2000

RICHARDS, LAYTON & FINGER, P.A.

By:  */s/ Travis S. Hunter*
    Kelly E. Farnan (#4395)
    Travis S. Hunter (#5350)
    920 N. King Street
    Wilmington, Delaware 19801
    Tel: (302) 651-7700
    farnan@rlf.com
    hunter@rlf.com

*Counsel for Defendant ZTE (USA) Inc.*

OF COUNSEL:

Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 896-6000

Joseph A. Micallef
Wonjoo Suh
Anna M. Weinberg
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By:  */s/ Rodger D. Smith, II*
    Rodger D. Smith, II (#3778)
    Jeremy A. Tigan (#5239)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19801
    Tel: (302) 658-9200
    rsmith@mnat.com
    jtigan@mnat.com

*Counsel for Defendants Microsoft Corporation,
Microsoft Mobile Oy, and Microsoft Mobile Inc.
(f/k/a Nokia Inc.)*

Dated: December 8, 2017
Public Version Dated: December 18, 2017
5589742 / (42622/42637)