# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 15–543–JFB–SRF |
| v. | ) |
| | ) **Jury Trial Demanded** |
| HTC CORP. AND HTC AMERICA, INC., | ) |
| | ) **FILED UNDER SEAL** |
| Defendants. | ) |
| | ) |

## EVOLVED WIRELESS'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777–0300
(302) 777–0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349–8500
Facsimile: (612) 339–4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com

aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784–4040
Facsimile: (650) 784–4041
agothing@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980–7400
Facsimile: (212) 980–7499
ahuang@robinskaplan.com

Dated: December 8, 2017      **Counsel For Plaintiff Evolved Wireless, LLC**

# Table of Contents

Page

I.  INTRODUCTION ....................................................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

III.  SUMMARY OF THE ARGUMENT ............................................................... 1

IV.  STATEMENT OF THE FACTS ..................................................................... 2

V.  LEGAL STANDARD ................................................................................... 2

VI.  ARGUMENT .............................................................................................. 4

   A.  Gregory Leonard ............................................................................. 4

      1.  ████████████████████████████████████

      2.  Dr. Leonard's application of the bottom-up approach to calculate a reasonable royalty should be excluded under Rule 702(c) as unreliable because he failed to account for a manufacturer's design-around costs and a reasonable royalty for use of that alternative. ....................................................................6

      3.  Dr. Leonard's opinion that the compensation for a FRAND-encumbered patent must be considered *ex ante* should be excluded under Rule 702(a) because it will confuse the jury..................................................................7

      4.  ████████████████████████████████████

   B.  Rudi Bekkers................................................................................. 10

      1.  Dr. Bekkers' opinions regarding "opportunistic behaviors" should be excluded under Rule 702(a) because they are irrelevant and will not help the jury understand the evidence or determine a fact in issue..........................10

      2.  Dr. Bekkers' opinions criticizing the ETSI IPR Policy should be excluded under Rule 702(a) because they are irrelevant and will not help the jury understand the evidence or determine a fact in issue. ...................................................12

      3.  Dr. Bekkers' opinions regarding patent pledges should be excluded under Rule 702(a) because they are irrelevant and not tied to the facts of this case...............13

      4.  Dr. Bekkers' opinions regarding ETSI's disclosure obligations should be excluded under Rule 702(a) and 702(d) because HTC has conceded its fifth affirmative defense of Waiver through Untimely Disclosure to ETSI and because those opinions are not tied to the facts of this case. .......................................13

   C.  Dr. Apostolos Kakaes ..................................................................... 14

      1.  Dr. Kakaes' opinion regarding non-infringing alternatives should be excluded

under Rule 702(c) and (d) because he fails to demonstrate these alternatives were available. ..............................................................................................................14

    2.    Dr. Kakaes' opinions regarding obviousness of the '373 Patent are unreliable and should be excluded under Rule 702(c) and (d) because he does not provide an articulated motivation to combine the references in his two combinations...........15

VII.    CONCLUSION.......................................................................................................... 17

# Table of Authorities

Page(s)

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 12-cv-00630-LHK, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25,
  2014) ..................................................................................................................5

*Berkeley Inv. Group, Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006)..............................................................................9

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (D. N.J. Mar. 25, 2009) .......................................................11

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
  350 F.3d 316 (3d Cir. 2003)..............................................................................3

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*,
  430 F. Supp. 2d 346 (D. Del. 2006)...................................................................10

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
  2017 U.S. Dist. LEXIS 115373 (E.D. Pa. July 24, 2017)...........................11, 12, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)...............................................................................1, 3, 11

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)..............................................................................3

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988)..........................................................................8

*Grain Processing Corp. v. American Maize-Products Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)....................................................................14, 15

*Honeywell Int'l, Int'l v. Hamilton Sundstrand Corp.*,
  378 F. Supp. 2d 459 (D. Del. 2005)....................................................................8

*In re Innovatio IP Ventures, LLC*,
  C.A. No. 11 C 9308, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sep. 27, 2013) ..........4, 5, 6, 7

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)................................................................................3

*In re Trasylol Prods. Liab. Litig.*,
  2010 U.S. Dist. LEXIS 121442 (S.D. Fla. Oct. 21, 2010).......................................12

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008).....................................................................16, 17

iii

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*,
    315 F. Supp. 2d 589 (D. Del. 2004)..........................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    No. 2:06-cv-348, 2011 U.S. Dist. LEXIS 5422 (E.D. Tex. Jan. 20, 2011) ............................15

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
    306 F. App'x 781 (3d Cir. 2009) ..........................................................................3

*Personal Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017)..........................................................................17

*ResQNet.com, Inc. v. Lansa, Inc*,
    594 F.3d 860 (Fed. Cir. 2010)..........................................................................8

*Scrofani v. Stihl, Inc.*,
    44 F. App'x 559 (3d Cir. 2002) ..........................................................................11

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998)..........................................................................3

## I.      INTRODUCTION

Plaintiff Evolved Wireless, LLC ("Evolved Wireless") submits this brief in support of its

*Daubert* motion to exclude certain opinions by three of Defendants HTC Corp. and HTC

America, Inc.'s ("HTC") proffered expert witnesses.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On June 25, 2015, Evolved Wireless filed this patent infringement lawsuit alleging, *inter*

*alia,* that HTC had infringed various patents declared essential to the LTE communications

standards, including Evolved Wireless's U.S. Patent Nos. 7,809,373 (the "'373 Patent") and

7,881,236 (the "'236 Patent) (together the "Asserted Patents"). D.I. 1. Expert discovery closed

on August 18, 2017. D.I. 150. This Court issued an order regarding page limits for *Daubert*

briefing and entered a stipulation setting briefing deadlines. D.I. 249 and D.I. 268. Per those

orders, Evolved Wireless now moves to exclude certain opinions of HTC's proffered expert

witness.

## III.    SUMMARY OF THE ARGUMENT

1.      Dr. Leonard's opinions as to a fair, reasonable and non-discriminatory

("FRAND") royalty rate for HTC's infringement of the patents-in-suit are fundamentally flawed

and do not comply with the requirements of *Daubert*. In his expert report, Dr. Leonard: (1)

███████████████████████████████████████████████████████████

██████████████████████████████ 2) applies a bottom-up approach that has previously been

rejected in other litigation; (3) improperly adopts an *ex ante* approach while simultaneously

relying on *ex post* facts to calculate a reasonable royalty; and (4)██████████████████████

███████████████████████████████████████████████████. Dr. Leonard's

opinions on these issues should be excluded in their entirety.

2.      Dr. Bekkers offers opinions regarding (1) his criticisms of the ETSI IPR Policy and the alleged opportunistic behaviors of its members; (2) patent pledges; and (3) disclosure obligations under ETSI's IPR Policy. These opinions should be excluded under Rule 702(a) because they have no relationship to the facts at issue in this case and will be unhelpful to the jury.

3.      The following opinions of HTC's technical expert, Dr. Kakaes, should be excluded:

a.      Dr. Kakaes' opinions regarding non-infringing alternatives, and other expert opinions that rely on his non-infringing alternatives, should be excluded under Rule 702(c) and (d) because he fails to demonstrate these alternatives were available at the time of first infringement.

b.      Dr. Kakaes' opinions on motivation to combine should also be excluded under Rule 702(c) and (d) because Dr. Kakaes does not provide an articulated rationale for why a person of ordinary skill would have been motivated to combine or modify the obviousness references.

## IV.    STATEMENT OF THE FACTS

HTC submitted expert reports from seven experts. At issue are aspects of the testimony of Gregory Leonard, Rudi Bekkers, and Apostolos Kakaes. Dr. Leonard offered opinions regarding HTC's damages theories. Dr. Bekkers offered opinions regarding obligations of members to the European Telecommunications Standards Institute ("ETSI"). Dr. Kakaes offered opinions regarding invalidity and non-infringement of the patents-in-suit.

## V.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence imposes a gatekeeping role on the trial court

to "ensur[e] that an expert's testimony *both* rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (emphasis added). The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert may testify if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

This Court has interpreted "Rule 702 as embodying 'three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit.'" *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). Qualifications requires the witness to have "'specialized knowledge' regarding the area of testimony" where the "basis of this specialized knowledge 'can be practical experience as well as academic training and credentials.'" *Elcock*, 233 F.3d at 741 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). An expert's opinion is reliable if it is "based on the 'methods and procedures of science' rather than on 'subject belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Elcock*, 233 F.3d at 745 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 589)). Fit requires "the expert's testimony [to] be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003). Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 789 (3d Cir. 2009).

## VI.   ARGUMENT

### A.   Gregory Leonard

**1.**   ████████████████████████████████████████████████

Dr. Leonard's use of the price paid by Evolved Wireless to LGE for the portfolio of patents that includes the patents-in-suit to calculate an "upper bound" on a FRAND royalty rate is not based on a reliable methodology. Ex. 1 (Leonard Op. Rep. ¶¶ 12, 72-79).[1] Dr. Leonard developed a model to assess this implied royalty rate based on expected licensing revenues and costs that took into account licensed products, licensing terms, worldwide licensable market, licensing expenses, taxes, and a discount rate. Ex. 1 ¶ 75. But the fundamental flaw of Dr. Leonard's model is that he fails to account for the actual terms of the purchase agreement, including ████████████████████████████████████████████ ████████████████

Dr. Leonard also ignores that the court in *Innovatio*, a case where he served as a damages expert, rejected the use of the purchase price of a patent for determining a royalty rate because of a lack of information regarding the true value of the license. *In re Innovatio IP Ventures, LLC*, C.A. No. 11 C 9308, 2013 U.S. Dist. LEXIS 144061, *140-41 (N.D. Ill. Sep. 27, 2013). In *Innovatio*, the court recognized that "the . . . purchase price itself undoubtedly reflects a significant discount for the risk that the patents could not be successfully monetized, including the risk of proceeding in this litigation," but that sufficient information was not presented by the proffering party to determine the actual value of the license. *Id.* Just as the purchase price played "no role in the court's determination" of a FRAND rate in *Innovatio*, it should play no role here,

---

[1] Exhibits are attached to the declaration of Ryan M. Schultz, filed concurrently herewith.

and Dr. Leonard's opinions regarding the purchase price[2] for LGE should be excluded.

Further, in calculating a FRAND royalty rate, Dr. Leonard only considered the purchase price of the patent portfolio from LGE. ████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████ *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 24506, at *33-34 (N.D. Cal. Feb. 25, 2014) (excluding damages calculation based on a cross-license agreement that did not "account for the benefit that Apple received in settling 50 worldwide patent litigation . . . some of which very likely created substantial risk and cost for Apple"). Therefore, Dr. Leonard's calculation of a FRAND royalty rate based on the purchase price—██████████████████████████████

█████████ is not the product of reliable principles or methods and should be excluded.

Dr. Leonard also ignored the risk that the patents-in-suit could be found invalid, unenforceable or non-infringed. ████████████████████████████████████

██████████████████████████████████████ Rather than accounting for these risks, Dr. Leonard passes them off as merely "idiosyncratic" risks. Ex. 1 ¶ 75 n.130. But these are significant risks that would prevent Evolved Wireless from being able to successfully monetize the patents-in-suit as described by the court in *Innovatio*. 2013 U.S. Dist. LEXIS 144061 at *140. Dr. Leonard's flawed methodology is precisely the analysis that the court

_____

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

excluded in *Innovatio*. Because Dr. Leonard failed to quantify these risks, it renders his

calculation of the royalty rate implied by the purchase price of the patents-in-suit unreliable.

Accordingly, his opinion of an expected royalty rate of ████████ for the patents-in-suit should

be excluded.

2.      **Dr. Leonard's application of the bottom-up approach to calculate a
        reasonable royalty should be excluded under Rule 702(c) as unreliable
        because he failed to account for a manufacturer's design-around costs and a
        reasonable royalty for use of that alternative.**

Dr. Leonard's reasonable royalty opinion is based on a "bottom-up approach" that

suggests determining the cost of implementing reasonable alternatives that could have been

adopted into the standard, and dividing that cost by the total number of infringing units. Ex. 3

(Leonard Reb. Rep.) at Section IV.B. This approach is based on Dr. Leonard's opinion that HTC

would not pay more for the patents-in-suit than the amount necessary to adopt an alternative. *Id.*

Based on his bottom-up approach, Dr. Leonard calculated a royalty rate for the patents-in-suit of

████████████████████████████████████████. Ex. 3 ¶ 143. Dr. Leonard's bottom-

up methodology is unsound because it does not account for a manufacturer paying both design-

around costs and a reasonable royalty in order to use the next best alternative technology.

Dr. Leonard's bottom-up approach was rejected in another case for containing the same

flaws found in this case. In *Innovatio*, the court rejected Dr. Leonard's bottom-up method

because "Dr. Leonard did not account for the royalty that the alternatives to Innovatio's patents

might be able to charge." *Innovatio*, 2013 U.S. Dist. LEXIS 144061, at *161-62. As that court

noted, "patented alternatives are able to command a royalty, because it is unlikely that the market

would drive the price of all patented technology to zero." *Id.* at *162. The court concluded that

Dr. Leonard's alternative "top down" approach "best approximates the RAND rate that the

parties to a hypothetical *ex ante* negotiation most likely would have agreed upon . . . before

Innovatio's patents were adopted into the standard." *Id*. at *163.

Though his top-down approach was approved in *Innovatio*, here, Dr. Leonard chose not to calculate the reasonable royalty rate using the top-down approach, despite admitting that both methods would be appropriate to use. Ex. 4 (Leonard Dep. Tr.) at 129:9-20 ("It's often good to have more than one [approach]. You do them both."). Rather, Dr. Leonard elected to adopt the "hard to implement" approach, warned of in *Innovatio*, of "linking the value of a patent to its incremental contribution to a standard," to artificially depress Evolved Wireless's royalty rate. *Innovatio*, 2013 U.S. Dist. LEXIS 144061, at *161.

Here, Dr. Leonard repeated the same mistakes he made in *Innovatio*—mistakes that resulted in that court's rejection of his bottom-up approach. Dr. Leonard opines that: (1) the inherent economic value of the patents-in-suit would have been "close to zero" at the time of the hypothetical negotiation, Ex. 3 ¶ 135; (2) non-infringing alternative technologies would negotiate a license fee of "minimal or zero" to be adopted into the standard, *id*. ¶ 136; and (3) the incremental cost of implementing design-around alternatives to the '236 patent "would have been close to zero." *Id*. ¶ 137.

Dr. Leonard's analysis is identical to the analysis that was rejected as unreliable in *Innovatio*. Because Dr. Leonard's calculation is based on unreliable principles and methods, it will be unhelpful and confusing to the jury. Therefore, Dr. Leonard's bottom-up analysis should be excluded in its entirety.

3.     **Dr. Leonard's opinion that the compensation for a FRAND-encumbered patent must be considered *ex ante* should be excluded under Rule 702(a) because it will confuse the jury.**

Dr. Leonard purports to provide an *ex ante* assessment of the aggregate royalty burden for the patents-in-suit, and criticizes Dr. Putnam's reliance on *ex post* facts. *E.g.*, Ex. 3 ¶ 35. *Ex*

*ante* refers to the time period just before the LTE standard was first adopted. But Dr. Leonard

then supports his opinions with *ex post* events that contradict his *ex ante* opinion. This will

confuse and mislead the jury. In addition, limiting the time frame to the *ex ante* period is

contrary to Federal Circuit precedent. Thus, Dr. Leonard's *ex ante* opinion should be excluded.

District courts may consider "the panoply of events and facts that occurred [after the

hypothetical negotiation] and that could not have been known to or predicted by the

hypothesized negotiators." *ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 872 (Fed. Cir. 2010)

(internal quotations omitted). "Information not available as of [the hypothetical negotiation date]

must necessarily be considered by the factfinder" to ensure the recovery of damages adequate to

compensate the infringement under 35 U.S.C. § 284. *Honeywell Int'l, Int'l v. Hamilton

Sundstrand Corp.*, 378 F. Supp. 2d 459, 464 (D. Del. 2005). The flexibility offered by the "book

of wisdom" approach "prevents the hypothetical negotiation method from determining a

reasonable royalty at a point in time before the patent has proven its worth." *Id*. at 465.

Moreover, "if the hypothetical negotiation could not be informed by post-negotiation

information, then prospective infringers might perceive 'that blatant, blind appropriation of

inventions . . . is the profitable, can't-lose course.'" *Honeywell*, 378 F. Supp. 2d at 465 (quoting

*Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988)). This Court in

*Honeywell* permitted the patent owner to rely on *ex post* facts—such as post-negotiation

projections—to calculate what a reasonable royalty would have been at the time of the

hypothetical negotiation. *Id*. at 466.

In addition, there is no legal authority limiting consideration of a FRAND royalty to only

the *ex ante* period. Dr. Leonard apparently agrees because he relies on *ex post* events to support

his opinion. For example, Dr. Leonard bases his opinion and testimony that Dr. Putnam's

proposed royalty rate would exhaust HTC's profits on *ex post* facts. According to his report, "the average selling price of HTC's accused products sold in the US in 2016 was ███ . . . . [T]he aggregate royalty burden implied by EW's offer is ████ . . . [S]uch an aggregate royalty burden would easily exhaust HTC's profit." Ex. 1 ¶ 70. Furthermore, Dr. Leonard calculates "the average selling price for HTC's phones between November 2014 and November 2026" to further articulate his theory of profit exhaustion. Ex. 3 ¶ 83. These are all *ex post* events.

Dr. Leonard criticizes Dr. Putnam's reliance on *ex post* facts while simultaneously using his own *ex post* calculations to support his opinions. Such inconsistencies will confuse and mislead the jury. As such, Dr. Leonard's criticisms of Dr. Putnam and should be excluded.

**4.**





**B.      Rudi Bekkers**

    **1.      Dr. Bekkers' opinions regarding "opportunistic behaviors" should be excluded under Rule 702(a) because they are irrelevant and will not help the jury understand the evidence or determine a fact in issue.**

Dr. Bekkers opines on possible "opportunistic behaviors" of ETSI members. Ex. 5 (Bekkers Op. Rep.) at Sec. II(E) 18-20, VI(C)-(D) 38-39. Dr. Bekkers purports to opine as to "why some firms seek SEP ownership and strategies to obtain SEP ownership," a claimed "imbalance by 'boycotting' threats" because "[i]mplementers have little countervailing power in standard setting organizations compared to large patent-portfolio owners," and "misuse of

standard essential patents."*Id.* But Dr. Bekkers' opinions regarding possible opportunistic behaviors are not tied to the case here, because Dr. Bekkers offers no opinions that LGE, Evolved Wireless, or any other party to this case have engaged in these opportunistic behaviors. Ex. 6 (Bekkers Dep. Tr.) at 120:9-14. Allowing Dr. Bekkers to opine on the "opportunistic behaviors" could lead the jury to wrongly conclude that Evolved Wireless or LGE has engaged in these behaviors, when Dr. Bekkers offers no proof to support his opinions.

Rule 702 requires expert testimony to "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591-92. Indeed, generalized testimony or observations cannot be used at trial as they render cross-examination ineffective due to their lack of connection to any specific facts or circumstances at issue that a party seeks to undermine. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 450-52 (D. N.J. Mar. 25, 2009) (excluding expert testimony where the strategy involved a general comparison of single arms of clinical trials rather than opining on any particular study offered into evidence); *Scrofani v. Stihl, Inc.*, 44 F. App'x 559, 562 (3d Cir. 2002) (affirming exclusion where expert "employed absolutely no methodology at all" and whose testimony "merely set[ ] forth a series of unsubstantiated opinions" as to a generalized theory of liability without connecting that generalized theory to the facts of the case). Here, Dr. Bekkers' generalized testimony lacks the requisite "fit" because, by his own admission, his conclusions are based on "the full set of participants to 3GPP" rather than "on the individual patent or company level." Ex. 6 at 118:3-120:14.

Factual narratives that are speculative in nature do not assist the factfinder when they are not connected to relevant factual issues. *See Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 2017 U.S. Dist. LEXIS 115373, at 15-18 (E.D. Pa. July 24, 2017) (excluding expert whose

expertise and opinions regarding FDA policies and procedures would not help the jury as to

specific issues in that case regarding drug warnings and a possible breach of express warranties);

*In re Trasylol Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 121442, at \*160-64 (S.D. Fla. Oct. 21,

2010) (excluding testimony that would likely confuse the jury because it was speculative in

nature and devoid of expert regulatory analysis). Like the experts in *Periodontists* and *In re*

*Trasylol*, Dr. Bekkers fails to apply his broad conclusory opinions on "opportunistic behaviors"

to LGE, Evolved Wireless, or any party or fact at issue in this case. Ex. 6 at Sec. II(E) 18-20,

Sec. VI(C)-(D) 38-39. Accordingly, Dr. Bekkers' opinions regarding "opportunistic behaviors"

should be excluded under Rule 702(a).

**2.      Dr. Bekkers' opinions criticizing the ETSI IPR Policy should be excluded under Rule 702(a) because they are irrelevant and will not help the jury understand the evidence or determine a fact in issue.**

Dr. Bekkers was asked by HTC to provide "an expert report on the history and

development of the IPR Policy at ETSI." Ex. 6 at 42:4-8. As a result, Dr. Bekkers offers various

opinions criticizing the ETSI IPR Policy and its formation. Ex. 5 at 33-36. For example, Dr.

Bekkers discusses in his report that there were "calls to improve the IPR Policy," but ETSI

"never clarified the meaning of FRAND." Ex. 5 at 34. Dr. Bekkers also complains that the

"[f]ormal ETSI decision structure regarding its IPR policy leaves top implementers

underrepresented." Ex. 5 at 34. And Dr. Bekkers argues that because a "Special Committee

consensus [is] needed before a proposal can enter formal decision procedure, [ETSI] favors large

IPR holders." Ex. 5 at 36.

Such criticisms of the ETSI IPR Policy—and ETSI itself—are not relevant to this case—

whether the ETSI IPR Policy is fair to all participants, leaves some segments underrepresented,

or could be improved on is entirely irrelevant. The FRAND obligation at issue in this case is

fully contained within the ETSI IPR Policy itself, and Dr. Bekkers criticisms do nothing to

12

clarify or help the jury understand them. Like the expert in *Periodontists*, Dr. Bekkers' expertise and opinions regarding ETSI procedures will not help the jury as to specific issues in this case regarding the ETSI FRAND commitment. Because Dr. Bekkers fails to apply his broad conclusory opinions criticizing the ETSI IPR Policy to any fact at issue in this case, his opinions should be excluded under Rule 702(a).

3.      **Dr. Bekkers' opinions regarding patent pledges should be excluded under Rule 702(a) because they are irrelevant and not tied to the facts of this case.**

Dr. Bekkers discusses multiple "patent pledges" that certain groups of implementers made regarding an ideal cumulative royalty rate for different mobile standards over the years. Ex. 5 at Sec. VII 42-48. These patent pledges are irrelevant because, as Dr. Bekkers admits, LGE did not agree to them, ETSI did not adopt them, and the majority of them apply to standards other than LTE. *Id*. Thus, any opinions regarding patent pledges are irrelevant to any "fact[s] in issue." Fed. R. Evid. 702(a). Such opinions are likely to mislead the jury into thinking there is an industry consensus about a maximum LTE royalty stack that is somehow binding on Evolved Wireless. Because Dr. Bekkers' opinions regarding patent pledges are irrelevant and not tied to the facts of this case, they should be excluded under Rule 702(a).

4.      **Dr. Bekkers' opinions regarding ETSI's disclosure obligations should be excluded under Rule 702(a) and 702(d) because HTC has conceded its fifth affirmative defense of Waiver through Untimely Disclosure to ETSI and because those opinions are not tied to the facts of this case.**

Dr. Bekkers offers various opinions on the parameters of ETSI's disclosure obligations. Ex. 5 at Sec. II(D)-(G) 17-19. But Dr. Bekkers offers no opinions whatsoever on LGE's disclosures or whether LGE complied with its disclosure obligations. Ex. 6 at 124:12-129:9. Regardless of merit, those opinions are no longer relevant: HTC stipulated to the dismissal of HTC's fifth affirmative defense of Waiver through Untimely Disclosure to ETSI. D.I. 264. Thus, any opinions regarding ETSI's disclosure obligations are not remotely related to any "fact[s] in

13

issue." Fed. R. Evid. 702(a). Because Dr. Bekkers' opinions regarding ETSI's disclosure

obligations are irrelevant, not tied to the facts of this case, and likely to confuse the jury, they

should be excluded under Rule 702(a) and 702(b).

### C.     Dr. Apostolos Kakaes

#### 1.     Dr. Kakaes' opinion regarding non-infringing alternatives should be excluded under Rule 702(c) and (d) because he fails to demonstrate these alternatives were available.

Dr. Kakaes offers opinions regarding alleged non-infringing alternatives to the asserted

patents. Ex. 7 (Kakaes Damages Rep.) ¶¶ 120-209; 226-251. These alternatives are relied on by

Dr. Leonard to arrive at an alleged FRAND royalty rate. Ex. 3 ¶¶ 11, 109, 127, 129-31. Dr.

Kakaes' testimony on these non-infringing alternatives is unreliable because he fails to

demonstrate that such alternatives were *available* in any product at the time of infringement.

Defendants bear the burden of proving a non-infringing alternative is (1) acceptable, (2)

available, and (3) non-infringing. *Grain Processing Corp. v. American Maize-Products Co.*, 185

F.3d 1341, 1355 (Fed. Cir. 1999). "When an alleged alternative is not on the market during the

accounting period, a trial court may reasonably infer that it was not available as a noninfringing

substitute at that time." *Id.* at 1353. As such, Dr. Kakaes "has the burden to overcome this

inference by showing that the substitute was available." *Id.* Dr. Kakaes' testimony—and the

opinions relying on these non-infringing alternatives—should be excluded under FRE 702(c) and

(d) because this burden was not overcome to show that the alternatives were available.

Dr. Kakaes opines on three alleged non-infringing alternatives for the '236 Patent and

one alleged non-infringing alternative for the '373 Patent. Ex. 7 ¶¶ 120-209; 226-251. But Dr.

Kakaes does not discuss whether any of these alternatives were available in any product during

the infringement period. *Id.* Indeed, it is undisputed that none of the alternatives have ever been

available in a product, as the alternatives were never incorporated in the LTE standard. As such,

there is a presumption that these alternatives were not "available" as non-infringing substitutes and the Court must "proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." *Grain Processing*, 185 F.3d at 1353; *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, No. 2:06-cv-348, 2011 U.S. Dist. LEXIS 5422, *9-12 (E.D. Tex. Jan. 20, 2011).

Dr. Kakaes provides no opinions on how these alternatives were available during the time of infringement. Rather, he only opines that these alternatives were possibly available because some of them were submitted in proposals during the LTE standard development process. Ex. 7 ¶¶ 120, 173, 226. But expert testimony that is nothing more than "speculation that it might have been theoretically possible for [a defendant] to produce [a] non-infringing alternative" will not suffice and should be excluded. *LaserDynamics*, 2011 U.S. Dist. LEXIS at *12 (citing *Grain Processing*, 185 F.3d at 1353). Indeed, all of the proposals were actually *rejected* during the LTE standard development. Ex. 8 (Kakaes Dep. Tr.) at 227:1-15, 249:21-250:5. Further, Dr. Kakaes admits that one of his alleged alternatives for the '236 Patent was not even proposed during development of the LTE standard. Ex. 5 ¶ 195-202. Thus, Dr. Kakaes' speculation that the alleged non-infringing alternatives were available is contrary to fact and law, rendering his opinions unreliable. As such, his testimony—and all other opinions relying on these non-infringing alternatives[3]—should be excluded.

> **2.      Dr. Kakaes' opinions regarding obviousness of the '373 Patent are unreliable and should be excluded under Rule 702(c) and (d) because he does not provide an articulated motivation to combine the references in his two combinations.**

Dr. Kakaes' testimony on obviousness is similarly unreliable and unhelpful because he

---

[3] Dr. Leonard relies on these alleged alternatives to reach an alleged FRAND royalty rate. *See* Ex. 2 ¶¶ 11, 109, 127, 129-31.

fails to provide an articulated rationale for why a person of ordinary skill would have been independently motivated to modify or combine the references prior to the '373 Patent. In fact, Dr. Kakaes provides no reason *why* a person of ordinary skill *would* modify or combine the references, instead only testifying that a person of ordinary skill *could* modify or combine the references. This testimony is unreliable because it includes no basis to assist the jury in determining *why* the references would have been modified or combined to arrive at the claimed invention of the '373 Patent without looking to the '373 Patent itself to provide the roadmap.

To avoid the "pitfalls of hindsight that belie a determination of obviousness," there "must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). Thus, an expert may not "merely list[] a number of prior art references and then conclude[] with the stock phrase 'to one skilled in the art it would have been obvious.'" *Id.* at 1373. Here, Dr. Kakaes' testimony on obviousness is vague and unreliable because he does not explain why a person of ordinary skill would be motivated to make the combinations. Indeed, Dr. Kakaes provides no factual support as to why one of skill would select these references from all of the possible references, much less which portions of each reference would be utilized in the combination.

Instead, Dr. Kakaes merely lists disclosures from the prior art and summarily concludes that because a person of ordinary skill could combine them, they would be motivated to combine the references. *See* Ex. 9 (Kakaes Op. Rep.) ¶¶ 454-57 ("POSITAs could have incorporated Hu's teachings into Wang's teachings."), 469-72 ("POSITAs could have incorporated Hu's teachings into NEC 106's teachings."). "But that reasoning seems to say no more than that a skilled artisan, once presented with the two references, would have understood that they could be combined. And that is not enough: it does not imply a motivation to pick out those two references and

combine them to arrive at the claimed invention." *Personal Web Techs., LLC v. Apple, Inc.*, 848

F.3d 987, 993-94 (Fed. Cir. 2017). Thus, Dr. Kakaes' vague and unhelpful testimony on

motivation to combine should be excluded. *Innogenetics*, 512 F.3d at 1373 (finding no abuse of

discretion where district court excluded vague testimony on obviousness).

## VII.   CONCLUSION

For the foregoing reasons, the Court should preclude Dr. Leonard from offering any

opinions relating to: (1) the purchase price of the LGE portfolio as a ceiling to a FRAND royalty

rate; (2) his use of the bottom-up approach; (3) the compensation for a FRAND-encumbered

patent must be considered *ex ante*; and (4) ██████████████████████████

██████████  Dr. Leonard fails to satisfy Rule 702 with respect to these opinions.

The Court should exclude Dr. Bekkers' opinions regarding: (1) his criticisms of the ETSI

IPR Policy; (2) the alleged opportunistic behaviors of its members; (3) patent pledges; and (4)

disclosure obligations under ETSI's IPR Policy.

The Court should also exclude Dr. Kakaes' opinion on non-infringing alternatives

to the patents-in-suit, as well as opinions from Microsoft's other experts that rely on these

opinions. Further, the Court should exclude Dr. Kakaes' testimony on obviousness because he

fails to offer an articulated motivation to combine.

Dated: December 8, 2017                    Respectfully submitted,

                                           FARNAN LLP

                                           /s/ Brian E. Farnan
                                           Brian E. Farnan (Bar No. 4089)
                                           Michael J. Farnan (Bar No. 5165)
                                           919 N. Market Street, 12th Floor
                                           Wilmington, Delaware 19801
                                           (302) 777–0300
                                           (302) 777–0301
                                           bfarnan@farnanlaw.com
                                           mfarnan@farnanlaw.com

                                           Christopher K. Larus (admitted *pro hac vice*)
                                           Marla R. Butler (admitted *pro hac vice*)
                                           Ryan M. Schultz (admitted *pro hac vice*)
                                           Andrew D. Hedden (admitted *pro hac vice*)
                                           Benjamen C. Linden (admitted *pro hac vice*)
                                           Ryan E. Dornberger (admitted *pro hac vice*)
                                           Anthony F. Schlehuber (admitted *pro hac vice*)
                                           Rajin S. Olson (admitted *pro hac vice*)
                                           ROBINS KAPLAN LLP
                                           800 LaSalle Avenue, Suite 2800
                                           Minneapolis, Minnesota 55402
                                           Telephone: (612) 349–8500
                                           Facsimile: (612) 339–4181
                                           clarus@robinskaplan.com
                                           mbutler@robinskaplan.com
                                           rschultz@robinskaplan.com
                                           ahedden@robinskaplan.com
                                           blinden@robinskaplan.com
                                           rdornberger@robinskaplan.com
                                           aschlehuber@robinskaplan.com
                                           rolson@robinskaplan.com

                                           Andrea L. Gothing (admitted *pro hac vice*)
                                           ROBINS KAPLAN LLP
                                           2440 W. El Camino Real, Suite 100
                                           Mountain View, CA 94040
                                           Telephone: (650) 784–4040
                                           Facsimile: (650) 784–4041
                                           agothing@robinskaplan.com

                                           Annie Huang (admitted *pro hac vice*)
                                           ROBINS KAPLAN LLP

18

399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980–7400
Facsimile: (212) 980–7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**