**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-543-JFB-SRF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| HTC CORPORATION and | ) | |
| HTC AMERICA, INC., | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendants. | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-544-JFB-SRF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MOTOROLA MOBILITY, | ) | |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-545-JFB-SRF |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. | ) | **JURY TRIAL DEMANDED** |
| and SAMSUNG ELECTRONICS | ) | |
| AMERICA, INC., | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendants. | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 15-546-JFB-SRF |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ZTE (USA) INC., | ) | |
| | ) | **FILED UNDER SEAL** |
| Defendant. | ) | |
| | ) | |

i

**EVOLVED WIRELESS'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. COOKLEV
PURSUANT TO FED. R. EVID. 702 AND 403**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com
aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
agothing@robinskaplan.com

Dated: January 12, 2018

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................................... iv

TABLE OF AUTHORITIES .............................................................................................. v

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.    SUMMARY OF ARGUMENT ........................................................................... 3

IV.     COUNTERSTATEMENT OF FACTS ............................................................... 4

        A.      The Asserted Patents............................................................................... 4

        B.      Dr. Cooklev's Infringement Opinion and Supporting Evidence ........... 5

        C.      TechPats Testing .................................................................................... 6

V.      ARGUMENT ....................................................................................................... 7

        A.      Dr. Cooklev's Opinions are Reliable under Rule 702 ........................... 8

                1.      The underlying emulation and field testing are the products of
                        reliable principles and methods. .................................................. 9

                2.      Dr. Cooklev's reliance on the TechPats emulation testing goes to
                        the weight of his testimony rather than its admissibility. ........... 9

                3.      Defendants' concerns about Dr. Cooklev's reliance on the
                        TechPats field testing goes to the weight of his testimony rather
                        than its admissibility. ................................................................. 12

        B.      Dr. Cooklev's Opinions Do Not Present a Risk of Misleading the Jury
                under Rule 403. ..................................................................................... 15

VI.     CONCLUSION................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC,*
 No. 13-cv-324, 2017 U.S. Dist. LEXIS 130430 (D. Del. Aug. 14, 2017)........................15, 17

*Carter v. Hewitt,*
 617 F.2d 961 (3d Cir. 1980)................................................................................................17

*Daubert v. Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993)......................................................................................................8, 9, 10

*Elcock v. Kmart Corp.,*
 233 F.3d 734 (3d Cir. 2000)..................................................................................................8

*Greatbatch Ltd. v. AVX Corp.,*
 No. 13-723-LPS, 2015 U.S. Dist. LEXIS 182055 (D. Del. Dec. 8, 2015) .......................11, 12

*Heller v. Shaw Indus., Inc.,*
 167 F.3d 146 (3d Cir. 1999)................................................................................................11

*In re TMI Litig.,*
 193 F.3d 613 (3d Cir. 1999)......................................................................................8, 15, 18

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
 315 F. Supp. 2d 589 (D. Del. 2004)......................................................................................8

*Limelight Networks, Inc. v. Akamai Techs., Inc.,*
 134 S. Ct. 2111 (2014)........................................................................................................12

*Oracle Am., Inc. v. Google, Inc.,*
 No. 10-03561, 2012 U.S. Dist. LEXIS 688 (N.D. Cal., Jan. 4, 2012)......................................9

*Spansion, Inc. v. ITC,*
 629 F.3d 1331 (Fed. Cir. 2010)......................................................................................13, 16

*TiVo, Inc. v. Echostar Comm. Corp.,*
 516 F.3d 1290 (Fed. Cir. 2008)..........................................................................................13

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.,*
 No. 10-cv-10578, 2016 U.S. Dist. LEXIS 145316 (E.D. Mich., Oct. 20, 2016)....................11

*Vita-Mix Corp. v. Basic Holding, Inc.,*
 581 F.3d 1317 (Fed. Cir. 2009)..........................................................................................11

*Walden v. Georgia-Pacific Corp.*,
    126 F.3d 506 (3d Cir. 1997)..............................................................................................15, 16

**Rules**

Federal Rule of Evidence 702..............................................................................1, 2, 8, 9, 10, 11

Federal Rule of Evidence 403.......................................................................1, 2, 8, 9, 15, 16, 18

## I.      INTRODUCTION

Evolved Wireless's technical expert, Dr. Todor Cooklev, relies on substantial evidence to show infringement of U.S. Patent Nos. 7,809,373 ("the '373 Patent") and 7,881,236 ("the '236 Patent") by the accused LTE mobile device products, including two categories of tests conducted by an independent third party, TechPats: (1) emulation testing of 26 accused mobile devices across all six Defendants, and (2) live LTE network field testing of two mobile devices. Defendants do not challenge the reliability of the underlying emulation and live LTE network testing. Instead, Defendants challenge Dr. Cooklev's conclusions based on the underlying tests. Defendants' challenge goes to the weight of Dr. Cooklev's opinions and not its admissibility.

Under Federal Rule of Evidence 702, and alternatively, under Rule 403, Defendants move to exclude Dr. Cooklev's reliance on the TechPats emulation testing for just seven claim limitations across the Asserted Patents because Defendants allege that the testing does not "provide any insight into how Defendants' Accused Products operate internally." Defendants grossly mischaracterize both the testing and Dr. Cooklev's infringement opinions for the seven claim limitations allegedly related to the internal operation of the Accused Products. For five of the seven limitations Defendants challenge, Dr. Cooklev does not rely on the TechPats testing at all, rendering Defendants' challenge moot as to those limitations. For the remaining two limitations, Dr. Cooklev properly relies on a variety of evidence demonstrating direct infringement, including the LTE standard, Defendants' own conformance tests, and ███████ ████████████████████████ The TechPats emulation testing, in view of the direct evidence, is further circumstantial evidence to support Dr. Cooklev's opinion that the Accused Products directly infringe when they operate. Defendants' concerns go to the weight of the TechPats testing rather than its admissibility. Such opinions are properly subject to cross-

examination, not exclusion.

Defendants also move to exclude Dr. Cooklev's reliance on the TechPats field testing under Federal Rule of Evidence 702, and alternatively, under Rule 403, because (1) no accused base station product was tested, (2) not all accused mobile device products were tested, and (3) for the '373 Patent, Defendants inaccurately claim that the field testing results show only one base station. First, Dr. Cooklev does not rely on field testing for his conclusion that Defendant Samsung's accused base station products infringe the '373 Patent, again rendering this argument moot. Second, Dr. Cooklev relies on substantial evidence to conclude that the accused mobile device products would perform just as the representative Accused Product used for the '373 Patent field testing would. Moreover, Dr. Cooklev does not rely on the '236 Patent field testing to show what the Accused Products would do, but rather to show that an actual LTE Network in the United States transmits messages that the Accused Products receive, supporting his infringement opinion. Thus, it is irrelevant whether the LTE-compliant device tested for the '236 Patent is an Accused Product. Finally, the field testing for the '373 Patent clearly shows the target base station transmitting a source base station ID, indicating a second base station. Again, Defendants' concerns go to the weight of the evidence, rather than its admissibility. Evolved Wireless respectfully requests this Court deny Defendants' motion.

## II.    NATURE AND STAGE OF PROCEEDINGS

On June 25, 2015, Evolved Wireless filed this patent infringement lawsuit alleging, *inter alia,* that each of the named Defendants infringed multiple claims of two standard-essential patents relating to LTE, or 4G, wireless communication systems—the '373 Patent and the '236 Patent. D.I. 1.[1] Fact Discovery closed on April 10, 2017. D.I. 144. On May 22, 2017, Evolved

---

[1] Docket entries refer to case number 15–cv-542.

Wireless served Dr. Cooklev's opening report on the Accused Products' infringement of the

Asserted Patents. Expert Discovery closed on August 23, 2017. D.I. 163. On December 6, 2017,

the parties completed summary judgment briefing. *E.g.*, D.I. 271. On December 8, 2017,

Defendants jointly submitted their opening brief seeking to exclude testimony by Dr. Cooklev.

D.I. 281. The pretrial conference is set for March 27, 2018 and trial begins on April 23, 2018.

## III.    SUMMARY OF ARGUMENT

Defendants' challenge to Dr. Cooklev's reliance on TechPats testing is either irrelevant or

goes to the weight rather than the admissibility of Dr. Cooklev's opinions. Defendants first

challenge Dr. Cooklev's reliance on emulation testing by third party TechPats on the basis that

the test results do not show certain claim limitations alleged to relate to the internal functionality

of the Accused Products. Of the seven claim limitations to which Defendants take issue, Dr.

Cooklev relies on TechPats emulation testing for only two of them. Thus Defendants' challenge

is largely irrelevant and moot. For the remaining two claim limitations—and any others

subsequently raised by Defendants—Dr. Cooklev's ultimate infringement opinions are based on

evidence from multiple sources including the LTE Standard, Defendants' own LTE conformance

tests, and ████████████████████████████. The TechPats emulation testing

confirms Dr. Cooklev's analysis of these other sources of evidence. To the extent Dr. Cooklev

relies on TechPats emulation testing for these limitations, it goes to the weight of Dr. Cooklev's

testimony and not its admissibility.

Defendants next challenge Dr. Cooklev's reliance on Tech Pats field testing on the basis

that the testing did not include products from all of the Defendants and did not include an

accused base station product for Defendant Samsung. But there is no evidence at all that any

accused mobile device product would operate differently based on the base station used in an

LTE network, let alone that a Samsung base station is necessary for the accused mobile device products to infringe. To the contrary, Dr. Cooklev opines that all of the accused mobile device products operating with a base station configured to use contention free handovers would operate the same and infringe. *See* D.I. 282, Ex. A (Cooklev Op. Rep.) ¶¶ 926-40. Moreover, the '373 Patent field testing, which used a Samsung Accused Product, is at least evidence of infringement by Defendant Samsung's mobile device products. For untested products from other Defendants, the field testing for the '373 and '236 Patents, combined with Dr. Cooklev's unchallenged opinion that the Accused Products across all Defendants operate the same for the purposes of assessing infringement, is circumstantial evidence of infringement by the Accused Products in a live LTE Network environment.

## IV.   COUNTERSTATEMENT OF FACTS

### A.   The Asserted Patents

As discussed in more detail in Evolved Wireless's summary judgment briefs, the inventions claimed in the '373 Patent and '236 Patent are directed, respectively, to improved handovers ("contention free handovers") of a mobile device between two base stations and an improved random access procedure between mobile devices and a base station used in an LTE network. *See, e.g.*, D.I. 224 at 6-10; D.I. 244 at 4-6, 9-10. Mobile devices and base stations engaged in handovers or random access procedures generate, send, and receive signals. *See* D.I. 282, Ex. C, H (TechPats Field Testing and Emulation Testing Reports). The asserted claims read on the transmission and reception of these signals. For example, asserted claim 15 of the '373 Patent recites, "receiving access information from a source base station . . . ." D.I. 282, Ex. E ('373 Patent) at 11:3-5. Claim 1 of the '236 Patent recites, "receiving an uplink grant (UL Grant) signal from a base station . . . ." D.I. 282, Ex. F ('236 Patent) at 16:52-53. A number of other limitations from the asserted claims are also related to signals exchanged between a mobile

device and base station. *See, e.g.*, D.I. 282, Ex. E at 10:10-13 ("transmitting, from the source

base station to the terminal . . . ."), 11:12-15 ("performing the random access procedure with the

target base station . . . ."), 12:13-19 ("a radio protocol adapted to receive access information from

a source base station . . . and to perform a random access procedure with the target base

station"); Ex. F at 16:65-17:3 ("transmitting new data to the base station . . . ."), 17:31-32 ("a

reception module adapted to receive an uplink grant (UL Grant) signal from a base station"),

17:33-35 ("a transmission module adapted to transmit data to the base station . . . ."). Emulation

testing of a simulated LTE network and field testing of a live LTE network may be used to

capture and record these signals. *See* D.I. 282, Ex. C (TechPats Field Testing Report) and H

(TechPats Emulation Testing Reports).

## B.    Dr. Cooklev's Infringement Opinion and Supporting Evidence

Dr. Cooklev relies on multiple sources of evidence to support his opinion that the

Accused Products infringe the asserted claims: the LTE Standard, Defendants' own LTE

conformance testing, ███████████████████████████, and TechPats emulation and

field testing. *See* D.I. 282, Ex. A ¶¶ 223-54. Dr. Cooklev opined that all of this evidence

consistently demonstrates infringement of the asserted claims. *See* D.I. 282, Ex. A ¶¶ 223-54. Dr.

Cooklev found no differences between the Accused Products for the purposes of assessing

infringement. *Id*. Defendants' experts raised no differences between Accused Products for the

purposes of assessing infringement.[2] *See* Ex. 1 (Bims Dep. Tr.) at 106:9-107:18; Ex. 2 (Kakaes

Dep. Tr.) at 271:11-275:10. Similarly, Dr. Cooklev found no differences in infringement by

mobile devices based upon the type of base stations used in a given network. *See* D.I. 282, Ex. A

¶¶ 223-54. Defendants do not challenge the reliability of Dr. Cooklev's analysis of the LTE

---

[2] Exhibits are attached to the declaration of Ryan M. Schultz, filed concurrently herewith.

standard, of the conformance tests, ███████████ or indeed of any evidence Dr. Cooklev

relies upon other than the TechPats testing.

### C.     TechPats Testing

#### a.     TechPats Emulation Testing

To confirm his infringement opinion for certain claim limitations, Dr. Cooklev directed

an independent testing firm, TechPats, to conduct emulation testing on a representative sample of

26 Accused Products across all six Defendants. D.I. 282, Ex. A ¶ 248.[3] To analyze infringement

of the '373 Patent, TechPats emulated two base station cells performing a contention free

handover of the representative Accused Products tested. D.I. 282, Ex. H at 23; D.I. 282, Ex. A

¶ 937. Based on these results, Dr. Cooklev opined that the representative Accused Products

performed the reception and transmission steps of the '373 Patent. *E.g.*, D.I. 282, Ex. A ¶¶ 952-

53, 1001-02. Dr. Cooklev further opined that the signals transmitted and received during the

TechPats testing supported his infringement opinion that the Accused Products infringe when

operating. *E.g.*, D.I. 282, Ex. A ¶¶ 975-76. To analyze infringement of the '236 Patent, TechPats

emulated a mobile device performing a random access procedure with a base station. D.I. 282,

Ex. H at 7; D.I. 282, Ex. A ¶ 363. Based on these results, Dr. Cooklev opined that the accused

---

[3] Defendants misrepresent the record regarding Dr. Cooklev's involvement with the TechPats testing. *See* D.I. 281 at 5 n.4. As stated in his report, Dr. Cooklev assisted in selecting the sample of 26 different LTE-Compliant devices that would be subject to testing. D.I. 282, Ex. A ¶ 248; D.I. 282, Ex. A at Ex. 5. Dr. Cooklev traveled to the TechPats laboratory in Ottawa, Ontario and personally participated in the emulation testing. *Id.* ¶ 248. Dr. Cooklev also reviewed the methodology TechPats used in its testing and confirmed it is consistent with the technical methodology typically used in the field of wireless communications. *Id.* ¶ 249. Dr. Cooklev confirmed the emulation testing followed standard scientific principles. D.I. 282, Ex. A ¶¶ 247-254. At his deposition, Dr. Cooklev testified that he "participated in [the] discussions" regarding the decision to conduct field testing and emulation testing. Ex. 3 (Cooklev Dep. Tr.) at 508:18-509:2. Dr. Cooklev also testified that he "reviewed the test plan of TechPats and . . . also participated in discussions with TechPats," and that he "also reviewed their facility, verified the procedure that they are using." *Id.* at 511:19-23. Mr. Royer testified similarly. D.I. 282, Ex. B (Royer Dep. Tr.) at 73:7-12, 74:14-75:2.

mobile devices performed certain reception and transmission steps of the '236 Patent. *E.g.*, D.I. 282, Ex. A ¶¶ 377-78, 411-12.

### b.      TechPats Field Testing

Along with the emulation testing, TechPats collected real-world data and confirmed that an active LTE cell in Makena, Illinois operated in the same manner as the '373 emulation tests, and that an active LTE cell in Plano, Texas operated in the same manner as the '236 emulation tests. D.I. 282, Ex. A ¶ 978; Ex. 9 at 8-10, 16-21. Dr. Cooklev did not participate in the TechPats field testing because TechPats had already collected the field data as part of TechPats' regular activities. D.I. 282, Ex. B (Royer Dep. Tr.) at 70:20-71:11. Dr. Cooklev reviewed the testing plans and testing procedures for the TechPats field testing to confirm it was consistent with the technical methodology typically used in the field of wireless communications. D.I. 282, Ex. A ¶ 254.

Defendants take no issue with the scientific principles behind the TechPats testing. Defendants do not dispute the reputation or reliability of TechPats as a third party for performing testing on wireless devices like the Accused Products. Defendants do not dispute the sound scientific methodology used in the emulation testing or the field testing. Defendants do not dispute Dr. Cooklev's opinion that the results of the emulation testing across the 26 different tested devices were the same, or that the field testing results were consistent with the emulation testing results.

## V.      ARGUMENT

The TechPats emulation and field testing are the products of reliable methodology and should not be excluded. Defendants do not challenge any of the methods used to conduct the tests. Nor do Defendants challenge the reliability of the data collected from the tests. Defendants challenge only the conclusions Dr. Cooklev draws from the TechPats reports as "speculative"

under Rule 702 and more prejudicial than probative under Rule 403. D.I. 281 at 8, 12.

Defendants, however, mischaracterize Dr. Cooklev's reliance on the testing for his infringement

opinions, and their criticisms go to the weight afforded Dr. Cooklev's opinions rather than its

admissibility.

A.      **Dr. Cooklev's Opinions are Reliable under Rule 702**

Dr. Cooklev's infringement opinions—to the extent they are based on the results of

TechPats emulation and field testing—are reliable under Rule 702, and Defendants' concerns go

to the weight rather than the admissibility of Dr. Cooklev's opinions. Federal Rule of Evidence

702 imposes a gatekeeping role on the trial court to "ensur[e] that an expert's testimony both

rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 597 (1993). An expert may testify if "the testimony is based on

sufficient facts or data," "the testimony is the product of reliable principles and methods," and

"the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid.

702(b)-(d).

This Court has interpreted "Rule 702 as embodying 'three distinct substantive restrictions

on the admission of expert testimony: qualifications, reliability, and fit.'" *Izumi Prods. Co. v.*

*Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004) (quoting *Elcock v.*

*Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). "So long as the expert's testimony rests upon

'good grounds,' it should be tested by the adversary process—competing expert testimony and

active cross-examination—rather than excluded from jurors['] scrutiny for fear that they will not

grasp its complexities or satisfactor[il]y weigh its inadequacies." *In re TMI Litig.*, 193 F.3d 613,

692 (3d Cir. 1999) (citations omitted).

1.      **The underlying emulation and field testing are the products of reliable principles and methods.**

The underlying emulation and field testing are the products of reliable principles and methods. Dr. Cooklev reviewed the methodology TechPats used in its emulation testing and confirmed it is consistent with the technical methodology typically used in the field of wireless communications. D.I. 282, Ex. A ¶ 249. Indeed, Defendants rely on similar tests for their own conformance testing of the Accused Products. D.I. 282, Ex. A ¶¶ 227-28; Ex. 2 at 322:9-15. Dr. Cooklev reviewed the testing plans and testing procedures for the TechPats field testing to confirm it was consistent with the technical methodology typically used in the field of wireless communications. D.I. 282, Ex. A ¶ 254. Of note, courts have upheld similar emulation and performance testing results under Fed. R. Evid. 702, *Daubert*, and Fed. R. Evid. 403. *See Oracle Am., Inc. v. Google, Inc.*, No. 10-03561, 2012 U.S. Dist. LEXIS 688, at *7 (N.D. Cal., Jan. 4, 2012). There is no dispute that the underlying emulation and field testing are the products of reliable principles and methods, and Defendants have not contended otherwise.

2.      **Dr. Cooklev's reliance on the TechPats emulation testing goes to the weight of his testimony rather than its admissibility.**

Dr. Cooklev's reliance on the TechPats emulation testing—to the extent Dr. Cooklev relies on it at all in conjunction with other evidence—goes to the weight of Dr. Cooklev's opinion and not its inadmissibility. Defendants allege that the TechPats emulation testing does not show the "internal operation" of the mobile devices, and therefore Dr. Cooklev's reliance on emulation testing for his infringement opinion amounts to "speculation." D.I. 281 at 9. Defendants identify seven claim limitations across the two Asserted Patents that they contend are directed to the internal operation of a mobile device and therefore indicate that Dr. Cooklev's infringement opinions as to these limitations are "speculation." *See* D.I. 281 at 9. Dr. Cooklev's infringement opinion, however, either does not rely on TechPats emulation testing for these

limitations, or does so in conjunction with other evidence such as the LTE Standard, LTE

conformance tests, ███████████  *See* D.I. 282, Ex. A ¶¶ 394, 525.

As an initial matter, Dr. Cooklev does not rely at all on the TechPats emulation testing for

five of the seven claim limitations raised by Defendants in their *Daubert* briefing. Defendants

allege that the following seven claim limitations relate to the "internal operations of devices" and

therefore not testable by the TechPats emulation test: '373 Patent claim 1 ("deciding to perform a

handover"), claim 12 ("preamble information is used to identify the terminal"), claim 16

("measuring a condition of a downlink physical channel"), and claim 17 ("the measurement

report is used to determine") and '236 Patent claims 1 ("determining whether there is data stored

in the msg3 buffer" and "determining whether the specific message is a random access response

message") and 7 ("a message 3 (Msg3) buffer"). For these seven limitations, Dr. Cooklev relies

on emulation testing as evidence of infringement for only two of them—both for the '236 Patent

("determining whether the specific message is a random access response message" and "a

message 3 (Msg3) buffer")." D.I. 281 at 9; *see also* D.I. 282, Ex. A ¶¶ 394, 525. Thus with

respect to the remaining five limitations, Defendants' motion is irrelevant.

For the remaining two claim limitations at issue—and all other claim limitations for

which Dr. Cooklev relies on TechPats emulation testing—Dr. Cooklev's infringement opinion

meets the requirements of Rule 702. First, as indicated above, a number of claim limitations from

the asserted claims relate to signals that are transmitted or received by a mobile device or base

station. *See*, *e.g.*, D.I. 282, Ex. E at 10:10-13, 11:3-5, 11:12-15, 12:13-19; D.I. 282, Ex. F at

16:52-53, 16:65-17:3, 17:31-32, 17:33-35. For these claim limitations, Dr. Cooklev appropriately

relied on the TechPats testing as direct evidence to support his infringement opinions. *See*, *e.g.*,

D.I. 282, Ex. A ¶¶ 377-78, 411-12, 952-53, 1001-02. For claim limitations that are alleged to

relate to the internal operation of the Accused Products only, Dr. Cooklev first analyzed the LTE

standard, Defendants' LTE conformance tests, and ████████████████████████

████. *See, e.g.*, D.I. 282, Ex. A ¶¶ 389-93, 518-24. In view of that analysis, Dr. Cooklev then

explained that the TechPats emulation testing supported his infringement opinions. *See, e.g.*, D.I.

282, Ex. A ¶¶ 394, 525. At most, Dr. Cooklev concludes that because the tested products

produce certain outputs, based on his other analyses, the mobile devices must have performed the

internal steps that the LTE standard, conformance testing, ████████████ all indicated they

would. *See* D.I. 282, Ex. A ¶¶ 394, 525. This is perfectly acceptable under Federal Circuit

precedent. Dr. Cooklev's "testimony need not establish the ultimate question of infringement to

be relevant and admissible . . . . direct infringement can be proven by circumstantial evidence."

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 U.S. Dist. LEXIS

145316, at *10-11 (E.D. Mich., Oct. 20, 2016) (citing *Vita-Mix Corp. v. Basic Holding, Inc.*, 581

F.3d 1317, 1326 (Fed. Cir. 2009)) (internal quotations omitted).

Defendants' arguments rest on an unduly strict standard far beyond the law's

requirements. "The standard under Rule 702 is not whether an expert's testimony has 'proven[,]'

to an optimal degree, his or her conclusion; it is whether there are "good grounds" for the

expert's conclusion." *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2015 U.S. Dist. LEXIS

182055, at *9 (D. Del. Dec. 8, 2015) (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d

Cir. 1999)). In *Greatbatch*, the court denied the Defendant's motion to exclude the plaintiff

expert's infringement theory where the expert's conclusion was based on "*inter alia*, analysis

performed by an independent laboratory, analysis of cross-sections of the accused parts, and [his]

knowledge of the state of the art." *Id*. Similarly, the court denied motions to exclude expert

testimony regarding testing results (micrographs of destructive cut physical analyses) because

the Defendant's arguments went to the weight of the testimony rather than its admissibility. *Id.*, at *12-13. Likewise, Defendants' attacks on Dr. Cooklev's reliance on the TechPats reports go to the weight of his testimony rather than its admissibility, because—as in *Greatbatch*—Dr. Cooklev relies on a panoply of reliable evidence, including the TechPats testing.[4] D.I. 282, Ex. A ¶¶ 223-54. Thus, Dr. Cooklev's opinion is not "purely unsupported speculation," but rather is grounded in emulation testing Defendants themselves use to test the Accused Products.

> ### 3.      Defendants' concerns about Dr. Cooklev's reliance on the TechPats field testing goes to the weight of his testimony rather than its admissibility.

For Dr. Cooklev's conclusions based on the TechPats field testing, Defendants' arguments again fail to demonstrate that exclusion is the remedy for their concerns rather than cross-examination. For the '373 Patent, Dr. Cooklev reliably opines that the field tested Accused Product is representative of the other Accused Products, and therefore the results of the field test are probative of the operation of other Accused Products in a live LTE network environment. *See, e.g.*, D.I. 282, Ex. A ¶ 954. For the '236 Patent, Dr. Cooklev only relies on the field testing to show how the LTE network functions—not how the Accused Products themselves operate— and it is thus irrelevant whether the tested device is an Accused Product, so long as it is LTE-compliant.

---

[4] Defendants' tortured argument that *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014), somehow prohibits evidence that does not conclusively prove all claim limitations grossly misrepresents *Limelight*. D.I. 281 at 10. *Limelight* does not limit the evidence a plaintiff may rely on to prove infringement; it holds instead that a "patent is not infringed unless all the steps are carried out." *Id.* Neither Evolved Wireless nor Dr. Cooklev has ever disputed this legal requirement. In contrast, Dr. Cooklev relies on the TechPats testing, inter alia, in forming his conclusion that all of the steps of the Asserted Patents are carried out. Dr. Cooklev's report addresses all limitations he will present on at trial and the multiple other evidentiary bases he relies on for each limitation—none of which Defendants challenge. *See* D.I. 282, Ex. A. *Limelight* is inapposite here, and is likewise inapposite with respect to the TechPats field testing, discussed further below.

### a.     Field testing for the '373 Patent

Though Defendants do not challenge the methodology used for the field tests, Defendants do mischaracterize Dr. Cooklev's testimony regarding the TechPats field testing for the '373 Patent. The TechPats field testing report to which Dr. Cooklev was referring was not limited to one base station. *See* D.I. 282, Ex. C at 19 (noting different "PHYSICAL_CELL_ID" values for the two base stations). With the proper context, Dr. Cooklev testified that the field test involved only one *target* base station. *See* D.I. 282, Ex. C at 19; *see also generally id.* at 16-21 (indicating both a target base station and a source base station); D.I. 282, Ex. D at 30:20. This is consistent with Dr. Cooklev's analysis of the prior art and with the '373 claims, and contradicts Defendants' suggestion that the field testing for the '373 Patent is incomplete.

Defendants are also incorrect to assume that simply because the '373 Patent field testing did not test all Accused Products, it does not apply to them. D.I. 281 at 10-11. "[T]here is nothing improper about an expert testifying in detail about a particular device and then stating that the same analysis applies to other allegedly infringing devices that operate similarly, without discussing each type of device in detail." *TiVo, Inc. v. Echostar Comm. Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008). Representative products may be used when an expert offers "specific and substantial evidence as to why those Accused Products not selected . . . can reasonably be expected to behave like the representative Accused Products." *See Spansion, Inc. v. ITC*, 629 F.3d 1331, 1350 (Fed. Cir. 2010).

Dr. Cooklev's use of the '373 Patent field testing of a representative Accused Product as evidence of infringement as to all accused mobile device products is reliable under *Spansion*. It is undisputed that the Accused Products and tested products are LTE compliant. *See* D.I. 282, Ex. A ¶ 225. Moreover, Evolved contends that the asserted claims are essential to the LTE standard, and accordingly devices that are compliant with the LTE standard infringe the asserted

13

claims. D.I. 282, Ex. A ¶ 224. Dr. Cooklev relies on substantial evidence in the record to show

that all of the Accused Products implement the LTE standard in the same way, both internally

and externally, as noted above. *See, e.g.*, D.I. 282, Ex. A ¶¶ 223-53. And Defendants—in the

volumes of expert discovery and briefing—have not identified any differences between the

Accused Products relevant to assessing infringement of either of Evolved's Asserted Patents. *See*

Ex. 1 at 106:9-107:18; Ex. 2 at 271:11-275:10. Indeed, there is no evidence in the record that the

tested devices would operate any differently than the Accused Products with respect to the tested

functionalities.

> **b.** **Field testing for the '236 Patent**

Defendants' misleading arguments about the '236 field testing fall flat upon a closer

examination of Dr. Cooklev's infringement opinion. Dr. Cooklev does not rely on the '236 field

testing to show an Accused Product directly infringing. Instead, he relies on it as circumstantial

evidence showing how the LTE network functions. *See, e.g.*, D.I. 282, Ex. A ¶ 379. Indeed, in

tests for both patents, the TechPats field testing reports show reception and transmission steps on

a live LTE network in the United States. Importantly, these tests demonstrate that base stations

operating on a live LTE network function as necessary for mobile products to infringe, including

by sending certain messages to the Accused Products. The TechPats field testing is thus

probative of how LTE networks function, and it is circumstantial evidence supporting

infringement of mobile phone claim limitations requiring the LTE network to operate in a certain

way.

Because it is "the product of reliable principles and methods,'" Dr. Cooklev's reliance on

the TechPats field testing "should be tested by the adversary process—competing expert

testimony and active cross-examination—rather than excluded from jurors['] scrutiny for fear

that they will not grasp its complexities or satisfactor[il]y weigh its inadequacies." *In re TMI*

*Litig.*, 193 F.3d 613, 692 (3d Cir. 1999) (citations omitted). The jury should be allowed to consider evidence regarding how LTE devices operate on an LTE network because such evidence is probative of infringement of the Asserted Patents. Defendants are free to challenge Dr. Cooklev's opinion on cross-examination.

B.   **Dr. Cooklev's Opinions Do Not Present a Risk of Misleading the Jury under Rule 403.**

The probative value of Dr. Cooklev's infringement opinions—to the extent they rely on TechPats testing—substantially outweighs risk of misleading the jury. Evidence may only be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[A] district court cannot exclude a scientific technique as too confusing and overwhelming simply based on its conclusion that scientific techniques by their very nature confuse and overwhelm the jury." *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, No. 13-cv-324, 2017 U.S. Dist. LEXIS 130430, at *8 (D. Del. Aug. 14, 2017) (quoting *Paoli*, 35 F.3d at 746). "Instead, in order to exclude expert evidence under Rule 403, there 'must be something about the particular [] technique such as its posture of mythic infallibility that makes it especially overwhelming.'" *Id.*

As an initial matter, Defendants' challenge under Rule 403 is premature. "Rule 403 is rarely appropriate as a basis of *pre-trial* exclusion, because a judge cannot ascertain potential relevance until that judge has a virtual surrogate for a trial record." *Paoli*, 35 F.3d at 747 (emphasis in original) (citing *Paoli 1*). Thus, "Rule 403 is a trial-oriented rule," and "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." *Walden v. Georgia-Pacific Corp.*, 126

F.3d 506, 518 n.10 (3d Cir. 1997). There is no "virtual surrogate for a trial record" to be examined here, and Evolved "has not had a chance to develop the record" at trial. *Paoli*, 35 F.3d at 747 (emphasis in original) (citing *Paoli 1*); *Walden*, 126 F.3d at 518 n.10. This Court can and should deny Defendants' Rule 403 challenge on this basis alone.

Even if Defendants' Rule 403 challenge was not premature, it would fail to merit exclusion because the TechPats testing's probative value far outweighs any scintilla of unfair prejudice to Defendants. The TechPats emulation testing is probative in two important ways. First, it is direct evidence of infringement of the 26 representative Accused Products tested. Second, it confirms Dr. Cooklev's opinion that all Accused Products infringe the claims in the same way. This supports Dr. Cooklev's conclusion that evidence probative of infringement for some of the Accused Products is applicable to all of the Accused Products. *See Spansion*, 629 F.3d at 1350 (affirming use of representative products where expert "offered specific and substantial evidence as to why those accused products not selected . . . can reasonably be expected to behave like the representative accused products."). Moreover, by producing substantively identical results, the TechPats testing itself is part of the "specific and substantial evidence" Dr. Cooklev relies on to opine that all Accused Products "can reasonably be expected to behave like the representative accused products." *Id*.

The TechPats field testing is probative of how any of the accused mobile devices would operate in a live LTE Network. Dr. Cooklev opined that for the purposes of infringement, all of the accused mobile devices operated in the same way. D.I. 282, Ex. A ¶¶ 223-53. This was supported by his analysis of the LTE Standard, Defendants' own LTE conformance tests, source ██████████████████████████████, and the TechPats emulation testing. D.I. 282, Ex. A ¶¶ 223-53. Defendants identified no differences for infringement in the volumes of expert

discovery and summary judgment briefing in this case. Because there is no difference between how the accused mobile devices operate for the purposes of infringement, the field testing of a representative mobile device product in a live LTE Network environment is probative of the operation of any accused mobile device.[5]

The test results from the TechPats emulation and field testing are not unfair or a danger to "misleading the jury." "Virtually all evidence is prejudicial or it isn't material." *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980) (citation omitted). The inquiry is whether the prejudice is "unfair." *Id*. Setting aside Defendants' false notion that the TechPats emulation testing does not show how the Accused Products operate internally, as addressed above, Defendants' only alleged unfair prejudice results from a concern that "the TechPats reports themselves could appear to a lay jury as highly credible and 'official' testing reports," especially "given the scientific/technical nature of the testing and appearance of the reports," D.I. 281 at 12. This criticism does not demonstrate unfair prejudice. Courts in Delaware do not "exclude a scientific technique as too confusing and overwhelming" just because "scientific techniques by their very nature confuse and overwhelm the jury." *Am. Cruise Lines, Inc*, 2017 U.S. Dist. LEXIS 130430, at *8 (quoting *Paoli*, 35 F.3d at 746). Moreover, Defendants' criticism of the "scientific/technical nature of the testing and appearance of the reports" is undermined by the fact that Defendants have not challenged the underlying methodology used by TechPats to conduct the emulation and field testing. Nor do Defendants dispute that emulation testing and field testing, like that performed by TechPats, is commonly used in the industry. Indeed,

---

[5] Defendants take issue with the use of the field testing to support Dr. Cooklev's infringement opinions on the Samsung base station products. Yet Dr. Cooklev *does not rely* on the TechPats field testing as evidence related to the base station claims in the '373 Patent (claims 1-5, 7-10, 12, and 13), and thus Defendants' arguments as to the '373 Patent base station claims are moot.

Defendants themselves conduct similar conformance tests on their own devices. D.I. 282, Ex. A ¶¶ 227-28; Ex. 2 at 322:9-15.

These reports "should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors['] scrutiny for fear that they will not grasp its complexities or satisfactory[il]y weigh its inadequacies." *In re TMI Litig.*, 193 F.3d 613, 692 (3d Cir. 1999) (citations omitted). For a court to exclude scientific evidence under Rule 403, "there must be something *particularly* confusing about the scientific evidence at issue," *Paoli*, 35 F.3d at 747 (emphasis original), and Defendants have identified no such "particularly confusing" aspect to the TechPats reports. There is no unfair prejudice or danger of misleading the jury.

## VI.   CONCLUSION

For the reasons stated above, Defendants' motion to exclude testimony of Dr. Cooklev should be denied.

Dated: January 12, 2018

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
John K. Harting (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
jharting@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com
aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
agothing@robinskaplan.com

19

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**