IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | C.A. No. 15-542-JFB-SRF |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HTC CORPORATION and HTC AMERICA, INC.,<br><br>Defendants. | C.A. No. 15-543-JFB-SRF |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY,<br><br>Defendants. | C.A. No. 15-544-JFB-SRF |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | C.A. No. 15-545-JFB-SRF |

| | |
|---|---|
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ZTE CORPORATION, ZTE (USA) INC., and ZTE SOLUTIONS INC.,<br><br>Defendants. | C.A. No. 15-546-JFB-SRF |
| EVOLVED WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, MICROSOFT MOBILE OY and NOKIA INC.,<br><br>Defendants. | C.A. No. 15-547-JFB-SRF |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE TESTIMONY OF DR. PUTNAM PURSUANT TO FED. R. EVID. 702**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

OF COUNSEL:

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

POTTER ANDERSON & CORROON LLP
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Joseph E. Lasher
Nandan R. Padmanabhan
Micol Small
Martin Ellison

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Joseph A. Micallef
Wonjoo Suh
Anna M. Weinberg
Scott M. Border
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
*Attorneys for Defendants Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc. (now known as Microsoft Mobile Inc.)*

BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850 Santa Monica, CA 90401 (310) 752-2400

Steve Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000
*Attorneys for Defendant Apple Inc.*

POTTER ANDERSON & CORROON LLP
Phillip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

OF COUNSEL:

Stephen S. Korniczky
Martin R. Baker
Ericka Schulz
NamH.Kim
Kayla E. Page
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900
*Attorneys for Defendants HTC Corporation and HTC America, Inc.*

POTTER ANDERSON & CORROON LLP
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

OF COUNSEL:

Mitchell G. Stockwell
Richard F. Goldstucker
KILPATRICK TOWNSEND AND STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

Taylor H. Ludlam
KILPATRICK TOWNSEND AND STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700
*Attorneys for Defendant Motorola Mobility LLC*

SHAW KELLER LLP
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew E. Russell (#5382)
Nathan Hoeschen (#6232)
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100
*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

February 2, 2018

RICHARDS, LAYTON & FINGER, P.A.
Kelly E. Farnan (#4395)
Travis S. Hunter (#5350)
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
hunter@rlf.com

OF COUNSEL:

Jay H. Reiziss Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000
*Attorneys for Defendant ZTE (USA) Inc.*

# TABLE OF CONTENTS

Page

**I. DR. PUTNAM'S "CITATION ANALYSIS" SHOULD BE EXCLUDED....................1**

**II. DR. PUTNAM FAILS TO APPORTION THE FEATURES OF THE PATENTS-IN-SUIT FROM THE UNPATENTED FEATURES OF THE ACCUSED DEVICES5**

**A. Dr. Putnam Does Not Apportion the Royalty Base Using the SSPPU. .............5**

**B. Dr. Putnam Does Not Separate the Value of the Patents-in-Suit from the Value Added by the Standard's Adoption of these Patents. ..............................8**

**III. DR. PUTNAM HAS NOT PROVIDED ANY JUSTIFICATION FOR HIS 50/50 SPLIT OF HIS "LTE PREMIUM." ...................................................................10**

**CONCLUSION** ..........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carrier Corp. v. Goodman Glob., Inc.*,
64 F. Supp. 3d 602 (D. Del. 2014)....................4

*Ericsson, Inc. v. D-Link Sys.*,
773 F.3d 1201 (Fed. Cir. 2014)....................8

*In re Innovatio IP Ventures, LLC Patent Litig.*,
No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013)....................5, 6, 7, 9

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*,
C.A. No. 11-1007-SLR-CJB, 2013 WL 3216109 (D. Del. June 25, 2013)....................4

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....................6, 7

*Microsoft Corp. v. Motorola, Inc.*,
No. C10-1823, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013)....................9

*Robocast Inc. v. Microsoft Corp.*,
C.A. No. 10-1055-RGA, 2014 WL 350062 (D. Del. Jan. 29, 2014)....................10

*VirnetX, Inc. v. Cisco Sys.*,
767 F.3d 1308 (Fed. Cir. 2014)....................6, 10

**Other Authorities**

USPTO Manual of Patent Examining Procedure....................2

**Rules and Statutes**

Fed. R. Civ. P. 26(a)(2)(D)....................4

Fed. R. Civ. P. 37(c)(1)....................4

Defendants respectfully submit this reply brief in support of their motion to exclude the testimony of Dr. Putnam pursuant to Federal Rule of Evidence 702.

## I. DR. PUTNAM'S "CITATION ANALYSIS" SHOULD BE EXCLUDED.

Dr. Putnam's "citation analysis" includes hundreds of patents that do not involve LTE or wireless communications. (D.I. 278 ("Br.") at 6-9.) In its opposition, Evolved pretends these patents do not exist. (*E.g.*. D.I. 322 ("Opp.") at 2 ("Defendants' claim that Dr. Putnam's analysis includes patents 'having no connection to LTE' is factually incorrect and unsupported.") Evolved's position is inexplicable. Defendants listed hundreds of non-LTE patents Dr. Putnam analyzed, and specifically highlighted five that Dr. Putnam's flawed methodology ranked in his top ten most valuable declared-essential LTE patents: patents on methods of surgery, medical devices, and light-emitting diodes. (Br. 6-9 & Ex. L.) Evolved simply ignores them all.

Nor does Evolved address that Dr. Putnam unequivocally declared that his methodology would only work if he compared citations among patents declared essential to LTE. *See* Ex. C at 100-1:17, 101:1-15. Evolved's own description of Dr. Putnam's methodology confirms that it requires "ranking the patents-in-suit *relative to other actually essential LTE patents*." (Opp. at 2 (emphasis added).) Dr. Putnam was specifically asked at his deposition "why couldn't you simply include non-SEPs as part of the analysis," and he confirmed that his method required using patents that contribute to the value of LTE alone. Ex. C at 101:1-15. He made clear that "it wouldn't be a proper comparison" to use non-LTE patents to compute the expected citations to patents declared essential to LTE, or compare their rankings. *Id.* at 100:8-17. Evolved points out that other courts have accepted citation analysis in other cases (Opp. at 12), but that has no bearing on the reliability of Dr. Putnam's particular analysis. His methodology required comparisons of citations among "patents that create the value of LTE technology," and *not* with other non-LTE patents. He failed to do so.

Evolved next attempts to explain away the flaws in Dr. Putnam's analysis with a digression on patent families. (Opp. at 12-14.) But a "patent family" consists of U.S. patents (and any international counterparts) that share a common (or substantially-identical) specification. *See, e.g.*, USPTO Manual of Patent Examining Procedure §§ 901.05, 901.07 (9th ed. Nov. 2015). Patents in the same family have different claims, but the specification support for those claims (the state of the art, detailed descriptions of the invention, figures, etc.) is identical (or substantially so). *See id.* §§ 201.07, 201.08. For that reason, it is nonsensical to claim that Dr. Putnam's highest ranked patent—a method of endoscopic surgery—is in the same family as a patent with claims related to wireless communications. The same is true for the other patents on medical devices and light-emitting diodes that Dr. Putnam ranked in his top ten, and for the hundreds of other patents in his analysis. (*See* Br. at 6-9.)

Yet Evolved declares that "Dr. Putnam has confirmed that the 'representative patents' identified in Defendants' brief have a family member in the IPLytics database that matches a disclosure statement to the LTE standard at ETSI." (Opp. at 14.) This contention is remarkable for several reasons. First, the claim lacks any citation. Dr. Putnam offered no such analysis in his report, so Evolved apparently refers to undisclosed work conducted outside of the scope of expert discovery in this case. This claim should be disregarded for that reason alone.[1]

Second, Evolved does not identify (or cite to) even one of the "family members" of these non-LTE patents that Dr. Putnam claims to have found in "a disclosure statement to the LTE standard." Given that "family members" must share the same or substantially similar specification, if a "family member" of the non-LTE patent had been disclosed to ETSI, it would

---

[1] Evolved provided a sworn declaration from Dr. Putnam in support of its opposition (D.I. 324), but it curiously contains no mention of this supposed "confirmation."

only be because someone erroneously included that patent in a declaration. But the source of the error is irrelevant; what matters is that Dr. Putnam relied on flawed data.

Third, Dr. Putnam's supposed "confirmation" is easily shown to be false. It is *not* true that each patent Defendants identified has "a family member in the IPLytics database that matches a disclosure statement to the LTE standard at ETSI." Even a cursory investigation reveals that many of the non-LTE patents ended up in Dr. Putnam's analysis due to errors that IPLytics, or ETSI itself, made. For example, the Wrigley chewing gum patent (U.S. Patent No. 5,415,880) ranked at 188 in Dr. Putnam's methodology has a Chinese patent family member CN1146139**(A)**, and ETSI's IPR database contains a declaration corresponding to CN1146139**(C)**, which is a different Chinese patent on a "wireless communication system" that issued to Qualcomm. *See* Exs. U, V, W, X. Somewhere along the way, someone cropped off the last letter of the Chinese patent number, and Dr. Putnam's methodology assumed (erroneously) that the Chinese chewing gum patent was a declared-essential LTE patent. Dr. Putnam's analysis proceeded with the chewing gum patent: He counted up citations to the chewing gum patents, used that count as part of determining expected citations for LTE patents, and ranked the chewing gum patent in the top 94% of all LTE patents. Other similar errors appear throughout Dr. Putnam's data set.[2] There is no "match" between these non-LTE patents and disclosure statements to ETSI. Regardless of the source of the errors in the IPLytics database—whether (1) some entity mistakenly disclosed a non-LTE patent as essential, or (2) someone made a data

2 *E.g.*, the diaper patent Dr. Putnam ranked at 1867, U.S. Patent No. 6,423,049, has a Chinese counterpart CN1284316**(A)**, and ETSI's database contains a declaration corresponding to CN1284316**(C)**, which is a different Chinese patent issued to NEC. Exs. Y, Z, AA, BB. The printing patent Dr. Putnam ranked at 583, U.S. Patent No. 3,560,204, has a German counterpart **DE**1597855**(A1)**, and ETSI's database contains a declaration corresponding to **EP**1597855**B1**, which is an Ericsson European patent application. Exs. CC, DD, EE, FF, GG.

entry error making it appear that a non-LTE patent had been declared essential—the erroneous data renders Dr. Putnam's methodology unreliable.

Evolved next suggests that "Dr. Putnam's methodology takes into account potential errors." (Opp. at 14-15.) That is incorrect. Dr. Putnam never accounted for the errors in the data, because he had no idea errors of this kind existed. *See* Ex. C at 144:25-145:7, 153:14-25. As Defendants explained, most of the studies Dr. Putnam relied on concerning which patents are "actually essential" are *technical* analyses comparing the language of specific claims of declared-essential patents to the LTE standard. (Br. 10 & n.3.) Such studies examine whether wireless communications patents that patent holders believe *may be* necessary to practice the LTE standard are *actually* essential. That has nothing do with the flaws in Dr. Putnam's data.

Finally, Evolved tries to deflect Defendants' motion by offering a new declaration from Dr. Putnam, with previously-undisclosed opinions and calculations supposedly showing that Dr. Putnam "took into account" potential errors and thus his "methodology is sound." (Opp. at 15-18; D.I. 324 ("Putnam Decl.")) The methodology before the Court in Defendants' *Daubert* motion is the methodology Dr. Putnam *disclosed in his expert report*—not additional disclosures offered in a declaration signed a month after Defendants filed the motion. Allowing this untimely supplementation in response to a *Daubert* challenge would severely prejudice Defendants. Evolved had notice of these errors since at least August 2017, yet made no effort to supplement Dr. Putnam's report. Dr. Putnam's declaration should be stricken and excluded from trial. *See* Fed. R. Civ. P. 26(a)(2)(D); Fed. R. Civ. P. 37(c)(1); *INVISTA N. Am. S.a.r.l. v. M & G USA Corp*., C.A. No. 11-1007-SLR-CJB, 2013 WL 3216109, at *5 (D. Del. June 25, 2013) (striking opinions in expert declaration as "new and untimely"); *see also Carrier Corp. v. Goodman Glob., Inc*., 64 F. Supp. 3d 602, 619 n.19 (D. Del. 2014).

Even if they had been timely disclosed, Dr. Putnam's new calculations do nothing to cure the problems Defendants identified. Dr. Putnam now claims essentially that Evolved's patents slide up in the rankings if he discards the non-LTE patents. (Opp. 16-18.) But Dr. Putnam's methodology requires first determining expected citation counts *for patents related to LTE* (*see* Ex. C. 111:17-21), and he erroneously computed expected citations using hundreds of non-LTE patents. Deleting those patents from the final rankings, after the fact, cannot fix that error. The *Value Shares* article from which Dr. Putnam derives his new calculations does *not* concern citation analysis (*see* D.I. 324 Ex. C), and does not provide any method for solving the problem Dr. Putnam created by using non-LTE patents to compute expected citations to LTE patents.

## II. DR. PUTNAM FAILS TO APPORTION THE FEATURES OF THE PATENTS-IN-SUIT FROM THE UNPATENTED FEATURES OF THE ACCUSED DEVICES

### A. Dr. Putnam Does Not Apportion the Royalty Base Using the SSPPU

Dr. Putnam's "top-down" approach finds no support in the caselaw governing patent damages in the FRAND context. Evolved spends much of its opposition detailing Dr. Putnam's methodology, but fails to identify even a single case in which an expert has used a similar methodology. Evolved claims that "Dr. Putnam's top-down approach follows a conceptual process adopted by the court in *Innovatio*" (Opp. at 18), a case that determined a FRAND royalty rate. But other than the fact that Dr. Putnam and the *Innovatio* court both label their methodology as a "top-down" approach, there is no similarity between the two methodologies.

Despite its initial claim that Dr. Putnam followed this same "conceptual process," the remainder of Evolved's argument plainly evidences that Dr. Putnam's methodology bears no resemblance to that which the *Innovatio* court employed. Whereas in *Innovatio* the court started

its calculation with the average price of the SSPPU (in that case, the Wi-Fi chip of the accused devices), *In re Innovatio IP Ventures, LLC Patent Litig.*, No. 11 C 9308, 2013 WL 5593609, at *82, 163, 169-70 (N.D. Ill. Oct. 3, 2013), Dr. Putnam, in contrast, specifically rejects the use of the SSPPU (which in this case is the baseband chipset) (*see, e.g.*, D.I. 279-1, Ex. A at ¶¶ 168-70). This fundamental flaw in Dr. Putnam's methodology conflicts with well-established Federal Circuit principles as to how the features of the '236 and '373 patents must be apportioned from the unpatented features of Defendants' accused devices. Where, as here, small elements of multi-component products are accused of infringement, the entire product is not an appropriate royalty base, especially when the product contains many other components. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Instead, the damages focus must shift at least to the smallest SSPPU—and even then some smaller part of the SSPU. *Id.*

Evolved argues that Dr. Putnam need not apportion the royalty base using the SSPPU because the Federal Circuit in *Commonwealth Sci. & Indus. Research Org. ("CSIRO") v. Cisco Sys., Inc.*, rejected such a requirement. (Opp. at 21-22 (citing 809 F.3d 1295, 1303 (Fed. Cir. 2015).) While Evolved is correct that *CSIRO* indicated that a damages model sometimes need not begin with the SSPPU, Evolved fails to mention that the Federal Circuit went on to explain that it is not required that the SSPPU be used where the analysis instead "begins with rates from comparable licenses and then 'account[s] for differences in the technologies and economic circumstances of the contracting parties.'" 809 F.3d at 1303 (*quoting Finjan*, 626 F.3d at 1211). Dr. Putnam, however, ***does not*** employ this method. His "top-down" approach gives no consideration whatsoever to comparable licenses, let alone begin with rates from any comparable licenses. Defendants raised this point in their opening brief, yet Evolved does not address it.

Evolved also argues that it was proper for Dr. Putnam to not use the SSPPU because "there is no agreement among the experts in these cases that the baseband chipset is the smallest saleable unit." (Opp. at 22.) There is no authority (Evolved does not cite a single case) that stands for the proposition that a damages model need not begin with the SSPPU because the experts do not agree on what the SSPPU is. Moreover, there is no viable disagreement as to what the SSPPU is here. A SSPPU is the smallest component that purportedly embodies the asserted patented technology, and the uncontroverted evidence in these cases is that the SSPPU here is the baseband chipset (or some portion of it). In their opening brief, Defendants pointed to evidence in which Evolved plainly identified the baseband chipset as the SSPPU. (*See* Br. at 16.) Evolved ignores this evidence in its opposition. Instead, Evolved points to a single paragraph in each of Dr. Putnam's and Dr. Cooklev's reports. But neither paragraph has an opinion on what the SSPPU is. Dr. Putnam states merely that "[t]he standard-essential inventions in these devices are not components bolted on to a larger product; they are systemic, so they interact with one another and with non-standardized components." (D.I. 279, Ex. A at ¶ 169(b).) And Dr. Cooklev states that hardware, such as antennas, baseband chipsets, circuitry, and memory, is needed to implement the accused LTE functionality. (D.I. 323, Ex. 8 at ¶ 229.)

Even if these statements could somehow be construed as opinions on the SSPPU, they do not comport with the law. The Federal Circuit in *LaserDynamics* held that the proper royalty base "is the smallest saleable infringing unit *with close relation to the claimed invention*." 694 F.3d at 67. And the court in *Innovatio* specifically rejected the precise argument that Evolved makes here. 2013 WL 5593609 at *80-82. LTE functionality requires certain generic, multi-function components of Defendants' accused products, such as antennas and memories, but that does not bear on what the SSPPU is for the patents-in-suit. Evolved's patents

do not purport to have invented antennas or memory, so those components do not have a "close relation to the claimed invention." Evolved's infringement contentions—which make no mention of antennas or memories—confirm that the basis for its infringement allegations is the baseband chipset found within each accused device. For example, Evolved contends that "[t]he LTE functionalities related to the '373 patent are the same across all accused products that utilize at least the following LTE baseband chipsets: [list omitted]." Ex. HH at 4. In any event, a disagreement over the SSPPU does not excuse Dr. Putnam's failure to use any SSPPU.

Finally, Evolved tries to excuse Dr. Putnam's failure to use the SSPPU by pointing to published royalty rates and license agreements that apply royalty rates to handsets rather than to the baseband chipset. (Opp. at 22-23.) But as noted above, Dr. Putnam did not rely on those licenses to establish a royalty, and has not established that they are comparable. Evolved cites no authority for an exception to using the SSPPU because non-comparable published rates or license agreements reference the end-user device. Any such rule would eviscerate the Federal Circuit's well-established principle of apportionment using at least the SSPPU.

**B. Dr. Putnam Does Not Separate the Value of the Patents-in-Suit from the Value Added by the Standard's Adoption of these Patents**

As Defendants explained (*see* Br. 17-20), in the SEP context, not only must the patented feature be apportioned from all of the unpatented features reflected in the standard, but the royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology. *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014). Evolved argues that the "hedonic price regression" Dr. Putnam performed separated "the price paid for LTE from other technology in the price of an LTE handset." (Opp. at 20.) Even if that were true (which it is not), Dr. Putnam's analysis still fails

to determine the value of the patents-in-suit *apart* from the value of the LTE standard. Instead, Dr. Putnam's method is explicitly based on a proportion of the value of the entire standard itself and has no accounting for the value of the patents-in-suit before, or separate from, their incorporation into that standard.

Evolved argues that Dr. Putnam determined the value of the patents-in-suit apart from the value of the LTE standard because he "computed the incremental value of LTE over 3G, the prior standard." (Opp. at 19.) Without a single citation to any caselaw (or even to Dr. Putnam's reports), Evolved claims that "[w]hatever the value of standardization is, it is reflected in both 3G and LTE and therefore is not part of the difference between them." (Opp. at 18.) Regardless of the veracity of this assertion, it has nothing to do with the value of the patents-in-suit *separate* from the value they derive purely from being incorporated into the LTE standard.

As Defendants detailed in their opening brief, the courts in *Innovatio* and *Microsoft* explained that the contribution of patents providing technology included in a standard is better understood, and isolated from the value of the standard itself, by a comparison to alternatives. (Br. at 18-20 (citing *Innovatio*, 2013 WL 5593609 at *20; *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217, at *13, *19 (W.D. Wash. Apr. 25, 2013).) Evolved's argument that Dr. Putnam need not consider alternatives, because that "approach is not applicable in the standard-setting context" (Opp. 20), directly contradicts *Microsoft* and *Innovatio*, which were both in the "standard-setting context." By comparing LTE as a whole to 3G rather than comparing the patents-in-suit to possible alternatives for features within LTE, Dr. Putnam's "LTE premium" analysis fails to isolate any incremental value of the purportedly patented features of the '373 and '236 patents. This approach closely parallels that which the court in *Innovatio* considered and rejected. *Innovatio*, 2013 WL 5593609, at *21-22.

## III. DR. PUTNAM HAS NOT PROVIDED ANY JUSTIFICATION FOR HIS 50/50 SPLIT OF HIS "LTE PREMIUM"

The Federal Circuit has held "invocations of the Nash theorem without [an expert] sufficiently establishing that the premises of the theorem actually apply to the facts of the case at hand" should be rejected. *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014). In particular, an expert must explain "what situations in the real world fit [the] premises" that were applied to arrive at the result. *Id.* Judge Andrews in this District has interpreted these "sort of facts [to be] analogous to facts usually used in reasonable royalty analyses[,]" such as the parties' licensing history. *Robocast Inc. v. Microsoft Corp*., C.A. No. 10-1055-RGA, 2014 WL 350062, at *3 (D. Del. Jan. 29, 2014).

Neither Dr. Putnam nor Evolved points to a single real-world fact in these cases that would justify Dr. Putnam's 50/50 split of the alleged "LTE premium" between "innovators" and implementers. Instead, Dr. Putnam and Evolved rely on supposed general economic theory (Opp. at 24)—not a real-world fact—and a single statement in the ETSI IPR Policy that the policy "seeks a balance between the needs of standardization for public use . . . and the rights of owners of IPRs" (*id.* at 23 (citing D.I. 323, Ex. 1 at 35)). There is nothing in this sentence that could reasonably be interpreted as dictating a 50/50 split of the gains. More importantly, it does not in any way evidence what has occurred in the real world with respect to Defendants or anyone else in the LTE space. Dr. Putnam has not pointed to an actual real-world example in which gains have been split 50/50 between innovator and implementer. Accordingly, Dr. Putnam's opinion relying on the 50/50 LTE premium split should be excluded. *See Robocast*, 2014 WL 350062, at *9; *VirnetX*, 767 F.3d at 1333.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com

OF COUNSEL:

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Joseph A. Micallef
Wonjoo Suh
Anna M. Weinberg
Scott M. Border
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

*Attorneys for Defendants Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc. (now known as Microsoft Mobile Inc.)*

POTTER ANDERSON & CORROON LLP

*/s/ Bindu A. Palapura*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

OF COUNSEL:

Michael D. Jay
Bill Ward, Ph.D.
Joseph E. Lasher
Nandan R. Padmanabhan
Micol Small
Martin Ellison
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
(310) 752-2400

Steve Holtzman
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000

*Attorneys for Defendant Apple Inc.*

POTTER ANDERSON & CORROON LLP

*/s/ Phillip A. Rovner*

Phillip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

OF COUNSEL:

Stephen S. Korniczky
Martin R. Baker
Ericka Schulz
NamH.Kim
Kayla E. Page
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-8900

*Attorneys for Defendants HTC Corporation and HTC America, Inc.*

POTTER ANDERSON & CORROON LLP

*/s/ Bindu A. Palapura*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

OF COUNSEL:

Mitchell G. Stockwell
Richard F. Goldstucker
KILPATRICK TOWNSEND AND STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

Taylor H. Ludlam
KILPATRICK TOWNSEND AND STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700

*Attorneys for Defendant Motorola Mobility LLC*

SHAW KELLER LLP

*/s/ Nathan Hoeschen*

John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew E. Russell (#5382)
Nathan Hoeschen (#6232)
I.M. Pei Building
1105 N. Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5100

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Travis S. Hunter*

Kelly E. Farnan (#4395)
Travis S. Hunter (#5350)
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
hunter@rlf.com

OF COUNSEL:

Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000

*Attorneys for Defendant ZTE (USA) Inc.*

February 2, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 2, 2018, upon the following in the manner indicated:

John C. Phillips, Jr., Esquire *VIA ELECTRONIC MAIL*
David A. Bilson, Esquire
PHILLIPS, GOLDMAN, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
*Attorneys for Plaintiff*

Christopher K. Larus, Esquire *VIA ELECTRONIC MAIL*
Andrea L. Gothing, Esquire
Ryan M. Schultz, Esquire
Benjamin C. Linden, Esquire
Andrew D. Hedden, Esquire
Ryan E. Dornberger, Esquire
Marla R. Butler, Esquire
Rajin S. Olson, Esquire
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
*Attorneys for Plaintiff*

Annie Huang, Esquire *VIA ELECTRONIC MAIL*
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022-4611
*Attorneys for Plaintiff*

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)