**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) ) ) |
| Plaintiff, | ) **FILED UNDER SEAL** ) |
| v. | ) C.A. No. 15–543–JFB–SRF ) |
| HTC CORP. AND HTC AMERICA, INC., | ) **Jury Trial Demanded** ) |
| Defendants. | ) ) |

**EVOLVED WIRELESS'S REPLY BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777–0300
(302) 777–0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349–8500
Facsimile: (612) 339–4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com

aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784–4040
Facsimile: (650) 784–4041
agothing@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980–7400
Facsimile: (212) 980–7499
ahuang@robinskaplan.com

Dated: February 2, 2018  **Counsel For Plaintiff Evolved Wireless, LLC**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................ 1

II. ARGUMENT .................................................................................................................... 1

    A. Dr. Gregory Leonard ............................................................................................ 1

        1. Dr. Leonard's opinion that the purchase price of the portfolio that includes the patents-in-suit is a ceiling on a FRAND royalty is unreliable ................................................................................................... 1

        2. Dr. Leonard's "bottom up" methodology is unreliable. ............................. 3

        3. Dr. Leonard's opinion that the compensation for a FRAND-encumbered patent must be considered *ex ante* should be excluded. .......... 4

        4. Dr. Leonard's opinion interpreting contractual terms in ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ should be excluded. ............................................... 5

    B. Dr. Rudi Bekkers ................................................................................................... 5

        1. HTC fails to show how Dr. Bekkers' discussion of opportunistic behaviors is tied to the facts of this case. ..................................................... 5

        2. HTC fails to show how Dr. Bekkers' opinions criticizing the ETSI IPR Policy are tied to the facts of this case. ............................................... 6

        3. HTC fails to show how Dr. Bekkers' opinions regarding the alleged "industry patent pledge" are tied to the facts of this case. .............. 7

        4. HTC fails to show how Dr. Bekkers' discussion of disclosure obligations are tied to the facts of this case. ................................................ 7

    C. Dr. Apostolos Kakaes ........................................................................................... 8

        1. Dr. Kakaes has not shown availability of his non-infringing alternatives. ................................................................................................ 8

        2. Dr. Kakaes does not articulate a motivation to combine the references in his two obviousness combinations for the '373 patent .......... 9

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belden Inc. v. Berk-Tek LLC*,
    805 F.3d 1064 (Fed. Cir. 2015) .................................................................................................10

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
    No. 10-cv-774, 2017 U.S. Dist. LEXIS 115373 (E.D. Pa. July 24, 2017) ................................6

*Ericsson, Inc. v. D-Link Sys.*,
    773 F.3d 1201 (Fed. Cir. 2014) ...................................................................................................8

*In re Innovatio IP Ventures, LLC*,
    No. 11-cv-9308, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Oct. 3, 2013) ....................3, 4, 8, 9

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ..............................................................................................9, 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    No. 06-cv-348, 2011 U.S. Dist. LEXIS 5422 (E.D. Tex. Jan. 20, 2011) ..................................9

*Microsoft Corp. v. Motorola, Inc.*,
    No. 10-cv-1823, 2013 U.S. Dist. LEXIS 60233 (W.D. Wash. Apr. 25 2013) .........................8

*Personal Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017) ...................................................................................................10

*Robocast v. Microsoft*,
    No.10-cv-1055, U.S. Dist. LEXIS 5836 (D. Del. Jan. 16, 2014) ..........................................2, 3

**Rules**

Fed. R. Evid. 702(a) ......................................................................................................................6, 7

Fed. R. Evid. 702(c) .........................................................................................................................3

## I. INTRODUCTION

Plaintiff Evolved Wireless, LLC ("Evolved Wireless") submits this brief in support of its *Daubert* motion to exclude certain opinions by three of Defendants HTC Corp. and HTC America, Inc.'s ("HTC") proffered expert witnesses.

## II. ARGUMENT

### A. Dr. Gregory Leonard

#### 1. Dr. Leonard's opinion that the purchase price of the portfolio that includes the patents-in-suit is a ceiling on a FRAND royalty is unreliable.

Dr. Leonard's opinion regarding the purchase price of the portfolio is unreliable because his methodology failed to account for the actual terms of the patent purchase agreement and failed to consider the substantial risks inherent in enforcing patents. HTC misconstrues Evolved Wireless's argument as critiquing the "*extent*" to which Dr. Leonard erred. D.I. 321 at 8. What Evolved Wireless criticizes is Dr. Leonard's failure to address these substantial factors at all.

First, Dr. Leonard failed to consider the impact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ HTC cites to Dr. Leonard's report, alleging that he "accounted for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓," but the footnote refers to Dr. Leonard's analysis of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 321 at 8 (citing D.I. 292, Ex. 1 at 43-44 n.119). His conclusion from this analysis was to "conservatively assume that 70 percent of worldwide sales are licensable. . . . to the extent that EW could pursue royalties from the remaining market." *Id.* at 44. Thus, his analysis regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1

███████ Dr. Leonard failed to account for this offsetting calculation. Thus, his opinion fails to address the full scope of the patent purchase agreement. To the extent that a patent purchase agreement can be an indicator of value, which as explained in Evolved Wireless's opening brief it cannot, Dr. Leonard fails to employ the correct valuation. His opinion should be excluded.

Further, Dr. Leonard also fails to consider the substantial risks inherent in enforcing a patent portfolio. Again, HTC attempts to support his opinions by pointing to irrelevant portions of his report. While Dr. Leonard did take into account *one* type of risk (D.I. 292 Ex. 1 at 47) when calculating his discount rate, he did not account for *all* the relevant risks. Indeed, Dr. Leonard admits that he did not include the risk that a patent could be found invalid or infringed in calculating his discount rate (what Dr. Leonard calls "idiosyncratic risks"). *Id.* at 47 n.130.

Dr. Leonard also did not explain why the parties would not have considered the idiosyncratic risks specific to the patent portfolio. There are risks independent of the market due to the specifics of the patents themselves. Evolved Wireless, through its counsel, undertook significant efforts to evaluate the validity and likelihood of infringement for the patent portfolio. LGE likely developed its own positions regarding these considerations. ████████

████████ But Dr. Leonard does not adjust for this. Because Dr. Leonard explicitly does not include the risks of invalidity or noninfringement, his valuation is flawed and is artificially depressed by his error.

HTC's reliance on *Robocast v. Microsoft* does not support Dr. Leonard's opinion. No. 10-

2

cv-1055, U.S. Dist. LEXIS 5836 (D. Del. Jan. 16, 2014). In *Robocast*, the Court denied the motion to exclude the expert's opinion because "[w]hile there is a question regarding the discounts applied to the valuation, the valuation itself should not be excluded." *Id.* at *9. Here, however, there is not an issue of degree or "extent" of the discounting. Rather, Dr. Leonard failed to include important considerations in his valuation method at all.

Dr. Leonard's failure to account for ███████████████████████████████ ██████ means that his computation based on the sale price is intrinsically flawed. The court in *In re Innovatio IP Ventures LLC* explicitly noted that "the . . . purchase price itself undoubtedly reflects a significant discount for the risk that the patents could not be successfully monetized, *including the risk of proceeding in this litigation.*" No. 11-cv-9308, 2013 U.S. Dist. LEXIS 144061, *140-41 (N.D. Ill. Sep. 27, 2013) (emphasis added). As in *Innovatio*, the risk of proceeding in this litigation must be considered. Dr. Leonard failed to do so. Because Dr. Leonard does not know ████████████████████████████████, the purchase price should play "no role" in the determination of a FRAND royalty. *Innovatio*, 2013 U.S. Dist. LEXIS 144061 at *140-41. Dr. Leonard's method is unreliable and his opinion based on the purchase price of the patents-in-suit should be excluded under Rule 702(c).

    2.    **Dr. Leonard's "bottom up" methodology is unreliable.**

Dr. Leonard's opinion regarding his "bottom-up" approach is flawed because he fails to consider the cost of implementing the alleged alternatives. In fact, the *Innovatio* court rejected Dr. Leonard's same bottom-up approach because it erroneously assumed that the cost to implement a technology would be driven to zero if alternatives existed. 2013 U.S. Dist. LEXIS 144061 at *162. Similar flaws exist in Dr. Leonard's opinion in the case.

HTC argues that the failings in Dr. Leonard's analysis should be excused because the *Innovatio* court was acting as a fact finder when it rejected his bottom-up approach. D.I. 321

3

at 11. The procedural posture of *Innovatio* does not excuse the flaws in Dr. Leonard's opinions. When *Innovatio* was decided, FRAND case law was scarce. Much was uncertain regarding how best to determine a FRAND royalty. As part of its analysis, the court in *Innovatio* found that the bottom-up approach advanced by Dr. Leonard was unreliable due in part to his failure to account for the cost of implementing alternatives. 2013 U.S. Dist. LEXIS 144061 at *161-62. Thus, the court "reject[ed] Dr. Leonard's bottom up approach as an appropriate method for calculating a RAND royalty in this case." *Id.* at 162. Because Dr. Leonard makes many of the same errors in this case as he did in *Innovatio*, his opinion is not reliable and should be excluded.

HTC attempts to buttress Dr. Leonard's opinion through reference to Dr. Kakaes' attempted search for noninfringing alternatives. D.I. 321 at 11. This search does not and cannot possibly support the sweeping conclusion that "the [alleged] alternatives were likely part of the public domain." *Id.* For example, Dr. Kakaes' searches cited by HTC were expressly limited to patents assigned to LGE, Evolved Wireless, or Samsung (D.I. 292, Ex. 7 ¶¶ 180-81) and LGE, Evolved, and Ericsson (*Id.* ¶¶ 234-35). If patents were assigned to anyone other than these companies, Dr. Kakaes would have no idea they existed. Yet, according to HTC, this limited search was sufficient to somehow prove to Dr. Leonard that there is not a single patent covering the alleged alternatives. Because Dr. Leonard lacks the evidence to opine on the cost of implementing the alleged alternatives, his opinion is unreliable and should be excluded.

**3.      Dr. Leonard's opinion that the compensation for a FRAND-encumbered patent must be considered *ex ante* should be excluded.**

HTC mischaracterizes the reasons why Dr. Leonard's opinion requiring *ex ante* valuation should be excluded. Evolved Wireless is not arguing that Dr. Leonard's use of *ex post* evidence "contradict[s]" Dr. Leonard's opinion, in that the opinions are directly in conflict, as HTC suggests. D.I. 321 at 12. Rather, the jury will be confused because Dr. Leonard also argues that

4

the analysis of Dr. Putnam, Evolved Wireless's expert, is allegedly flawed because he uses *ex post* evidence. *See* D.I. 291, Ex. 3 ¶¶ 34-36. As HTC admits, Dr. Leonard himself relies on *ex post* evidence to support his opinions. D.I. 321 at 12. Because Dr. Leonard relies on *ex ante* and *ex post* evidence, his opinion that a SEP royalty calculation *requires only ex ante* valuation is contradicted. Thus, his opinion is unhelpful and will only confuse a jury and should be excluded.

    **4.**    **Dr. Leonard's opinion interpreting contractual terms in ▬▬▬▬▬ ▬▬▬▬▬ should be excluded.**

HTC admits that Dr. Leonard is not permitted to interpret a question of law. *Id.* at 13. The "understandings" provided by Dr. Leonard are his interpretations of the contractual terms of ▬ ▬▬▬▬▬▬▬▬▬, which HTC admits is not permitted. *Id.* Accordingly, Dr. Leonard's interpretations of ▬▬▬▬▬▬ should be excluded.

    **B.**    **Dr. Rudi Bekkers**

        **1.**    **HTC fails to show how Dr. Bekkers' discussion of opportunistic behaviors is tied to the facts of this case.**

HTC's answering brief narrows the range of issues in dispute. HTC does not contest Evolved Wireless's challenge of alleged opportunistic behaviors that Dr. Bekkers describes in Sections VI(C)-(D) of his report. *See* D.I. 321 at 14-15. Nor does HTC contest Evolved Wireless's challenge of the third alleged opportunistic behavior Dr. Bekkers describes in Section II(E) of his report, which is unrelated to over-disclosure. *See* D.I. 292, Ex. 5 at 17 (discussing the behavior of "applying for patents that are considered candidates to be covered by the expected standard"). HTC only argues that Dr. Bekkers' opinions on two opportunistic behaviors regarding over-disclosure are allegedly tied to the facts of this case.

HTC never explains how the two remaining opportunistic behaviors Dr. Bekkers identifies are tied to the facts of this case. Indeed, neither Dr. Leonard nor Dr. Bekkers ever *applies* this discussion to opine that Dr. Putnam's estimate of actually essential patents is

5

incorrect, especially given that Dr. Putnam's estimate accounted for the over-disclosure Dr. Bekkers identified. D.I. 322, Ex. C ¶¶ 180-82.[1] Dr. Bekkers' opinions on over-disclosure "do[] not reach the relevant factual issues, nor can his expertise assist the trier of fact in any other way." *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, No. 10-cv-774, 2017 U.S. Dist. LEXIS 115373, at *16 (E.D. Pa. July 24, 2017). Accordingly, all of Dr. Bekkers' opinions regarding alleged opportunistic behaviors should be excluded under Rule 702(a).

> 2. **HTC fails to show how Dr. Bekkers' opinions criticizing the ETSI IPR Policy are tied to the facts of this case.**

In an effort to tie Dr. Bekkers' criticisms of ETSI to the facts of this case, HTC points to statements by Evolved Wireless's rebuttal expert, Dr. Bertram Huber. D.I. 321 at 15. HTC ignores that Dr. Huber's opinions were offered in *rebuttal* to Dr. Bekkers' proffered opinions. Allowing opinions to stand merely because they are rebutted would obviate *Daubert* altogether. Despite HTC's argument, "the ETSI decision structure regarding its IPR policy" that Dr. Bekkers complains of is a separate issue from "the debates and deliberations leading up to the adoption of the ETSI IPR Policy" that Dr. Huber views as important. *Id*. Dr. Huber relies on actual discussions and debates at ETSI regarding the policy to ensure it is not interpreted to somehow incorporate regulations that were removed or altered. *E.g.*, D.I. 322, Ex. A at 14 (opining that "regulations contained in the 1993 Policy which are no longer present in the 1994 Policy have been *deliberately* omitted (or changed)"). In contrast, Dr. Bekkers' criticisms will not aid the jury in interpreting the ETSI IPR Policy itself. Similarly, HTC's claimed relevance

---

[1] For the first time, HTC claims that "there is proof that LGE and/or Evolved has engaged in [opportunistic] behaviors" because three patents were dismissed from suit. D.I. 321 at 14. But Dr. Bekkers' deposition took place *after* the three patents were dropped from this suit, and Dr. Bekkers *still* testified that he never considered whether LG exhibits any of the opportunistic behaviors he identified. D.I. 292, Ex. 6 at 120:9-14. HTC presumes, without any support, that the dropped patents "were in fact not essential, which is the very definition of 'over-declared.'" D.I. 321 at 14. This attorney argument has no bearing on whether his opinions should be excluded.

"to the question of fact as to what the ETSI IPR Policy is meant to accomplish" is meaningless, because "what the ETSI IPR Policy is meant to accomplish" has no bearing on any legal question at issue. *Id*. Dr. Bekkers' untethered criticisms of ETSI and its IPR Policy should be excluded.

> **3.  HTC fails to show how Dr. Bekkers' opinions regarding the alleged "industry patent pledge" are tied to the facts of this case.**

HTC does not explain how Dr. Bekkers' cited "industry patent pledge" is reliable or relevant to any fact at issue. D.I. 321 at 16. Instead, HTC offers attorney argument unsupported by Dr. Bekkers or any other expert or evidence of record. HTC first claims, without citation, that "[t]his pledge was consistent industry wide, regardless of whether LGE 'agreed' to it." *Id*. This is nonsensical; LGE is and was part of the industry, so the pledge by definition cannot be consistent industry wide if LGE did not join the pledge. But more importantly, *none* of the Defendants in *any* of the parallel cases (15-cv-542 through 15-cv-547) except for Nokia was a part of the pledge that HTC claims was "industry wide." D.I. 292, Ex. 5 at 48. HTC next alleges that LGE knew "what the industry wide rate was likely to be." Again, HTC provides no basis for this statement. There is no evidence of record regarding when LGE became aware of the "patent pledge" a subset of implementers made, or how LGE interpreted that pledge. HTC's unsupported attorney arguments are a clear misrepresentation of even its own expert's opinion. Additionally, HTC's reliance on Dr. Leonard's use of the patent pledge does not demonstrate that the pledge is reliable or relevant. HTC fails to explain why a patent pledge made by a subset of implementers— which did not include either LGE, Evolved Wireless, or HTC—should have any bearing on any issue in this case. Accordingly, Dr. Bekkers' discussion of patent pledges should be excluded.

> **4.  HTC fails to show how Dr. Bekkers' discussion of disclosure obligations are tied to the facts of this case.**

HTC makes no unique arguments in response to Evolved Wireless's challenge of Dr. Bekkers's disclosure obligations discussion in his report. Instead, HTC relies wholly on its

7

flawed arguments in response to Evolved Wireless's challenge of Dr. Bekkers' opportunistic behaviors discussion. For the same reasons discussed above in Section B.1, and for the same reasons discussed in Evolved Wireless's opening brief, these opinions should be excluded.

    C.    **Dr. Apostolos Kakaes**

        1.    **Dr. Kakaes has not shown availability of his non-infringing alternatives.**

Dr. Kakaes' non-infringing alternatives opinion should be excluded because he fails to demonstrate availability of the alternatives. To be sure, there is no absolute requirement that the hypothetical negotiation and non-infringing alternatives analysis take place at the time of standardization. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1234 n.10 (Fed. Cir. 2014). Nonetheless, Dr. Kakaes' opinion that the alleged non-infringing alternatives were available at the time of standardization amounts to *ipse dixit* expert testimony and should be excluded.

First, HTC concedes that Dr. Kakaes relies on an alternative not submitted to Dr. Kakaes' 3GPP—the LTE standards body. *See* D.I. 322 at 19 (citing D.I. 291 Ex. 7 ¶¶ 195-202). This alternative for the '236 patent should be categorically excluded. *See In re Innovatio IP Ventures, LLC*, No. 11-cv-9308, 2013 U.S. Dist. LEXIS 144061, at *105 (N.D. Ill. Oct. 3, 2013).

Second, Dr. Kakaes' remaining non-infringing alternative opinions are speculative and incomplete. An expert must offer more than *ipse dixit* testimony regarding alternatives and their effect on the standard. *See Microsoft Corp. v. Motorola, Inc.*, No. 10-cv-1823, 2013 U.S. Dist. LEXIS 60233, at *85-86 (W.D. Wash. Apr. 25, 2013) ("Microsoft did not, however, provide detail, aside from *ipse dixit* expert testimony, as to how these alternatives would have fully replaced the [asserted] Patent or how they would have affected related aspects of the . . . Standard"); *see also id.* at *90-91, *111-12. As other district courts have held, "*Grain Processing* requires the court to consider whether, among other things, [the defendant] had the necessary equipment, know-how, and experience to implement those non-infringing alternatives."

8

*LaserDynamics, Inc. v. Quanta Comput., Inc.*, No. 06-cv-348, 2011 U.S. Dist. LEXIS 5422, at *11 (E.D. Tex. Jan. 20, 2011). Here, there is no evidence in the record that HTC could have implemented Dr. Kakaes' alleged alternatives other than the *ipse dixit* of the expert witnesses. Indeed, as HTC has reiterated to the Court, HTC does not have any knowledge of the innerworkings of at least the Qualcomm LTE baseband chip or the ability to make any such changes to implement any alternative. *See, e.g.*, D.I. 54 at 1; D.I. 60.[2] Thus, HTC has failed to establish that Dr. Kakaes' non-infringing alternatives were available and his testimony on these alternatives should be excluded. *LaserDynamics*, 2011 U.S. Dist. LEXIS 5422 at *12.

In addition, Dr. Kakaes fails to consider whether (1) any of the alleged "non-infringing alternatives" were patented by another entity, *see Innovatio*, 2013 U.S. Dist. LEXIS 14406 at *102-03, or (2) if HTC could have influenced 3GPP to select the non-infringing alternative. *LaserDynamics*, 2011 U.S. Dist. LEXIS 5422 at *11-12 (excluding testimony where the expert failed to opine as to whether the *Defendant itself* would have been capable of implementing the non-infringing alternative). Dr. Kakaes' testimony should not be permitted to go to the jury.

### 2. Dr. Kakaes does not articulate a motivation to combine the references in his two obviousness combinations for the '373 patent.

Dr. Kakaes does not provide an articulated reasoning for his obviousness combinations and his opinion should therefore be excluded. To avoid the "pitfalls of hindsight that belie a determination of obviousness," there "must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). That includes explaining a "motivation to pick out those two references and combine them to arrive at the claimed invention." *See Personal Web Techs.,*

---

[2] HTC refused to answer Evolved Wireless's non-infringement interrogatory because HTC contended the accused functionality was performed by the Qualcomm LTE chipset. According to its briefing, HTC has no knowledge of how the Qualcomm chip operates.

9

*LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017). "[O]bviousness concerns whether a skilled artisan not only *could have made* but *would have been motivated to make* the combinations or modifications of prior art to arrive at the claimed invention." *Id*. at 994 (quoting *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015)). Dr. Kakaes's obviousness opinion should be excluded because it addresses only whether a skilled artisan *could* have made the combinations, not whether the skilled artisan *would* have made the combinations.

The two paragraphs cited in HTC's opposition—paragraphs 454 and 469—do not articulate Dr. Kakaes' motivation to combine, but rather explain that Dr. Kakaes' reasoning is provided elsewhere in his report. *See* D.I. 254 Ex. 1 ¶ 454; *see also* ¶ 469. The remainder of Dr. Kakaes' opinion does no such thing. *See generally* D.I. 254 Ex. 1 ¶¶ 454-457, 469-72. Instead, Dr. Kakaes opines that the prior art references are of the same subject matter, *id*. ¶¶ 455, 470, that a POSITA *could* have combined the references, *id*. ¶¶ 456, 471, how the references *would be combined*—though purporting to opine that a POSITA "would have been motivated" to combine them in this fashion, *id*. ¶ 457, and that a POSITA "could have incorporated concepts" from one reference to the other. *Id*. ¶472. Not one of these paragraphs provides a reason why a POSITA would be motivated to combine the references. HTC's brief does not articulate one either. *See generally* D.I. 321 at 19-20. Absent an articulated motivation to combine, Dr. Kakaes' opinions regarding obviousness should be excluded. *See Innogenetics*, 512 F.3d at 1373.

### III.  CONCLUSION

For the foregoing reasons, the Court should exclude the opinions identified above and in Evolved Wireless's opening brief from Dr. Leonard, Dr. Bekkers, and Dr. Kakaes.

Dated: February 2, 2018

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777–0300
(302) 777–0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Christopher K. Larus (admitted *pro hac vice*)
Marla R. Butler (admitted *pro hac vice*)
Ryan M. Schultz (admitted *pro hac vice*)
Andrew D. Hedden (admitted *pro hac vice*)
Benjamen C. Linden (admitted *pro hac vice*)
Ryan E. Dornberger (admitted *pro hac vice*)
Anthony F. Schlehuber (admitted *pro hac vice*)
Rajin S. Olson (admitted *pro hac vice*)
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349–8500
Facsimile: (612) 339–4181
clarus@robinskaplan.com
mbutler@robinskaplan.com
rschultz@robinskaplan.com
ahedden@robinskaplan.com
blinden@robinskaplan.com
rdornberger@robinskaplan.com
aschlehuber@robinskaplan.com
rolson@robinskaplan.com

Andrea L. Gothing (admitted *pro hac vice*)
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784–4040
Facsimile: (650) 784–4041
agothing@robinskaplan.com

Annie Huang (admitted *pro hac vice*)
ROBINS KAPLAN LLP
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980–7400
Facsimile: (212) 980–7499
ahuang@robinskaplan.com

**Counsel For Plaintiff Evolved Wireless, LLC**