## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-542-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| APPLE, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-543-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HTC CORPORATION, and HTC AMERICA, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-544-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MOTOROLA MOBILITY LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 15-545-JFB-SRF |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-546-JFB-SRF |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| ZTE (USA) INC., | ) **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |
| | ) |
| EVOLVED WIRELESS, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 15-547-JFB-SRF |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| MICROSOFT CORPORATION, MICROSOFT MOBILE OY and NOKIA INC., | ) **PUBLIC VERSION** |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. COOKLEV PURSUANT TO FED. R. EVID. 702 AND 403**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Dr. Cooklev's Infringement Opinions Concerning The TechPats Emulation Testing Are Inadmissible Speculation..................................................2

        1. Evolved concedes that the TechPats testing has no bearing on claim limitations pertaining to internal operations of an accused device. ...................................................................................................2

        2. The TechPats reports are not relevant circumstantial evidence. ...................4

    B. The TechPats Field Testing Is Not Relevant To Whether The Accused Products Infringe The Patents-In-Suit. ........................................................................5

        1. Dr. Cooklev's infringement opinions based upon the TechPats field testing are inadmissible speculation. ..................................................5

        2. Evolved cannot claim one Defendant's product is representative of another Defendant's product. ..........................................................5

            (a) Field testing pertaining to the '373 Patent. ......................................5

            (b) Field testing pertaining to the '236 Patent. .....................................9

    C. The Record Is Ripe To Exclude Under Federal Rule Of Evidence 403 Dr. Cooklev's Opinions Regarding The TechPats Reports. ...........................................9

III. CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
  C.A. No. 13-324-RGA, 2017 U.S. Dist. LEXIS 130430 (D. Del. Aug. 14, 2017) .................. 10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................... 3, 9

*Fujitsu Ltd. V. Netgear Inc.*,
  620 F.3d 1321 (Fed Cir. 2010) ................................................................................... 6-7

*GreatBatch Ltd. v. AVX Corp*,
  C.A. No. 13-723-LPS, 2015 U.S. Dist. LEXIS 182055 (D. Del. Dec. 8, 2015) ............ 3, 4

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ........................................................................................ 3, 9

*Medtronic, Inc. v. Mirowski Family Ventures*, LLC,
  134 S. Ct. 843 (2014) ..................................................................................................... 7

*Spansion, Inc. v. ITC*,
  629 F.3d 1331 (Fed. Cir. 2010) ..................................................................................... 6

*TiVo, Inc. v. EchoStar Commc'ns Corp.*
  516 F.3d 1290 (Fed. Cir. 2008) ..................................................................................... 6

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*,
  No. 10-cv-10578, 2016 U.S. Dist. LEXIS 145316 (E.D. Mich. Oct. 20, 2016) ........... 4, 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) ..................................................................................... 5

**Rules**

Fed. R. Evid. 403 ................................................................................................................. 9, 10

Fed. R. Evid. 402 ....................................................................................................................... 5

Fed. R. Evid. 702 ....................................................................................................................... 3

I. **INTRODUCTION**

Much of Evolved's opposition is devoted to establishing (1) that the TechPats emulation testing was performed using reliable methods, and (2) that Dr. Cooklev relies on this testing to reach his ultimate infringement conclusions only in conjunction with other evidence. Neither of these points is relevant here.

First, Defendants' motion does not challenge the reliability of the TechPats emulation testing itself; instead, the issue is how Dr. Cooklev used the results of those tests. The TechPats emulation testing does not provide any insight into whether Defendants' Accused Products perform the limitations of the '373 and '236 Patents that are allegedly directed to their internal operations. Evolved initially claims that Dr. Cooklev does not rely on the TechPats testing for any opinions regarding these particular claim limitations. But then later in its opposition, Evolved admits that Dr. Cooklev does indeed use the emulation test results to conclude that the Accused Products "must have performed the internal steps" of the asserted claims. Any conclusions Dr. Cooklev offers that the TechPats emulation testing supports infringement of the claim limitations that go to the internal operations of the Accused Products should be excluded.

Second, the fact that Dr. Cooklev relies on other independent alleged evidence (*e.g.* source code) of infringement cannot cure the deficiencies in his conclusions about the TechPats emulation testing. Evolved has not presented any authority that would allow Dr. Cooklev to speculate about what the TechPats emulation testing shows simply because there is other independent evidence supporting his ultimate infringement opinions.

Dr. Cooklev's conclusions about the TechPats field testing are equally flawed. In addition to suffering from the same defects as the emulation testing, the field testing is irrelevant because it was performed using only an LG (a non-party) and a Samsung device. Dr. Cooklev

attempts to extend the results of this limited field testing to all Defendants' Accused Products because they are all compatible with LTE networks. But there is no legal or evidentiary basis for Dr. Cooklev to use one manufacturer's product as representative of another manufacturer's product, even if they are all compatible with LTE networks. Dr. Cooklev's conclusions to the contrary are based on nothing but pure speculation and should therefore be excluded.

## II. ARGUMENT

### A. Dr. Cooklev's Infringement Opinions Concerning The TechPats Emulation Testing Are Inadmissible Speculation.

#### 1. Evolved concedes that the TechPats testing has no bearing on claim limitations pertaining to internal operations of an accused device.

The TechPats emulation tests do not provide any insight into the internal operations of the Accused Products. (*See., e.g.*, D.I. 318 ("Opp. Br.") at 10.) As Defendants explain in their opening brief, Mr. Royer, the TechPats employee who performed the tests and wrote the reports,[1] confirmed that TechPats has no visibility into the steps a device *internally* performs prior to transmitting information. (D.I. 282-1[2], Ex. B (Royer Tr.) at 102:5-103:21, 104:13-105:21, 108:5-10.) Evolved does not dispute Mr. Royer's testimony or argue that the TechPats reports show anything more than that the tested device *externally* receives and transmits signals.

Instead, Evolved claims that Dr. Cooklev "does not rely at all on the TechPats emulation testing" for his opinions that Defendants' Accused Products meet the particular claim limitations that go to the internal operation of the Accused Products. (Opp. Br. at 10.) It is not at all clear from Dr. Cooklev's reports or his deposition testimony, however, that he intended to limit his

---

[1] Evolved exaggerates Dr. Cooklev's involvement in the TechPats testing. (Opp. Br. at n. 3.) Mr. Royer testified that Dr. Cooklev did not provide facts or data taken into account for testing or drafting the reports, nor did he have *any* role in developing the test procedures and methodology. (D.I. 282-1, Ex. B (Royer Tr.) at 57:18-25, 72:23-73:6, 73:25-74:13.)

[2] Docket entries (D.I.) cited herein refer to C.A. No. 15-cv-542-JFB-SRF.

2

reliance on the TechPats reports in this manner. Indeed, after stating that Dr. Cooklev relies on the TechPats reports for only a limited purpose, Evolved goes on to admit (on the very next page of its brief) that "Dr. Cooklev concludes that because the tested products produce certain outputs, based on his other analyses, the mobile devices ***must have performed the internal*** steps that the LTE standard, conformance testing, and source code all indicated they would." (Opp. Br. at 11 (emphasis added).) It is undisputed that the TechPats testing and reports offer *zero* insight into the internal steps that the tested devices perform. Therefore, any conclusion that Dr. Cooklev draws from such testing that the devices "must have performed the internal steps" of the asserted claims is pure speculation and must be excluded. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("*Daubert* explains that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).

Evolved suggests throughout its opposition that Dr. Cooklev's conclusions about the TechPats reports are admissible because he relies on other evidence to support his ultimate infringement opinions. But Evolved does not provide any authority permitting an expert to speculate about what some evidence shows because there is other entirely independent evidence that purportedly leads to the same conclusion. Dr. Cooklev's opinions relating to the TechPats reports must be examined on their own.

Evolved relies on *GreatBatch Ltd. v. AVX Corp.* to argue that Defendants are applying an unduly strict standard. (Opp. Br. at 11.) This reliance is entirely misplaced. In *GreatBatch*, the defendant moved to preclude an expert's entire theory of infringement. C.A. No. 13-723-LPS,

2015 U.S. Dist. LEXIS 182055, at *9 (D. Del. Dec. 8, 2015). The court denied the motion, finding that the expert had "good grounds" for his infringement theory because his analysis presented plausible reasoning and was based on, among other things, an analysis that an independent laboratory performed. *Id.* Unlike *GreatBatch*, Defendants have not moved to preclude the entirety of Dr. Cooklev's infringement theories; rather, Defendants seek to exclude only Dr. Cooklev's conclusions that the TechPats emulation tests demonstrate infringement of claim limitations directed to internal operations. There are no "good grounds" for these conclusions. By TechPats' own admission, they did not even attempt to capture the internal workings of the tested devices. (D.I. 282-1, Ex. B (Royer Tr.) at 104:13-105:21.) And there is nothing in *GreatBatch* suggesting that speculative conclusions about one piece of evidence are admissible simply because there is a "panoply" of other admissible evidence leading to the same ultimate conclusion of infringement. *See* U.S. Dist. LEXIS 182055, at *9-13. Dr. Cooklev's other evidence cannot save his unsupported conclusions concerning the TechPats emulation testing.

### 2. The TechPats reports are not relevant circumstantial evidence.

Evolved further argues that Dr. Cooklev only uses the TechPats reports as circumstantial evidence, and states that such use is acceptable because "Dr. Cooklev's 'testimony need not establish the ultimate question of infringement to be relevant and admissible . . . . direct infringement can be proven by circumstantial evidence.'" (Opp. Br. at 11 (quoting *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 U.S. Dist. LEXIS 145316, at *10-11 (E.D. Mich. Oct. 20, 2016) Evolved's statement may be correct in isolation, but the *Visteon* case goes on to say that "[the expert's] testimony need only 'have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Visteon,* 2016 U.S. Dist. LEXIS 145316, at

*10-11 (citing *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009)); *see also* Fed. R. Evid. 402. Dr. Cooklev's opinions regarding the TechPats reports do not meet this standard. Here, it is uncontested that the TechPats reports offer *no* understanding of the internal operations of the tested devices. Accordingly, the TechPats reports do not make the fact that a device performed an internal step "more probable or less probable"; the reports thus cannot qualify as relevant circumstantial evidence upon which Dr. Cooklev may rely. *Id.*

    **B.**    **The TechPats Field Testing Is Not Relevant To Whether The Accused Products Infringe The Patents-In-Suit.**

        **1.**    **Dr. Cooklev's infringement opinions based upon the TechPats field testing are inadmissible speculation.**

As with the TechPats emulation testing, Evolved does not dispute that the TechPats field testing provides no understanding of the internal steps that the Accused Products perform. Thus, for the same reasons described above, Dr. Cooklev's conclusions relying upon the TechPats field tests are purely speculative and inadmissible insofar as they relate to whether the Accused Products perform the claim limitations relating to the internal operations of the devices.

        **2.**    **Evolved cannot claim one Defendant's product is representative of another Defendant's product.**

Dr. Cooklev's conclusions pertaining to the field testing should be excluded for the additional reason that TechPats conducted the tests on only two devices—one of non-party LG (the non-accused G5), and one of Samsung (the accused Galaxy S5). TechPats performed no field testing on any accused device of Defendants Apple, HTC, Motorola, Microsoft and ZTE, or on any other accused Samsung device (other than the Galaxy S5). Thus, the field testing is not relevant to the infringement analysis for these products.

        **(a)**    **Field testing pertaining to the '373 Patent.**

To justify Dr. Cooklev applying the results of field testing to all Defendants, Evolved

argues that the field tested Samsung product is "representative" of all other Accused Products from all other Defendants. (Opp. Br. at 12-15.) But there is no legal or factual basis by which evidence for one Defendant's product can be used against other Defendants in separate cases.

Evolved relies upon *TiVo, Inc. v. EchoStar Commc'ns Corp.* to argue that the field testing performed on a Samsung Galaxy S5 device is applicable to all Defendants. 516 F.3d 1290 (Fed. Cir. 2008). (Opp. Br. at 12-14.) But that case did not address the issue of using one defendant's devices as representative of another defendant's devices in a *separate* action. In *TiVo*, the plaintiff's expert selected *EchoStar products* as representative of other *EchoStar devices*. 516 F.3d at 1308. *TiVo* does not stand for the proposition that one manufacturer's devices can be representative of other manufacturers' products. Evolved's reliance on *Spansion, Inc. v. ITC* is similarly misplaced. 629 F.3d 1331 (Fed. Cir. 2010). *Spansion* involved five different defendant manufacturers, and the plaintiff's expert selected representative products from each manufacturer. 629 F.3d at 1341. The expert used the selected product from each manufacturer to establish infringement *only* as to the other products from that *same manufacturer*. *Id.*

Evolved claims that the field testing of the Samsung device is representative of Apple, HTC, Motorola, Microsoft and ZTE's devices because all of Defendants' Accused Products are compatible with LTE networks. (Opp. Br. at 13-14.) But there is no basis for Dr. Cooklev to assume that test results for one product compatible with one carrier's LTE network are representative of test results for other products compatible with other carriers' LTE networks. Merely being compatible an LTE network does not mean that the devices operate in the same manner.[3] Dr. Cooklev's conclusion that one product is representative of all Accused Products

---

[3] The Federal Circuit has recognized that industry standards do not always provide the level of specificity to cover every possible implementation of the standard. *Fujitsu Ltd. V. Netgear Inc.*,

across six separate cases on the basis of LTE compatibility is unsupported speculation. Even with respect to Samsung, Evolved does not explain how a *single* test result from TechPats can be extrapolated to cover *hundreds* of Samsung Accused Products. (15-cv-545, D.I. 60, App'x A.)

Further, as explained in Defendants' opening brief, every independent claim of the '373 patent requires both a "source base station" and a "target base station." (Br. at 11.) ▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ And it is contradicted by the TechPats field testing report itself. (D.I. 282-1, Ex. C at 16 ("Tests were performed using the Accuver XCAL-m presented in section 4 ...."); *id.* at 6 ("The protocol logging application allows ... [m]essages [to] be collected ... between *the* terminal and *the* base station....") (emphasis added); *id.* at Fig. 3 (showing *one* base station).)

Moreover, Evolved's brief conspicuously fails to address Defendants' argument that the TechPats field testing cannot demonstrate that the "dedicated preamble [is] determined by the target base station"—the limitation on which Dr. Cooklev relies to distinguish the prior art. (*Compare* Br. at 11 *with* Opp. Br. at 13.) Even taking as true Evolved's incorrect argument that

---

620 F.3d 1321, 1327-28 (Fed Cir. 2010). Two manufacturers' devices may be compatible with the standard but have different approaches to implementing the standard.

[4] Evolved also claims "there is no evidence at all that any accused mobile device product would operate differently based on the base station used" (Opp. Br. at 3), but "the burden of proof on factual issues relating to infringement rests upon the patent owner," not the accused infringer. *Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 134 S. Ct. 843, 846, 849 (2014) (quoting 5B Chisum § 18.06[1][a], at 18–1180 (2007)).

the testing involved "two base stations" (Opp. Br. at 13), it is impossible to determine from the TechPats report *which* base station allegedly "determined" the "dedicated preamble." The report itself is silent in this regard. (D.I. 282-1, Ex. C (TechPats RKM-103) at 16-21.) ███████

███████████████████████████████████████████

███████████████████████████████████[5]

Dr. Cooklev's use of the TechPats field testing also raises an additional issue with respect to the matter against Apple: for Dr. Cooklev to make his representativeness argument, he must necessarily rely on evidence to which Apple and its experts do not have access. Evolved states that "Dr. Cooklev relies on substantial evidence in the record to show that all of the Accused Products implement the LTE standard in the same way, both internally and externally." (Opp. Br. at 14.) The only evidence that shows how Defendants' Accused Products actually operate internally is the broadband chipset source code running on each product. For Dr. Cooklev to establish that the Samsung Galaxy S5 is "representative" of Apple's Accused Products, Dr. Cooklev must testify in the Apple matter about the contents of the source code for the Samsung Galaxy S5 product. That source code, however, was never made available in the Apple matter, and Apple's expert, Dr. Harry Bims, has never had access to it. Moreover, Dr. Cooklev did not in his reports submitted in the Apple matter provide any opinions about the Samsung source code. Evolved argues that "Defendants … have not identified any differences between the Accused Products … there is no evidence in the record that the tested devices would operate any

---

[5] Evolved also contends that "the field testing for the '373 Patent clearly shows the *target* base station transmitting a source base station ID . . . ." (Opp. Br. at 2 (emphasis added).) Yet all claims of the '373 patent require that the *source* base station transmit information about the target base station to the terminal. (*See, e.g.*, D.I. 282-1, Ex. F at 10:10-12, 11:3-5.) Taken at its word, Evolved's brief avers that the TechPats field testing report actually demonstrates the *opposite* of what the asserted claims require.

differently than the Accused Products with respect to the tested functionalities." (Opp. Br. at 14.) But there is no authority establishing that Apple has any such burden. Regardless, given that Apple did not have access to Samsung's source code, it *could not* have established any differences between the tested device and Apple's Accused Products. For Evolved to use the field tests against Apple would be improper and unjust.

### (b) Field testing pertaining to the '236 Patent.

The TechPats field testing with respect to the '236 Patent is similarly objectionable. Evolved claims that the test report for a LG G5 device is "circumstantial evidence supporting infringement of mobile phone claim limitations requiring the LTE network to operate in a certain way," and that the test results should extend to Defendants' Accused Products. (Opp. Br. at 14.) But LG is not a party to any of these actions, there is no evidence regarding the operation of the LG G5 device, and Dr. Cooklev provides no opinions whatsoever as to any similarity in behavior between the LG G5 device and any of Defendants' Accused Products. Evolved even admits that the '236 field testing does not show "how the Accused Products themselves operate." (*Id.* at 12.) Thus, any use of the LG G5 field test results is unsupported speculation and should be excluded. *See In re Paoli*, 35 F.3d at 742; *Daubert*, 509 U.S. at 591-92.

### C. The Record Is Ripe To Exclude Under Federal Rule Of Evidence 403 Dr. Cooklev's Opinions Regarding The TechPats Reports.

Evolved relies upon *In re Paoli* to argue that Defendants' Rule 403 challenge to the TechPats testing is premature. (Opp. Br. at 15-16.) The court in *In re Paoli* stated that exclusion under Rule 403 "is rarely appropriate as a basis of pre-trial exclusion, because a judge cannot ascertain potential relevance until that judge has a virtual surrogate for a trial record." 35 F.3d at 747. The present issue, however, is that rare instance in which pre-trial exclusion is appropriate. The record here is already clear that the TechPats testing offers no understanding of the internal

steps of the tested devices. (*See* section II.A.1, *supra*.) By Evolved's own admissions, the TechPats testing is not particularly probative: Dr. Cooklev purportedly does not rely upon the TechPats testing for most claim limitations, and to the extent Dr. Cooklev does rely upon it, it is at best only circumstantial evidence duplicative of other direct evidence. (Opp. Br. at 9-13.)

On the other hand, the high prejudicial risk of misleading the jury substantially outweighs the low probative value of the TechPats testing. Fed. R. Evid. 403. Courts in Delaware exclude expert evidence under Rule 403 when there is "something about the particular [] technique such as its posture of mythic infallibility that makes i[t] especially overwhelming." *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, C.A. No. 13-324-RGA, 2017 U.S. Dist. LEXIS 130430, at *8 (D. Del. Aug. 14, 2017). Defendants do not move to exclude Dr. Cooklev's conclusions concerning the TechPats testing and reports "just because 'scientific techniques by their very nature confuse and overwhelm the jury.'" (Opp. Br. at 17 (citing *Am. Cruise Lines, Inc.*, 2017 U.S. Dist. LEXIS 130430, at *8.) Rather, Defendants move under Rule 403 because the TechPats reports present highly technical test procedures, describing input parameters and output results using technical jargon and screenshots of complex computer outputs, while wholly obscuring the fact that the test equipment has no ability to determine *how* the tested device operates internally. (*See, e.g.,* D.I. 282-1, Ex. H (TechPats RKM-101 Report) at 7-10; *see also* Br. at 5-6.) There is great risk that the jury will be misled into believing that the TechPats testing and reports provide evidence that they do not actually show. This "mythic infallibility" a jury might assign to them is precisely the situation in which courts are willing to exclude expert evidence under Rule 403. *Am. Cruise Lines*, 2017 U.S. Dist. LEXIS 130430, at *8.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Dr. Cooklev's conclusions regarding, or based on, the TechPats emulation and field testing be excluded.

10

|  |  |
|---|---|
| | Respectfully submitted, |
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| | By: /s/ David E. Moore |
| Michael D. Jay | David E. Moore (#3983) |
| Bill Ward, Ph.D. | Bindu A. Palapura (#5370) |
| Nandan R. Padmanabhan | Stephanie E. O'Byrne (#4446) |
| Micol Small | Hercules Plaza, 6th Floor |
| Martin Ellison | 1313 N. Market Street |
| BOIES, SCHILLER & FLEXNER LLP | Wilmington, DE 19801 |
| 401 Wilshire Blvd., Suite 850 | Tel: (302) 984-6000 |
| Santa Monica, CA 90401 | dmoore@potteranderson.com |
| Tel: (310) 752-2400 | bpalapura@potteranderson.com |
| | sobyrne@potteranderson.com |
| Steven Holtzman | |
| BOIES, SCHILLER & FLEXNER LLP | *Counsel for Defendant Apple Inc.* |
| 1999 Harrison Street, Suite 900 | |
| Oakland, CA 94612 | |
| Tel: (510) 874 1000 | |
| | |
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| | By: /s/ Philip A. Rovner |
| Stephen S. Korniczky | Philip A. Rovner (#3215) |
| Martin R. Bader | Jonathan A. Choa (#5319) |
| SHEPPARD, MULLIN, RICHTER & | Hercules Plaza, 6th Floor |
|    HAMPTON, LLP | 1313 N. Market Street |
| 12275 El Camino Real, Suite 200 | Wilmington, DE 19801 |
| San Diego, CA 92130 | Tel: (302) 984-6000 |
| Tel: (858) 720-8900 | provner@potteranderson.com |
| | jchoa@potteranderson.com |
| | |
| | *Counsel for Defendants HTC Corporation and HTC America, Inc.* |

OF COUNSEL:

Mitchell G. Stockwell
Richard W. Goldstucker
Shayne E. O'Reilly
KILPATRICK TOWNSEND AND STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Tel: (404) 815-6500

Taylor H. Ludlam
KILPATRICK TOWNSEND AND STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
Tel: (919) 420-1700

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Counsel for Defendant Motorola Mobility LLC*

OF COUNSEL:

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
Charles M. Stiernberg
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel: (650) 801-5100

SHAW KELLER LLP

By: /s/ Nathan R. Hoeschen
    John W. Shaw (#3362)
    Karen E. Keller (#4489)
    Andrew E. Russell (#5382)
    David M. Fry (#5486)
    Nathan R. Hoeschen (#6232)
    I.M. Pei Building
    1105 N. Market Street, 12th Floor
    Wilmington, DE 19801
    Tel: (302) 298-0700
    jshaw@shawkeller.com
    kkeller@shawkeller.com
    arussell@shawkeller.com
    dfry@shawkeller.com
    nhoeschen@shawkeller.com

*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

OF COUNSEL:

Jay H. Reiziss
Natalie A. Bennett
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8000

Charles M. McMahon
Hersh H. Mehta
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL 60606
Tel: (312) 372-2000

RICHARDS, LAYTON & FINGER, P.A.

By: /s/ Travis S. Hunter
    Kelly E. Farnan (#4395)
    Travis S. Hunter (#5350)
    920 N. King Street
    Wilmington, Delaware 19801
    Tel: (302) 651-7700
    farnan@rlf.com
    hunter@rlf.com

*Counsel for Defendant ZTE (USA) Inc.*

OF COUNSEL:

Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000

Ellen S. Robbins
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Tel: (213) 896-6000

Joseph A. Micallef
Wonjoo Suh
Anna M. Weinberg
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000

Dated: February 2, 2017
Public Version Dated: February 9, 2018
5620116 / (42622/42637)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: /s/ Rodger D. Smith II
    Rodger D. Smith II (#3778)
    Jeremy A. Tigan (#5239)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19801
    Tel: (302) 658-9200
    rsmith@mnat.com
    jtigan@mnat.com

*Counsel for Defendants Microsoft Corporation, Microsoft Mobile Oy, and Microsoft Mobile Inc. (f/k/a Nokia Inc.)*