# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-542-JFB-SRF |
| | ) | |
| APPLE, INC. | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-543-JFB-SRF |
| | ) | |
| HTC CORPORATION and | ) | |
| HTC AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-544-JFB-SRF |
| | ) | |
| LENOVO GROUP LTD., LENOVO | ) | |
| (UNITED STATES) INC., and | ) | |
| MOTOROLA MOBILITY, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-545-JFB-SRF |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-546-JFB-SRF |
| | ) | |
| ZTE (USA) INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 15-547-JFB-SRF |
| | ) | |
| MICROSOFT CORPORATION, MICROSOFT MOBILE OY and NOKIA INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Evolved Wireless LLC's ("Evolved")

motion for summary judgment on the defendants' affirmative defenses and/or

counterclaims, D.I. 195 in *Apple*, 1:15cv542[1] and on defendant Apple's and the other defendants' cross-motions for a summary judgment based on a license agreement and covenant not to sue, D.I. 194 in *Apple,* 1:15cv542.[2]   These are actions for patent infringement pursuant to 35 U.S.C. § 101 et al.   This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a), 1367, and 2201.

## I.   BACKGROUND

In these related actions, Evolved alleges infringement of claims of United States Patent Nos. 7,809,373 ("the '373 patent") and 7,881,236 ("the '236 Patent") directed to LTE wireless communication systems.   LTE stands for Long Term Evolution and is also commonly referred to as 4G.   LTE was first released in 2008, with 3GPP's Release 8. Wireless carriers in the United States began providing LTE networks in 2010.

The '373 Patent generally relates to methods and an apparatus for performing a handover of a mobile terminal from a source base station to a target base station.   D.I. 1, Complaint, Ex. 3, '373 Patent.   The '236 Patent relates to "a data transmission method and a user equipment for the same" related to a "random access" procedure between a terminal and a base station.   *Id.*, Ex. 4, '236 Patent at 3-4.   Evolved asserts infringement of claims 15-21 and 23-25 of the '373 Patent and claims 1-10, and 12-13 of the '236 Patent against all defendants.   The defendants deny Evolved's allegations of infringement, and allege the asserted claims of the '373 and '236 Patents are invalid, as

---

[1] Corresponding motions in the related cases are: D.I. 204 in *Evolved v. HTC Corp. and HTC America, Inc.* ("HTC"), 1:15cv543; D.I. 183 in *Evolved v. Lenovo Corp. and Motorola Mobility, LLC* ("Motorola"), 1:15cv544; D.I. 226 in *Evolved v. Samsung Elecs. Co., Samsung Elecs. America, Inc.,* ("Samsung"), 1:15cv545; D.I. 198 in *Evolved v. ZTE (USA) Corp.* ("ZTE"), 1:15cv546; and D.I. 198 in *Evolved v. Microsoft Corp.* ("Microsoft"), 1:15cv547.   For ease of reference, the Court will cite to filings in the *Apple* case.
[2]  Corresponding motions are D.I. 205 in *HTC*, 1:15cv543; D.I. 184 in *Motorola*, 1:15cv544; D.I. 224 in *Samsung*, 1:15cv545; D.I. 197 in *ZTE*, 1:15cv546; and D.I. 197 in *Microsoft*, 1:15cv547.

well as assert various affirmative defenses and counterclaims, including affirmative defenses alleging license and patent exhaustion and a counterclaim for an alleged breach of Evolved's contractual FRAND obligation.

Evolved's summary judgment motion is directed to three issues: (1) validity, (2) breach of contractual obligation to grant licenses on fair, reasonable and nondiscriminatory ("FRAND") terms, and (3) the license, covenant not to sue and exhaustion. The defendants' motion is directed to the third issue.

The record shows that Evolved currently owns all right, title, and interests in the '373 Patent. The named inventors on the '373 Patent are Sung Jun Park, Young Dae Lee, Sung Duck Chun, and Myung Cheul Jung. On September 7, 2006, the named inventors assigned all right, title, and interests in the '373 Patent to LG Electronics, Inc. ("LGE"). On February 7, 2014, LGE assigned all right, title, and interests in the '373 Patent to TQ Lambda, LLC. On October 27, 2014, TQ Lambda, LLC assigned all right, title, and interests in the '373 Patent to Evolved.

LGE is a member of the European Telecommunications Standards Institute ("ETSI") and participated extensively in the Third Generation Partnership Project ("3GPP"). The 3GPP is comprised of numerous member companies who participated in the development of LTE through their membership in Organizational Partners. 3GPP's member companies participated in working groups that met several times a year. The contributions submitted by participants in a working group meeting were made publicly available prior to each meeting.

The patentee declared that the '373 and '236 Patents are essential to the Long Term Evolution ("LTE") wireless communications standard. Evolved contends that the

'373 and '236 Patents are standard essential patents ("SEPs") necessary to comply with the LTE wireless communications standard.  The defendants contend that the '373 and '236 Patents are neither essential to the LTE wireless communications standard nor necessary for a mobile device to comply or be compatible with the LTE wireless communications standard.

## II.   EVOLVED'S MOTION (D.I. 195) FOR SUMMARY JUDGMENT ON INVALIDITY AND BREACH OF FRAND OBLIGATIONS.

### A.   Validity

Evolved moves for summary judgment in its favor on the defendants' invalidity defenses.  The defendants contend the claims of the '373 claims are invalid as anticipated and as obvious and that the claims of the '236 Patent are invalid as obvious.  Evolved argues that uncontroverted evidence shows that the defendants cannot prevail on the invalidity defense.  It argues that Apple cannot show by clear and convincing evidence that the claims of the '373 Patent are invalid.  It contends that, under the Court's claim construction, the prior art relied on by the defendants does not disclose certain claims and that, by reason of priority dates of the '373 and prior art patents, certain prior art refences are not prior art.  They contend the defendants' experts failed to analyze the prior art using the court's claim constructions and failed to support critical aspects of his opinion with facts.  Further, they argue that the defendants have failed to offer a legally sufficient motivation to combine prior art references and cannot establish invalidity based on the combination of asserted prior art references.

The defendants, on the other hand, argue that there are genuine issues of material fact as to those issues.  They rely on the testimony of Apostolos K. Kakaes, Ph.D. (D.I. 272-1, Ex. 13) and Harry Bims, Ph.D. (D.I. 272-2, Ex. 13) to support the contention that

certain references (i.e., Chinese Patent No. CN1596020A ("Hu"), U.S. Patent No. 8,131,295 ("Wang") are prior art to the '373 Patent.   They dispute the plaintiff's contentions regarding claims to the provisional filing dates of the '373 Patent and certain prior art references.   They argue that Dr. Bims's testimony provides an adequate rationale for why a person of ordinary skill in the art would make the asserted combinations.   They also dispute any reliance on statements in the Inter Partes Review ("IPR") petition to the Patent Board, arguing that it has no bearing whatsoever on the viability of combinations of prior art references to show anticipation or obviousness.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986).   A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56(c)(1)(A) & (B).   If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."   *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted).   The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 415 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Because a patent is presumed valid under 35 U.S.C. § 282, an invalidity defense must be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) (stating that defenses of obviousness and anticipation must be proven by clear and convincing evidence). A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention.

*Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 973 (Fed. Cir. 2014).  Anticipation is a question of fact.  *Id.*  To establish anticipation, an alleged infringer "must show 'that the four corners of a single, prior art document describe every element of the claimed invention,'" with the elements "arranged or combined in the same way as in the claim."  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008).  "Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 24 (Fed. Cir. 2012).  The party challenging the validity of a patent bears "the burden of persuasion by clear and convincing evidence on all issues relating to the status of [a reference] as prior art."  *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).

"A patent is invalid for obviousness 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'"  *Allergan, Inc.*, 754 F.3d at 961 (quoting 35 U.S.C. § 103(a)).  A patent can be obvious in light of a single reference.  *See Boston Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 990–92 (Fed. Cir. 2009).  Additionally, a party can establish obviousness by showing that "a skilled artisan would have had reason to combine the teaching of [multiple] prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so."  *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014).

Obviousness is a legal conclusion based on underlying facts.  *Id.*  However, "'[t]he presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact.'"  *PAR Pharm.,* 773 F.3d at 1196 (quoting *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1289 (Fed. Cir. 2006).  Similarly, "'[w]hat a reference teaches and whether it teaches toward or away from the claimed invention are questions of fact.'"  *Id.* (quoting *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 (Fed. Cir. 2000)).

An application that a patent was "granted on" is the first United States application to disclose the invention claimed in the patent.  *In re Giacomini*, 612 F.3d 1380, 1383 (Fed. Cir. 2010).  The filing date of an application and of a provisional application is the date on which a specification, with or without claims, is received by the Patent and Trademark Office ("PTO").  35 U.S.C. § 111(a) and (b); *see, e.g.*, MPEP § 2136.03 (8th ed. Rev. 9) ("A U.S. patent is effective prior art as of its U.S. filing date").  "Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed."  *Bradford Co. v. Conteyor N. Amer., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010).  "However, the determination whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C.A. § 112, first paragraph, is a question of fact."  *Id.*; *see Scriptpro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014) (the written description requirement is a question of fact for the jury).  Whether a patent claim satisfies the written description requirement will depend on "whether the description 'clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'"  *See Bd. of Trs. of Leland Stanford*

*Junior Univ. v. Chinese Univ. of Hong Kong*, 860 F.3d 1367, 1375 (Fed. Cir. 2017) (noting it is a fact intensive inquiry).

Priority claims are not examined by the PTO as a matter of course, and consequently are not entitled to a presumption of adequate written description support in the provisional application. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). A reference patent is only entitled to claim the benefit of the filing date of its provisional application if the disclosure of the provisional application provides support for the claims in the reference patent in compliance with § 112, ¶ 1. *Id.*

"[I]n the context of establishing conception and reduction to practice for the purposes of establishing a priority date, the burden of production can shift from the patent challenger to the patentee." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375–76 (Fed. Cir. 2016); *see Dynamic Drinkware*, 800 F.3d at 1379 (noting the shifting burdens and related priority claims under § 120 in district court litigation parallel the shifting burdens and related priority claims under § 119(e)(1) in *inter partes* reviews). This is because a patent challenger has the burden of producing evidence to support a conclusion of unpatentability under § 102 or § 103, but a patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference. *In re Magnum,* 829 F.3d at 1375–76. What the prior art discloses is also a question of fact. *Para-Ordnance Mfg. v. SGS Importers Int'l*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

Moreover, under 35 U.S.C. § 315(e)(1) & (2), IPR findings only "create estoppel for arguments 'on any ground that the petitioner raised or reasonably could have raised during that inter partes review.'" *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,

817 F.3d 1293 (Fed. Cir. 2016).  If no IPR is instituted, a challenger "[does not] raise—nor [can] it have reasonably raised—the [rejected] ground *during* the IPR." *Id.* (emphasis in original); *see also Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 553 (D. Del. 2016) (stating the Federal Circuit has construed 35 U.S.C. § 315(e) quite literally).

The Court finds there are genuine issues of material fact on the invalidity defense and the plaintiff's motion should therefore be denied.  Resolution of this motion involves determination of the priority dates of both the asserted patents and the challenged references.  For example, the Wang reference would be prior art to the '373 Patent if a fact finder were to find that Wang is entitled to priority from its provisional application's filing date, whereas the '373 Patent is not entitled to its provisional application's filing date.  The evidence before the Court shows there are genuine issues of material fact on those issues.

Evolved, in fact, concedes that there is competing expert testimony, though the defendants' evidence is characterized as "barebones conclusions," on the priority issues.  The probative value and weight to be afforded an experts' conclusions are properly the subject of cross examination.  The plaintiff's challenge to the expert's conclusions illustrates that there are genuine issues of material fact.  Whether the evidence presented by the defendants rises to the level of "clear and convincing" is a question for the jury.

There are genuine issues of material fact on whether the applications adequately describe and enable the specifications of the asserted patents and the prior art reference patents.  There is competing evidence on that issue—expert witnesses disagree.  The

Court cannot resolve the issue without assessing credibility, which is the province of the jury.

Evolved's reliance on PTAB filings for its estoppel argument is similarly misplaced. Contrary to Evolved's assertions, the PTAB has not considered "the same art and arguments" that Dr. Bims identifies.  The record shows that no *inter partes* review of the '373 Patent was instituted, and the IPR finding as to the '236 Patent is presently on appeal.  The Court finds no authority for Evolved's proposition that the PTAB's decision on Apple's IPR petition means that Apple cannot attempt to prove to the trier of fact in this case by clear and convincing evidence that a combination of prior art invalidates the '373 Patent.  The PTAB petition did not result in a final written decision, and the defendants are not precluded from arguing on grounds that they reasonably could have raised in the IPR petition.  *See Shaw Indus. Grp.,* 817 F.3d at 1300 (holding that PTAB's decision not to institute IPR of patent challenge based on anticipation by prior art would not estop challenger from bringing those arguments in the district courts).

### B.     Breach of FRAND Obligations

The defendants assert a counterclaim for breach of contract, alleging that Evolved's predecessor in interest, LGE, made a contractual commitment to ETSI to license the Patents-in-Suit on FRAND terms; the commitment is binding on Evolved; and the proposed royalty rate of 25 cents per user device that Evolved offered prior to instituting this lawsuit was "many times higher than its patents should command under any reasonable calculus, including based on the misleading benchmarks that Evolved cited."  D.I. 9, Answer and Counterclaim.

Evolved moves for summary judgment on that counterclaim and related affirmative defenses of unenforceability and of waiver in connection with Evolved's predecessor's alleged failure to disclose the asserted patents to ETSI.[3]  It contends that the defendants cannot succeed on their breach of FRAND obligations claim because they have not presented any evidence that they suffered legally cognizable damages as a result of Evolved's alleged breach.  It states that attorney fees cannot be recovered as damages in a breach of contract action.  Also, it contends that there is no authority for the remedy of patent unenforceability for a breach of FRAND obligations.

In response, the defendants assert that the record demonstrates that Evolved breached its contractual obligation by failing to offer them a license to the patents-in-suit on FRAND Terms.  They contend they have injury caused by the alleged breach in that they can recover attorney fees and litigation expenses as consequential damages.  Also, they contend that Evolved wrongly seeks an injunction on patents that it has an obligation to license.  They argue that Delaware's exceptions to the American Rule support an award of damages and they argue that if attorneys' fees are not legally-cognizable damages, Evolved is still not entitled to summary judgment because Delaware law allows recovery of nominal damages.  Last, the defendants argue that a declaration of unenforceability is an appropriate remedy for Evolved's breach of FRAND obligations.

There is some evidence in the record that supports the defendants' allegations that Evolved has concealed relevant information from the defendants,[4] made licensing

---

[3]  In its opposition brief, Apple states that it "does not oppose Evolved's motion for summary judgment on Apple's fifth affirmative defense of Waiver Through Untimely Disclosure."  D.I. 242 at 1 n.1.  Accordingly, the Court will grant Evolved's motion with respect to that claim.

[4]  This argument relates to Apple's claim that Evolved failed to produce or inform Apple of the existence of a 1993 "Infrastructure and Subscriber Unit License and Technical Assistance Agreement" and amendments that has been the subject of discovery disputes and is now the subject of a motion for summary judgment.

demands in excess of FRAND terms, and failed to negotiate FRAND terms or consider counteroffers.  The defendants have presented expert testimony on topics including the ETSI IPR Policy and procedures followed by ETSI working groups; Evolved's alleged failure to comply with FRAND licensing obligations; the damages for infringement; and French law applicable to the ETSI IPR Policy.  Evolved contends, however, that because none of Apple's experts offered any opinions claiming that Apple suffered damages as a result of breach of FRAND obligations, the counterclaim should be dismissed.

A claim for breach of contract under Delaware law requires three elements: "(1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the [counterclaimant]."  *Avaya Inc., RP v. Telecom Labs. Inc.*, 838 F.3d 354, 390 (3d Cir. 2016).  Delaware law permits a jury to award nominal damages for breach of contract.  *See Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 607 (D. Del. 2015) (awarding nominal damages for breach of contract and applying Delaware law that "[e]ven if compensatory damages cannot be or have not been demonstrated, the breach of a contractual obligation often warrants an award of nominal damages"); Del. P.J.I. Civ. § 22.24 (2000) ("If you find that [plaintiff] is entitled to a verdict in accordance with these instructions, but do not find that [plaintiff] has sustained actual damages, you may return a verdict for [plaintiff] in some nominal sum such as one dollar").  Nominal damages are given in in recognition of a technical injury and by way of declaring the rights of the plaintiff.  *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, No. CIV.A. 3158-VCL, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009) (noting they are usually assessed in a trivial amount).

Delaware courts have approved equitable exceptions to the American Rule. *See Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506-07 (Del. 2005) (affirming award of fees under the bad faith equitable exception including improper purpose for filing suit); *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 228 (Del. 2005) (affirming award of fees under the bad faith equitable exception). One such exception is where the breach of a duty of good faith and fair dealing in carrying out its obligation to license on RAND terms is viewed as breach of a covenant not to sue. *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1193 (W.D. Wash. 2013) *aff'd*, 696 F.3d 872, 885 (9th Cir. 2012) (explaining the SEP holder has effectively agreed not to sue implementers for injunctive relief and under those circumstances, the RAND commitment is analogous to a covenant not to sue for injunctive relief, and the implementer may recover attorney's fees as an element of damages in the bad faith action). In that case, "the primary form of damages flowing from the breach will likely be attorney's fees." *Id.* There is also some authority for the proposition that the remedy for a breach of FRAND obligations is retrospective payment at the FRAND rate. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d at 885 (stating in dicta "[w]hatever the appropriate method of determining the RAND licensing rate, it could well be that retrospective payment at the rate ultimately determined and a determination of the future rate, not an injunction banning sales while that rate is determined, is the only remedy consistent with the contractual commitment to license users of ITU standard-essential patents").

Unenforceability is an equitable remedy that arises as an extension of the doctrine of unclean hands, "whereby a court of equity will not lend its support to enforce a patent that has been misused." *See, e.g., B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419,

1427 (Fed. Cir. 1997) (discussing the rationale for unenforceability in the context of patent misuse); *accord Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (discussing inequitable conduct as an extension of the maxim "he who comes into equity must come with clean hands").   A district court may, in appropriate circumstances, order patents unenforceable, but the scope of the district court's unenforceability remedy must be limited in relation to the underlying breach. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008).

Based on the record before the Court and under the legal framework set forth above, the Court finds that Evolved's motion for summary judgment should be denied. There are genuine issues of material fact on numerous issues related to the FRAND obligations.   On this record, the Court is unable to find as a matter of law that the defendants' counterclaim for breach of FRAND obligations should be dismissed.   The issue is tied up with the merits of the infringement and invalidity claims.   The Court rejects Evolved's argument that, as a matter of law, the defendants' alleged failure to quantify money damages separate and apart from damages for infringement, dooms its breach of FRAND obligations claim.

Because the damages for a breach of FRAND obligations are equitable in nature (as analogous to equitable damages for bad faith), the determination is a matter for resolution by the Court.   Interpretation of the terms of the various ETSI Intellectual Rights Policies, standards, and specifications at issue in connection with the FRAND obligation are also matters of law for the Court to determine.

The real significance of a FRAND obligation is as a measure of damages for infringement of a SEP patent.   The FRAND obligation determines the reasonableness of

a royalty or license, and the jury will be instructed to that effect, assuming the asserted patents are SEPs.[5]  The counterclaim will be moot if the jury finds no infringement or finds that the patent is not valid.  The breach of FRAND counterclaim comes into play only on a finding of infringement, and then only if the plaintiff's demand exceeds the amount the jury determines is the reasonable royalty as measured by the FRAND.    Although the Court is inclined to believe that damages for breach of the FRAND agreement would be co-extensive with any recovery for infringement, determination of damages issues should await full development of the record at trial.  Any potential recovery of attorney fees as damages need not be addressed at this time.

The FRAND issue is also connected to the parties' cross-motions for summary judgment involving a license agreement between Evolved's predecessor, LGE, and Qualcomm, Inc. ("Qualcomm"), the supplier of a component of the defendants' accused products.  As discussed below, the terms, conditions, and applicability of that license remain to be determined.

At this point in the litigation, Evolved has not shown that it is entitled to a summary judgment of dismissal of the defendants' breach of FRAND counterclaim.  Resolution of damages issues for alleged breach of FRAND obligations is premature at this time.  The Court finds the plaintiff's motion should be denied.

## III.  THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSES RELATED TO A LICENSING AGREEMENT BETWEEN LGE AND QUALCOMM (D.I. 194 AND D.I. 195)

---

[5] *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Comm. Tech. Holdings Ltd., et al.*, No. 1:15cv634, D.I. 483, Closing Jury Instructions at 4, Instruction No. 46 (D. Del. Nov. 7, 2018).

The defendants seek summary judgment in their favor on Evolved's claims of infringement of '373 Patent based on the affirmative defense that a licensing agreement precludes Evolved's claims.   They rely on an agreement executed by LGE and Qualcomm, the supplier of baseband chipsets used in many of the defendants' accused products, specifically, the 1993 Code Division Multiple Access Technology Infrastructure and Subscriber Unit License and Technical Assistance Agreement ("the CDMA License Agreement") and amendments thereto (D.I. 197-1, Exs. A-I)).

They contend that Evolved purchased the asserted patents from LGE subject to the Licensing Agreement.  They argue that Evolved is bound by LGE's covenant in the agreement not to assert the '373 Patent against Qualcomm and Qualcomm's customers. They contend LGE agreed not to sue Qualcomm's Customers on a wide range of patents, including the '373 Patent.  They argue that the asserted claims of '373 Patent are within the scope of the 1993 CDMA license, as amended, and that Evolved is precluded from asserting that the defendants' Qualcomm-based products infringe the '373 Patent as a matter of law.

Evolved disputes the defendants' contentions and moves for summary judgment in its favor on the defendants' license defenses.  Evolved argues it is entitled to summary judgment because the defendants have not shown the '373 Patent falls within the scope of the covenants granted in the 1993 CDMA Agreement, nor have they shown that they are entitled to the benefit of the covenants within the LGE-Qualcomm Agreement. Evolved argues that, as a matter of law, it is not bound by the covenants LGE made to Qualcomm.  It also contends the defendants have not shown that the Qualcomm chipsets substantially embody the claimed invention in the '373 Patent.   Further, it argues that

numerous issues of material fact preclude a summary judgment in favor of the defendants.

The licensing agreement and amendments have been the subject of extensive discovery motion practice before the Magistrate Judge.  Briefly, the defendants contend that Evolved failed to produce the Licensing Agreement, or to inform them of its existence. Apple obtained the document from Qualcomm in heavily redacted form.  The defendants sought and obtained leave to depose Qualcomm, but the Magistrate Judge later denied Evolved's untimely motion to depose an LGE representative and this Court affirmed that ruling.  In support of the present motion, Evolved submits the Declaration of an LGE representative, Younghan Song.  The defendants have moved to strike the declaration, contending it violates the Magistrate Judge's discovery orders.[6]

The Federal Circuit "appl[ies] state law to contractual disputes[.]" *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1320 (Fed. Cir. 2017).[7]  "Contract interpretation is a legal determination.  *Id.*; *see Semitool, Inc. v. Dynamic Micro Sys.*, 444 F.3d 1337, 1341 (Fed. Cir. 2006) (stating that, under California law, the interpretation of a contract is a question of law).  Contract interpretation is "is governed by the objective intent of the parties as embodied in the words of the contract."  *Semitool*, 444 F.3d at 1341.  The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  *Grey v. Am. Mgmt. Servs.*, 139 Cal. Rptr. 3d 210, 212 (Ct. App.

---

[6] Evolved submits the Younghan Song Declaration to rebut testimony it asserts the defendants elicited after the close of fact discovery, and to show Evolved has not acted in bad faith or willfully withheld information.  Evolved argues that if parol evidence is considered by the Court in connection with the 1993 CDMA Agreement, the Song declaration will be relevant to the to the interpretation of the agreement. Because the Court is deferring consideration of the Licensing Agreement counterclaim, the Court will deny the motion to strike as moot at this time, without prejudice to reassertion.

[7] The 1993 License Agreement provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of California." (D.I. 197, Jay Decl., Ex. A at § 25.)  The parties agree that California law governs the interpretation of the 1993 License Agreement as amended.

2012).  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  *Id*.

Based on the record before the Court, the Court is unable to grant either party's motion for summary judgment on the licensing issues.  The parties disagree as to the meaning, coverage, and effect of such contract terms as "limited intellectual property" "covenant products" and "subscriber units."  Although it is the is the Court's duty to construe and interpret the agreements at issue, it cannot do so on this record.  The record contains only heavily redacted copies of the Licensing Agreement and amendments.  The Court has no competent evidence as to either parties' position.

In the Proposed Pretrial Order in the *Apple* case, Apple proposes that the claims involving the covenants contained in the 1993 CDMA agreement, patent exhaustion, and breach of the FRAND obligations should be tried to the Court.  D.I. 448, Proposed Pretrial Order at 21.  The Court agrees.  All of those claims require construction of contracts and are matters for the Court to determine as a matter of law.  Infringement and invalidity should be tried to the jury.

There may be no need for the Court to address the Licensing Agreement if the defendant prevails on either infringement or invalidity.  If Evolved prevails, and the defendants continue to assert its counterclaims and defenses, the Court will conduct a bench trial on those issues.  Matters that presently complicate the situation and are matters of dispute between the parties—such as an incomplete record, the need for unredacted agreements and/or a comprehensive protective order, the propriety of consideration of extrinsic evidence, the need for limited further discovery, etc.—can be addressed at the conclusion of the jury trial and the Court can conduct an evidentiary

hearing if necessary.  Accordingly, the Court finds the parties' cross-motions with respect to the licensing agreement should be denied at this time, without prejudice, to be reasserted, if necessary, at the conclusion of the trial.

IT IS ORDERED:

1.    Plaintiff Evolved's motion for summary judgment (D.I. 195) and corresponding motions in the related cases, are granted with respect to the defendants' affirmative defense of waiver through untimely disclosure and denied in all other respects, without prejudice to reassertion of Licensing Agreement issues in a bench trial to be scheduled following the jury trial of this action, if necessary.

2.     Defendant Apple's cross motion for summary judgment on the licensing agreement defense (D.I. 194) and corresponding motions in the related cases, are denied, without prejudice to reassert in a bench trial to the Court following the jury trial if necessary.

Defendant Apple's Motion to Strike the declaration of Younghan Song (D.I. 366), and corresponding motions in the related cases, are denied as moot, without prejudice to reassertion.

DATED this 21st day of February, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge